No. 07-210C
(Judge Bruggink)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Bid Protest)

SOUTHERN FOODS INCORPORATED,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

PATRICIA M. McCARTHY
Assistant Director

JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-0341
Fax: (202) 514-8624
Attorneys for Respondent

April 6, 2007

## TABLE OF CONTENTS

DEFENDANT'S BRIEF . . . . . 1

QUESTION PRESENTED . . . . . 1

STATEMENT OF THE CASE . . . . . 1

I. Nature of the Case . . . . . 1

II. Statement of Facts . . . . . 2

ARGUMENT . . . . . 4

I. The United States Has Not Waived Sovereign Immunity For NAFIs Such As USACFSC-MWR For Any Purpose Including Bid Protests . . . . . 4

A. Plaintiff Bears The Burden To Demonstrate A Waiver Of Sovereign Immunity . . . . . 4

B. There Is No Waiver Of Sovereign Immunity Here . . . . . 6

C. The 1996 Amendment To The Tucker Act Was Not A Waiver Of Sovereign Immunity For Unenumerated NAFIs . . . . . 9

D. Principles Of Sovereign Immunity Preclude A Finding Of Tucker Act Jurisdiction To Award Injunctive Relief In A Bid Protest Case . . . 10

E. Southern Foods Cannot Manufacture Jurisdiction Here By Disavowing Monetary Relief . . . . . 14

F. Southern Foods's Remedy Is Provided In The Army Regulations . . . . . 16

CONCLUSION . . . . . 17

## TABLE OF AUTHORITIES

### CASES

AINS, Inc. v. United States,
365 F.3d 1333 (Fed. Cir. 2004) . . . . . . . . . . 5, 7, 8, 13

National Surety Corp. v. United States,
20 Cl. Ct. 407 (1990) . . . . . . . . . . 4

Bailey v. West,
160 F.3d 1360 (Fed. Cir. 1998) . . . . . . . . . . 9

Bell BCI Co. v. United States,
56 Fed. Cl. 465 (2003) . . . . . . . . . . 7

Core Concepts of Fla. v. United States,
327 F.3d 1331 (Fed. Cir. 2003) . . . . . . . . . . 6, 7

Cosme Nieves v. Deshler,
786 F.2d 445 (1st Cir. 1986) . . . . . . . . . . 12

Dynaelectron Corp. v. United States,
4 Cl. Ct. 424, aff'd. mem.,
758 F.2d 665 (Fed. Cir. 1984) . . . . . . . . . . 6

El-Sheikh v. United States,
177 F.3d 1321 (Fed. Cir. 1999) . . . . . . . . . . 12

Emery W.W. Airlines, Inc. v. United States et. al,
264 F.3d 1071 (Fed. Cir. 2001) . . . . . . . . . . 10

Fidelity Constr. Co. v. United States,
700 F.2d 1379 (Fed. Cir. 1983) . . . . . . . . . . 9

Furash & Co. v. United States,
252 F.3d 1336 (Fed. Cir. 2001) . . . . . . . . . . passim

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed Cir. 2001) . . . . . . . . . . 10

Indium Corp. of Am. v. Semi-Alloys, Inc.,
781 F.2d 879 (Fed. Cir. 1985), aff'd,
101 F.3d 714 (Fed. Cir. 1996) (table) . . . . . . . . . . 4

Interdent Corp. v. United States,
488 F.2d 1011 (Ct. Cl. 1973) . . . . . . . . 7

Kyer v. United States,
177 Ct. Cl. 747,
369 F.2d 714 (1966) . . . . . . . . 6

Kyer v. United States,
369 F.2d 714 (Ct. Cl. 1966) . . . . . . . . 12

L'Enfant Plaza Props., Inc. v. United States,
668 F.2d 1211 (Ct. Cl. 1982) . . . . . . . . 6, 12

Lane v. Pena,
518 U.S. 187 (1996) . . . . . . . . 10, 11, 13

Massachusetts v. Morash,
490 U.S. 107 (1989) . . . . . . . . 8, 9

McDonald's Corp.,
926 F.2d at 1130, citing
S. 980 Cong., 1st Sess. ¶ 1 (1969) . . . . . . . . 13, 14

McNutt v. Gen. Motors Acceptance Corp.,
298 U.S. 178 (1936) . . . . . . . . 4

Meeks v. West,
216 F.3d 1363 (Fed. Cir. 2000) . . . . . . . . 8

National Surety Corp. v. United States,
20 Cl. Ct. 407 (1990) . . . . . . . . 4

Newby v. United States,
57 Fed. Cl. 283 (2003) . . . . . . . . 7

Novell, Inc. v. United States,
46 Fed. Cl. 601 (2000) . . . . . . . . 10

PGBA, LLC v. United States,
389 F.3d 1219 (Fed. Cir. 2004) . . . . . . . . 9

Pacrim Pizza Co. v. Pirie,
304 F.3d 1291 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 14

Ramcor Services Group, Inc. v. United States,
185 F.3d 1286 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Reynolds v. Army & Air Force Exch. Serv.,
846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Ruckelshaus v. Sierra Club,
463 U.S. 680 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Sodexho Marriott Mgmt., Inc. v. United States,
61 Fed. Cl.229 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Thomas v. United States,
34 Fed. Cl. 619 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States Nat. Bank of Oregon v. Independent Ins. Agents of Am., Inc.,
508 U.S. 439 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Connolly,
716 F.2d 882 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Hopkins,
427 U.S. 123 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

United States v. Mitchell,
463 U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Williams,
514 U.S. 527 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Weinberger v. Hynson, Westcott & Dunning, Inc.,
412 U.S. 609 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Yancheng Baolong Biochemical Products Co., Ltd. v. United States,
406 F.3d 1377 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

## STATUTES

10 U.S.C. § 2783(a) . . . . . . . . . . 3

28 U.S.C. § 1346 . . . . . . . . . . 8

28 U.S.C. § 1491(a) . . . . . . . . . . passim

28 U.S.C. § 1491(a)(1) . . . . . . . . . . 5, 15

28 U.S.C. § 1491(b)(2) . . . . . . . . . . 10

28 U.S.C. § 2517 . . . . . . . . . . 6, 11

## MISCELLANEOUS

Army Regulation 215-1; 1-10 . . . . . . . . . . 2

Army Regulation 215-1;1-5 . . . . . . . . . . 2

Army Regulation 215-1;3-1 . . . . . . . . . . 2

Army Regulation 215-1;4-1(a) . . . . . . . . . . 4

Army Regulation 215-4;1-8 . . . . . . . . . . 3

Army Regulation 215-4; 4-21(d) . . . . . . . . . . 16

Army Regulation 215-4;4-21(e) . . . . . . . . . . 16

Army Regulation 214-4;4-21(a) . . . . . . . . . . 17

Army Regulation 215;4-21(f) . . . . . . . . . . 16

1970 Tucker Act amendment, Congress . . . . . . . . . . 14

142 Cong Rec. S6156 . . . . . . . . . . 10

Pub. L. No. 104-320, 110 Stat. 3870 . . . . . . . . . . 10

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(Bid Protest)**

| | | |
|---|---|---|
| SOUTHERN FOODS INCORPORATED, Plaintiff, | ) | |
| v. | ) | No. 07-210C (Judge Bruggink) |
| THE UNITED STATES, Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss the complaint of Southern Foods, Incorporated ("Southern Foods") for lack of subject matter jurisdiction. In support of this filing, we rely upon plaintiff's complaint, the attached excerpts from Army Regulations, and the following brief.

DEFENDANT'S BRIEF

QUESTION PRESENTED

Whether this Court lacks subject matter jurisdiction to entertain Southern Food's bid protest complaint because Southern Foods is challenging a solicitation issued by a non-appropriated fund instrumentality ("NAFI").

STATEMENT OF THE CASE

I. Nature of the Case

On March 30, 2007, Southern Foods filed a complaint in this Court challenging Solicitation No. NAFBA1-06-R-0016 ("Solicitation") issued by the United States Army Community and Family Support Center ("USACFSC") to support Morale, Welfare, and

Recreation ("MWR") activities for active-duty soldiers and their families and Department of Defense civilian employees and their families. Complaint ("Compl.") ¶ 1. The Solicitation sought competitive proposals to provide food service to MWR activities located at Fort Knox, Kentucky, and Fort Campbell, Tennessee. Id.

Through its complaint, Southern Foods seeks a declaration that the Solicitation is arbitrary and capricious. Compl. Prayer for Relief ("PFR") ¶ 1. As specific relief, Southern Foods requests that this Court issue a permanent injunction terminating the contract awarded to U.S. Food Services, Incorporated ("USFS") and reopening the Solicitation to allow qualified offerors to submit revised competitive proposals. Compl. PFR ¶ 2. Finally, Southern Foods requests a declaration that it is entitled to equitable relief and monetary damages for the Government's breach of the implied-in-fact contract of good faith, fair dealing and honest consideration. Compl. PFR ¶ 3.

II. Statement of Facts

The USACFSC operates MWR programs, for the purpose, among other things, of providing "leisure time activities, which support a quality of life commensurate with generally accepted American values " for active duty army personnel and their families. Army Regulation 215-1; 1-10. The MWR programs also support "combat readiness and effectiveness," "recruitment and retention of quality personnel," and foster community pride and soldier morale, among other stated objectives. Army Reg. 215-1; 1-10, a, b, and e.

The USACFSC-MWR program at issue in this case was created pursuant to Army Regulation 215-1;1-5, and falls into Program Group 1, as a Military Morale, Recreation and Welfare program. Army Reg. 215-1;3-1. All MWR programs are constituted and operated as

non-appropriated fund instrumentalities. The Commanding General of USACFSC is responsible for implementing policies and procedures for Army NAF acquisitions. Army Reg. 215-4;1-8.

Army regulations further provide:

> Every NAFI is legally constituted as an 'instrumentality of the United States.' . . . Funds in NAFI/entity accounts are Government funds, and NAF property, including buildings, is Government property. However, NAFs are separate from APFs of the U.S. Treasury. They are not commingled with APFs and are managed separately, even when supporting a common program.
>
> * * *
>
> (2) Because NAFIs/entities operate under the authority of the Federal Government, they are entitled to the same sovereign privileges and immunities as the Federal Government accorded by Federal law.

Army Reg. 215-1;4-1(a).

Management and use of the NAFI's funds is governed by 10 U.S.C. § 2783(a), and the regulations authorized thereunder. Specifically, the procedures that govern the contracting practices of the MWR are set forth in Army Regulation 215-4, "Nonappropriated Fund Contracting."

On February 24, 2006, USACFSC issued a solicitation from bidders qualified to provide food service to each of 18 United States Service Areas within the continental United States. Compl. ¶ 5. The particular contract at issue in this case was for United States Service Area 10, encompassing Fort Knox, Kentucky, and Fort Campbell, Tennessee. Compl. ¶ 1. The Solicitation satisfied requirements of the Joint Services Prime Vendor Program, a food procurement program developed for nonappropriated fund food activities located on Army posts as well as other military installations. Id. The Solicitation sought competitive proposals on fourteen product categories including various categories of meat, poultry, and fish, grocery

items, eggs, dairy products, produce, as well as paper and plastic items. Compl. ¶ 5, page 10.

Southern Foods filed this protest on February 19, 2007, and filed a supplement to its protest on March 9, 2007, alleging various regulatory violations by USACFSC in pursuit of the food service contract. Compl. ¶¶ 22-29.

## ARGUMENT

### I. The United States Has Not Waived Sovereign Immunity For NAFIs Such As USACFSC-MWR For Any Purpose Including Bid Protests

#### A. Plaintiff Bears The Burden To Demonstrate A Waiver Of Sovereign Immunity

The burden to establish the Court's jurisdiction rests upon plaintiff. National Surety Corp. v. United States, 20 Cl. Ct. 407, 409 (1990); Al Johnson Constr. Co. v. United States, 19 Cl. Ct. 732, 737 (1990) ("[plaintiff] cannot rest on the allegation of its complaint; it must affirmatively prove the existence of jurisdiction"), (citing KVOS, Inc. v. Associated Press, 299 U.S. 269, 280 (1936)). Consequently, as the party invoking the Court's jurisdiction, Southern Foods has the burden of demonstrating that this Court is able to exercise jurisdiction to entertain its complaint. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936). Further, Southern Foods must establish subject matter jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). "Finally, "[i]n ruling on a motion to dismiss for lack of jurisdiction, the court is not confined to an examination of the complaint, but may take into account 'evidentiary matters outside the pleadings.'" Thomas v. United States, 34 Fed. Cl. 619, 621 (1995) (quoting Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985), aff'd, 101 F.3d 714 (Fed. Cir. 1996) (table).

In its complaint, Southern Food generally alleges that USACFSC's award of the contract contemplated by the Solicitation to U.S. Food Service, violated Federal regulations by making an

"arbitrary and capricious" award of a contract and that the award decision lacked "a rational basis." Compl. ¶ 2. In its jurisdictional statement, Compl. ¶ 1, Southern Foods alleges that this Court possesses jurisdiction to entertain its claims involving the MWR because the solicitation is "a Federal Agency Acquisition over which this Court has jurisdiction under 28 U.S.C. § 1491(a) and 28 U.S.C. § 1491(b)(1)." Southern Foods' reliance upon section 1491(a) is misplaced because NAFIs such as the MWF involved here, are specifically excluded from the jurisdictional grant of that section. AINS, Inc. v. United States, 365 F.3d 1333, 1344 (Fed. Cir. 2004); Pacrim Pizza Co. v. Pirie, 304 F.3d 1291, 1293 (Fed. Cir. 2002).

Pacrim Pizza is similar to this case in that it also involved an MWR entity, in that case the MWR located at the Marine Corps Air Station in Iwakuni, Japan. Pacrim Pizza, 304 F.3d at 1292. The United States Court of Appeals for the Federal Circuit held that MWR entities are NAFIs, and that contracts with them do not constitute express or implied contracts with the United States within the meaning of 28 U.S.C. § 1491(a)(1). Id. at 1293. That section provides, in pertinent part:

> For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

The court concluded that the plain language of section 1491excluded contracts with MWR entities. Southern Foods acknowledges that MWF is a NAFI. Compl. ¶ 4, page 8. As such, Southern Foods necessarily concedes the application of the non-appropriated funds doctrine here and that accordingly, this Court does not possess subject-matter jurisdiction to entertain its complaint. By seeking declaratory relief, Southern Foods implicitly acknowledges that it is

precluded from seeking monetary relief from USACFSC in this Court. See Core Concepts of Fla. v. United States, 327 F.3d 1331, 1333 (Fed. Cir. 2003).

However, Southern Foods cannot manufacture jurisdiction by abandoning its claim for money damages, and making its complaint a bid protest action that seeks only declaratory and injunctive relief. As demonstrated below, the Tucker Act bars this Court from assuming jurisdiction to entertain claims involving USACFSC even if the plaintiff expressly waives any monetary relief.

B. There Is No Waiver Of Sovereign Immunity Here

This Court is a Court of limited jurisdiction. Dynaelectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd. mem., 758 F.2d 665 (Fed. Cir. 1984). In terms of Tucker Act litigation, it is the possibility of awarding money damages from appropriated funds that provides the requisite sovereign immunity waiver. In Furash & Co. v. United States, 252 F.3d 1336, the Federal Circuit stated:

> [t]he jurisdictional grant in the Tucker Act is limited by the requirement that judgments awarded by the Court of Federal Claims must be paid out of appropriated funds. 28 U.S.C. § 2517. Based on that requirement, it has been held that absent some specific jurisdictional provision to the contrary the Court of Federal Claims lacks jurisdiction over actions in which appropriated funds cannot be used to pay any resulting judgment . . . .

252 F.3d at 1339 (emphasis added) (citing United States v. Hopkins, 427 U.S. 123, 125-26 (1976); L'Enfant Plaza Props., Inc. v. United States, 668 F.2d 1211 (Ct. Cl. 1982); Kyer v. United States, 177 Ct. Cl. 747, 369 F.2d 714 (1966)). Therefore, unless this Court possesses the ability to render a monetary judgement against the United States, this Court lacks the power to entertain the claim. Accord Core Concepts, 327 F.3d at 1334 (stating that "the Court of Federal Claims

generally lacks jurisdiction over actions in which appropriated funds cannot be obligated"); Interdent Corp. v. United States, 488 F.2d 1011, 1013(Ct. Cl. 1973) ("The theory has been that since our judgments are paid only from appropriated funds, in order to be actionable here the transaction sued upon must be one which, in the contemplation of Congress, can obligate public monies."). As we demonstrate below, adopting Southern Food's jurisdictional statement would alter the longstanding jurisdictional prerequisites for Tucker Act jurisdiction, and impermissibly add a class of claimants beyond this Court's limited jurisdiction.

"Generally, to invoke the jurisdiction of this court, '[t]he claim must be one for money damages against the United States.'" Newby v. United States, 57 Fed. Cl. 283, 292 (2003) (quoting United States v. Mitchell, 463 U.S. 206, 216 (1983)). "The equitable jurisdiction of the United States Court of Federal Claims is tightly circumscribed only in conjunction with a claim for money damages." Id. Therefore, plaintiff's reliance on Bell BCI Co. v. United States, 56 Fed. Cl. 465 (2003) is misplaced because it did not involve a NAFI. Whether the Architect of the Capitol qualifies as a "federal agency" within the meaning of the Tucker Act says nothing about whether there has been a waiver of sovereign immunity with respect to NAFIs to create equitable jurisdiction to entertain claims involving them in this Court. More instructive is the Federal Circuit's opinion in AINS, Inc., where the court found that the NAFI doctrine was:

> based on the premise that the government has never waived its sovereign immunity to allow private parties to bring breach of contract claims against NAFIs. As a result, the Tucker Act does not provide the Court of Federal Claims with subject matter jurisdiction to hear suits against NAFIs.

AINS, 365 F.3d at 1336.

The court in AINS concluded that the NAFI doctrine is an "established exception to the

Tucker Act." Id. See also Pacrim Pizza, 304 F.3d at 1293 (holding that a contract with a Morale Welfare and Recreation activity was not covered by the Tucker Act); Sodexho Marriott Mgmt., Inc. v. United States, 61 Fed. Cl.229, 242-243 (2004) (holding that Tucker Act jurisdiction did not extend to NAFIs that are not listed in 28 U.S.C. §§ 1346 and 1491(a)).

Sodexho Marriott is also instructive, because the Court there found that it did not have takings jurisdiction over any NAFI not listed in section 1346 or 1491(a), notwithstanding that it left the plaintiff there without a remedy. The Court held that without an express waiver of sovereign immunity clearly enunciated by Congress to include a NAFI in Tucker Act jurisdiction, the Court lacked jurisdiction to entertain a claim involving any NAFI not specifically listed. 61 Fed. Cl. at 242-243.

Principles of statutory construction support this view. [S]tatutory interpretation is a holistic endeavor that requires consideration of a statutory scheme in its entirety." Meeks v. West, 216 F.3d 1363, 1366-67 (Fed. Cir. 2000) (citing United States Nat. Bank of Oregon v. Independent Ins. Agents of Am., Inc., 508 U.S. 439, 454-55 (1993). "When construing a statute, this court must, if at all possible, give effect to all its parts." Ramcor Services Group, Inc. v. United States, 185 F.3d 1286, 1289 (Fed. Cir. 1999) (citing Weinberger v. Hynson, Westcott & Dunning, Inc. 412 U.S. 609 (1973). Thus, sections 1491(a)(1) and 1491(b)(1) of the Tucker Act must be read together as a whole, not as unrelated provisions. Meeks, 216 F.3d at 1366; Massachusetts v. Morash, 490 U.S. 107, 115 (1989) (holding that statutes must be interpreted in accordance with the object and policy of the whole law, not one sentence or part of a sentence). Thus, in determining whether section 1492(b)(1) extends bid protest jurisdiction to cases involving NAFIs, the Court must also consider the provision in section 1492(a)(1) that limited

Tucker Act jurisdiction to only the enumerated NAFIs listed in the text of the statute. Id.

Close reading of all parts of a statute is especially important where, as here, the scope of a waiver of sovereign immunity is at issue. As the United States Court of Appeals for the Federal Circuit has stated, "[i]n construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented by Congress." Fidelity Constr. Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir. 1983). Accord Yancheng Baolong Biochemical Products Co., Ltd. v. United States, 406 F.3d 1377, 1382 (2005) (the intent to waive sovereign immunity must be unequivocally expressed); Bailey v. West, 160 F.3d 1360, (Fed. Cir. 1998) (holding that waivers of sovereign immunity must be explicit and narrowly applied).

C. The 1996 Amendment To The Tucker Act Was Not A Waiver Of Sovereign Immunity For Unenumerated NAFIs

As established above, the non-appropriated funds doctrine precludes this Court from exercising Tucker Act jurisdiction to entertain claims involving USACFSC. The 1996 amendment to the Tucker Act did not change this. 28 U.S.C. 1491(b)(1). Within this circuit, section 1491(b)(1) provides this Court with jurisdiction to entertain bid protests. PGBA, LLC v. United States, 389 F.3d 1219, 1224 (Fed. Cir. 2004). Section 1491(b)(1) of Title 28, of the United States Code reads in relevant part:

> (b)(1) [T]he Unite[d] States Court of Federal Claims. . . shall have jurisdiction to render judgement on action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. . . . [T]he United Sates Court of Federal Claims . . . shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

(emphasis added). Absent from the language of the subprovision is any indication that there was an expansion of Tucker Act jurisdiction. The section was added to the Tucker Act as part of the Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub. L. No. 104-320, 110 Stat. 3870. "It is clear that Congress's intent in enacting the ADRA . . . was to vest a single judicial tribunal (Court of Federal Claims) with exclusive jurisdiction to review government contract protest actions." Emery W.W. Airlines, Inc. v. United States et. al, 264 F.3d 1071, 1079 (Fed. Cir. 2001). See also 142 Cong Rec. S6156 (daily ed. June 12, 1996) (statement of Senator Cohen) ("consolidation of jurisdiction in the Court of Federal Claims is necessary to develop a uniform national law on bid protest issues. . . ."). Consequently, through the ADRA, "Congress amended the Tucker Act in order to give the Court of Federal Claims jurisdiction to consider pre- and post-award bid protests." Novell, Inc. v. United States, 46 Fed. Cl. 601, 605 (2000) (citing 28 U.S.C. § 1491(b)(1)-(4)). Accord Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1330 (Fed Cir. 2001). The ADRA also extended this Court's ability to award declaratory and injunctive relief in both classes of bid protest actions. 28 U.S.C. § 1491(b)(2). While there were many facets to the amendment, there is no indication in either the express language of the section or its legislative history that Congress intended to provide for jurisdiction when there was no possibility that the Court of Federal Claims could not render a monetary award.

D. Principles Of Sovereign Immunity Preclude A Finding Of Tucker Act Jurisdiction To Award Injunctive Relief In A Bid Protest Case

It is axiomatic that waivers of sovereign immunity must be express. Lane v. Pena, 518 U.S. 187, 192 (1996); Ruckelshaus v. Sierra Club, 463 U.S. 680, 685-86 (1983); Yancheng, 406 F.3d at 1382. In Lane, the United States Supreme Court held:

> A waiver of the Federal Government's sovereign immunity must be

> unequivocally expressed in statutory text, . . . and will not be implied. Moreover, a waiver of the Government's sovereign immunity will be strictly construed in terms of its scope, in favor of the sovereign.

Lane, 518 U.S. at 192 (citations omitted).

Additionally, the Lane Court, relying on United States v. Williams, further held that "when confronted with a purported waiver of the Federal Government's sovereign immunity, the Court will construe ambiguities in favor of immunity." Id., (quoting Williams, 514 U.S. 527, 531 (1995)) (emphasis added). The court in Yancheng, relying on Lane, similarly held that waivers of sovereign immunity must be clearly expressed in statutory language because the court has no authority to infer a waiver. Yancheng, 406 F.3d at 1382.

Through the Tucker Act, Congress waived the sovereign immunity of the Government and defined the jurisdiction of the trial court so as to entertain claims "against the United States, founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." Furash, 252 F.3d at 1338-39 (Fed. Cir. 2001) (quoting 28 U.S.C. § 1491); see also United States v. Mitchell, 463 U.S. 206, 212 (1983). However, judgments awarded by this Court must be paid out of appropriated funds. 28 U.S.C. § 2517; see Furash, 252 F.3d at 1339. This requirement limits the jurisdictional grant in the Tucker Act. Furash, 252 F.3d at 1339. Accordingly, the "non-appropriated funds doctrine" provides that, absent some specific jurisdictional provision to the contrary, this Court lacks jurisdiction to entertain any action in which appropriated funds could not be used to pay a resulting judgment. Id. (citing L'Enfant Plaza Props., Inc. v. United States, 668 F.2d 1211 (Ct. Cl. 1982); Kyer v. United States, 369 F.2d 714 (Ct. Cl. 1966); United States v. Hopkins, 427 U.S. 123, 125-26 (1976)).

NAFIs are "federal government entities whose 'monies do not come from congressional appropriation but rather primarily from [their] own activities, services, and product sales.'" El-Sheikh v. United States, 177 F.3d 1321, 1322 (Fed. Cir. 1999) (quoting Cosme Nieves v. Deshler, 786 F.2d 445, 446 (1st Cir. 1986)). Thus, absent a specific grant of jurisdiction, the non-appropriated funds doctrine deprives this Court of jurisdiction to entertain claims against NAFIs. E.g., Hopkins, 427 U.S. at 125-26.

As established above, Congress did not include any express language in 28 U.S.C. 1491(b)(1) waiving sovereign immunity for all NAFIs. The language of section 1491(b)(2) evinces no intention by Congress to expand Tucker Act jurisdiction to include all NAFIs, not merely those enumerated in the language of section 1491(a)(1).

Section 1491(b)(2) provides:

> To afford relief in such an action, the court[] may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.

This paragraph clearly anticipates that any bid protest case could potentially involve both injunctive and monetary relief. There is no indication that Congress intended to waive the sovereign immunity of all NAFIs thereby creating two classes of bid protest complainants: those who could get both injunctive and monetary relief, and those who could get only injunctive relief. If Congress intended to extend partial Tucker Act bid protest jurisdiction to cover NAFIs it would have done so expressly, perhaps by adding a sentence such as "In actions under this section involving a NAFI, only declaratory and injunctive relief shall be available." Absent such explicit language, one could only infer that Congress intended to expand Tucker Act jurisdiction to all

NAFIs for bid protest purposes. Any inference would be impermissible because waivers of sovereign immunity must be explicit. Lane v. Pena, 518 U.S. at 192.

Moreover, if Congress wanted to create a new class of claimants under the Tucker Act, Congress was aware how to make that grant explicit. In 1970, Congress amended the Tucker Act to include jurisdiction over two classes of NAFIs, military and NASA commercial retail exchange services. 28 U.S.C. § 1491(a)(1). “Congress did not, however, alter the general rule excluding NAFIs from Tucker Act jurisdiction, nor did Congress waive the protective basis of sovereign immunity to allow suit other than against the few enumerated exceptions.” AINS, 365 F.3d at 1339 (citing McDonald’s Corp. v. United States, 926 F.2d 1126, 1129-33 (Fed. Cir. 1991)). In 1970, Congress entertained proposals to abolish the non-appropriated funds doctrine. Furash, 252 F.3d at 1339. Rather than abolishing the doctrine altogether, Congress instead chose to create an express, but limited, exemption from the non-appropriated funds doctrine for certain military exchanges which are NAFIs. See id. Congress waived the sovereign immunity of the United States as to claims against those enumerated NAFIs only to the extent that those claims are based in contract. See 28 U.S.C. § 1491(a)(1).

Thus, Congress was aware that the non-appropriated funds doctrine precluded Tucker Act jurisdiction for claims involving NAFIs, yet Congress chose to waive it only with those two types of NAFIs. This was a compromise position reached by the United States Senate which had originally proposed waiving sovereign immunity for disputes with all NAFIs. McDonald’s Corp., 926 F.2d at 1130, citing S. 980, 91st Cong., 1st Sess. ¶ 1 (1969). The bill that was ultimately passed, however, adopted amendments proposed by the United States House of Representatives, to limit the waiver of sovereign immunity only with respect to specifically enumerated commissaries

and post exchanges. Id. at 1131, citing 116 Cong. Rec. H2681 (April 7, 1970). Thus, based on the legislative history of the 1970 Tucker Act amendment, Congress specifically considered extending Tucker Act coverage to all NAFIs, and consciously chose not to do so. Thus, nothing in either the 1970 amendment nor in the 1996 amendment evidences an explicit grant of jurisdiction to include claims against USACFSC-MWR.

E. Southern Foods Cannot Manufacture Jurisdiction Here By Disavowing Monetary Relief

By limiting its requested monetary relief to a "declaration" that it is entitled to money damages, (RFP ¶ 3), Southern Foods essentially asks this Court to create a new class of Tucker Act claimants- those who seek only declaratory or injunctive relief. Southern Foods's proposed new class of claimants is unsupportable. Indeed, this is an approach that could have been taken by the plaintiffs in every NAFI precedent we have cited, but that plainly would have been to no avail. The court in Pacrim Pizza held that the inclusion of jurisdictional language in a NAFI contract could not confer jurisdiction on this Court where there was no independent statutory basis to support it. Pacrim Pizza, 304 F.3d at 1294. So here, Southern Foods cannot manufacture jurisdiction by tailoring its claim to exclude any claim for monetary damages. As this Court has held, "'[N]o action of the parties can confer subject matter subject matter jurisdiction upon a federal court..'" Id, (quoting RHI Holdings, Inc. v. United States, 142 F.3d 1459, 1461 (Fed. Cir. 1998).

Further, it would be illogical for the overwhelming weight of authority to prove that there is no Tucker Act jurisdiction over in general, but that in the context of bid protest actions seeking only non-monetary relief, this Court can exercise its jurisdiction. It is well-established in this circuit's Tucker Act jurisprudence that claimants must identify a money-mandating statute before

this Court can substantively exercise jurisdiction. Accord United States v. Testan, 424 U.S. 392, at 398 (1976); United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983). In the context of a bid protest, the CDA ordinarily provides the requisite jurisdictional vehicle, specifically section 10(a)(1). 28 U.S.C. § 1491(a)(2). But Southern Foods cannot bring a cause of action under the CDA that involves a non-appropriated fund instrumentality that is not specifically identified in 28 U.S.C. §§ 1491 and 1346. Furash, 252 F.3d at 1342-43.[1] As a matter of logic, therefore this Court cannot have jurisdiction over an action which could not lead to the creation of a CDA contract, and this Court is without jurisdiction to entertain a bid protest against USACFSC-MWR, even if the claimant requests only a declaration that it is entitled to monetary relief. Indeed, any declaratory judgment on monetary damages would be unenforceable in this Court or in any other court, thereby illuminating the hollowness, and necessary failure, of Southern Foods's position.

---

[1] Section 1491(a)(1) states, in pertinent part:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purposes of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

28 U.S.C. § 1491(a)(1) (emphasis added).

F. Southern Foods's Remedy Is Provided In The Army Regulations

The relevant Army regulations provide two levels of review for a disappointed bidder, and this is the means of redress that Congress intended with respect to MWR entities.[2]

The procedure for protesting an award of a contract by the MWRF is prescribed in section 4-21 of Regulation 215-4, which provides that a post-award protest must be received within 10 calendar days of notification of the contract award. Army Regulation 215-4; 4-21(d). The contracting officer is required to give a written decision that must contain the following sentence "You are advised that you may appeal this decision within 7 calendar days from receipt of this letter by mailing or otherwise furnishing a written appeal addressed to [the Commanding General or other head of the office issuing the contract]. The notice should indicate that an appeal is intended and should reference this [the contracting officer's] decision." Army Regulation 215-4;4-21(e).

The appeal procedure is stated as follows: "An offeror may appeal a contracting officer's decision on a protest to the appropriate authority set forth in (e) above. The appellant authority shall obtain the written advice of legal counsel before deciding the appeal. The response to the appeal will be in writing and advise the protestor that his/her decision is final, and no further appeals are allowed." Army Regulation 215;4-21(f).

Thus, the NAFI regulations set out a separate and self-contained system for awarding contracts that obligate non-appropriated funds. This conclusion is supported by the Army regulation that with one exception not applicable here, the Government Accountability Office

---

[2] It does not appear that Southern Foods pursued its rights to appeal to the Commanding General.

(GAO) generally does not have jurisdiction over contracts obligating NAF. Army Regulation 214-4;4-21(a). Such contracts do not involve the GAO because non-appropriated funds do not implicate the GAO's concerns of protecting the general treasury.

CONCLUSION

For all of the reasons expressed above, the United States respectively requests that this Court dismiss Southern Food's complaint in its entirety.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

/s Joan M. Stentiford
JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-0341
Fax: (202) 514-8624
Attorneys for Respondent

April 6, 2007

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 6th day of April, 2007, the foregoing "NOTICE OF APPEARANCE", was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Joan M. Stentiford

JOAN M. STENTIFORD