Army Regulation 215–1

Morale, Welfare, and Recreation

# Military Morale, Welfare, and Recreation Programs and Nonappropriated Fund Instrumentalities

Headquarters
Department of the Army
Washington, DC
24 October 2006

UNCLASSIFIED

# Chapter 1
# Purpose, Principles, and Objectives

## 1–1. Purpose
This regulation establishes policy, prescribes procedures, and assigns responsibilities for Army Morale, Welfare, and Recreation (MWR) programs and nonappropriated fund instrumentalities (NAFIs) encompassing the garrison MWR operating entities and includes NAFIs of the Department of Defense (DOD) established in accordance with Army policies herein.

## 1–2. References
Required and related publications and prescribed and referenced forms are listed in appendix A.

## 1–3. Explanation of abbreviations and terms
Abbreviations and special terms used in this regulation are listed in the glossary.

## 1–4. Responsibilities
Responsibilities are listed in chapter 2.

## 1–5. Authority
Army NAFIs/entities, NAFIs operated by the Army for DOD agencies, and MWR programs are established, maintained, and disestablished under sole authority of this regulation. DOD policies contained in DOD Directive (DODD) 1015.2 and DOD Instructions (DODIs) 1015.10, 1015.13, 1015.14, and 1015.15 are implemented in this regulation.

## 1–6. Exclusions
*a.* The Army and Air Force Exchange Service (AAFES) is a joint service NAFI operated and established by authority of the respective service Secretaries. It is exempt from the provisions of this regulation unless otherwise specified herein or in AAFES policies.

*b.* The following funds and related activities are exempt from the provisions of this regulation unless stated otherwise in other applicable regulations or herein. The appropriate governing regulation, where applicable, is indicated in parentheses.

(1) Army Emergency Relief funds (AR 930–4).
(2) Prisoner of war funds.
(3) Patient trust funds.
(4) Prisoner personal deposit funds.
(5) Donor deposit funds.
(6) Funds established for the benefit of civilian employees of the Corps of Engineers.
(7) Contractor and subcontractor funds on Department of the Army (DA) garrisons, including funds established for contractor employees and concessionaire funds.
(8) Funds of labor union locals, veterans' organizations, banks, and credit unions.
(9) All funds accounted for under U.S. Treasury symbols and resources acquired with appropriated funds (APFs), such as the Trust Revolving Fund Account and Army Commissary Surcharge Fund.
(10) Funds established by private organizations (POs) authorized to operate on Army garrisons (AR 210–22).
(11) U.S. Military Academy (USMA) Cadet Mess Ration Fund and personal trust funds (AR 210–3).
(12) U.S. Soldiers' and Airmen's Home personal trust funds.
(13) Funds generated by blind vendors operating under authority of the Randolph-Sheppard Act (AR 210–25).
(14) Chaplain's Nonappropriated Funds (AR 165–1).
(15) The U.S. Army Nonappropriated Fund Employee Retirement Plan Trust.
(16) The U.S. Army Nonappropriated Fund Employee 401(k) Savings Plan Trust.
(17) Department of the Army Welfare Fund (AR 230–3).
(18) Informal funds (AR 600–20).
(19) Civilian Welfare Funds and Post Restaurant Funds (AR 215–7).

## 1–7. Nonappropriated fund instrumentality structure
NAFIs are classified into six program groups and further classified into three funding categories. Chapter 3 outlines the NAFI structure.

## 1–8. Concept
*a.* The Army MWR program is a quality-of-life program that directly supports readiness by providing a variety of community, Soldier, and family support programs, activities, and services. Included are social, fitness, recreational,

educational, and other programs and activities that enhance community life, foster Soldier and unit readiness, promote mental and physical fitness, and generally provide a working and living environment that attracts and retains quality Soldiers.

*b.* The range of MWR programs offered at Army garrisons is based on the needs of authorized patrons who work and reside there. Programs are managed by garrison commanders within the framework of authorized and available APFs and nonappropriated funds (NAFs). NAFs are those funds that are locally generated by MWR programs or provided by Region directors and/or the Army Morale, Welfare, and Recreation Fund (AMWRF).

*c.* Each MWR program is classified by category. Categories are determined by their effect on the military mission and their ability to generate revenue. Chapter 3 outlines the three categories of MWR programs.

### 1–9. Principles

*a.* MWR programs are designed to meet the needs of the garrison community. This includes Soldiers, units, retirees, civilian employees, and families.

*b.* MWR programs are prioritized based on their impact on readiness.

*c.* MWR programs support readiness, well being, recruiting, and retention of highly qualified Soldiers.

*d.* NAFs are returned to Soldiers, their families, and other authorized patrons by providing needed MWR programs, services, and capital improvements.

*e.* Program management is based on long-range planning, generation of NAF resources, and application of authorized APF resources to meet current operating requirements while providing for reinvestment in programs, facilities, and equipment.

### 1–10. Objectives

The MWR program—

*a.* Supports combat readiness and effectiveness.

*b.* Supports recruitment and retention of quality personnel.

*c.* Provides leisure time activities, which support a quality of life commensurate with generally accepted American values.

*d.* Promotes and maintains the mental and physical well-being of authorized personnel.

*e.* Fosters community pride, Soldier morale, and family wellness and promotes unit esprit de corps.

*f.* Eases the impact of unique aspects of military life, such as frequent relocations and deployment.

## Chapter 2
## Responsibilities

### 2–1. Secretary of the Army

The Secretary of the Army (SA) will—

*a.* Establish, maintain, and disestablish Army NAFIs/entities. This authority is delegated within the Army as provided for in this regulation (chap 3) and other pertinent regulations, with the exception that authority to establish joint NAFIs is not further delegated.

*b.* Coordinate on joint service matters with the Under Secretary of Defense for Personnel and Readiness.

*c.* Designate the Assistant Chief of Staff for Installation Management (ACSIM) as the Army Staff (ARSTAF) proponent and focal point for all MWR programs and NAFIs.

*d.* Designate financial oversight of APF and NAF to the Assistant Secretary of the Army for Financial Management and Comptroller (ASA(FM&C)), and responsibility for MWR, NAFIs/entities, and personnel to the Assistant Secretary of the Army for Manpower and Reserve Affairs (ASA(M&RA)).

### 2–2. The Assistant Chief of Staff for Installation Management

The Assistant Chief of Staff for Installation Management (ACSIM) will—

*a.* Serve as the ARSTAF proponent for MWR and related programs, NAF and APF management of MWR programs and NAFIs, and Armywide MWR and NAFI policy.

*b.* Exercise ARSTAF supervision over the Installation Management Agency (IMA) and the U.S. Army Community and Family Support Center (USACFSC) in matters pertaining to Army MWR APFs and NAFs and NAFIs.

*c.* Endorse, promote, and ensure compliance of Army MWR baseline standards.

*d.* Articulate funding requirements identified by Army MWR baseline standards to the Secretary of the Army, DOD, and Congress.

### 2–3. The Director, Installation Management Agency

The Director, Installation Management Agency (IMA) will—

*u.* Develop accreditation, certification, and inspection programs for MWR programs for IMA implementation.

*v.* Develop program standards, benchmarks, outcome criteria, and operating guidance for management of MWR programs for IMA implementation.

*w.* Operate the Armed Forces Recreation Centers (AFRCs) and ARMP.

*x.* Oversee, manage, and control the Army MWR MISs and the MWR Configuration Control Board process.

*y.* Manage MWR financial management process and provide necessary information for IMA synchronization of resources and issues.

*z.* Operate and administer common support NAF financial management functions such as banking, investment, and insurance and establish investment oversight groups for each activity that invests NAFs.

*aa.* Administer the Army MWR and Army Recreation Machine (ARM) trust funds. The AMWRF is the successor-in-interest to IMA Regions and other designated NAFIs.

*ab.* Review and approve requests for establishment of all Army NAFIs/entities and DOD agencies requesting NAFI establishment under the Army's policies and appoint advisory groups for DA-level NAFIs.

*ac.* Serve as the POC for joint service policy pertaining to the AAFES, to include recommending policy to the ACSIM for, and publication of, applicable joint service regulations. Serve as DA POC for and represent the Army on joint service committees and working groups, to include DOD MWR committees. Serve as executive agent responsible to the OSD for the annual consolidated MWR Financial and Personnel Management Report (see chap 17, sec VI).

*ad.* Serve as DOD POC for DODI 1015.9 and Army POC for funding Boy and Girl Scout programs overseas.

*ae.* Designate Army representatives to the Inter-Service Sports Committee, the U.S. Olympic Committee, the Amateur Athletic Union, and other national sports governing bodies as appropriate and direct and control Army participation in interservice, national, and international events and Army World Class Athlete Program (WCAP) (see chap 8).

*af.* Obtain copyright and royalty clearances, as required, for Armywide sponsored entertainment events.

*ag.* In coordination with the U.S. Army Soldier Support Center and U.S. Army Training and Doctrine Command (TRADOC), develop MWR doctrine, policy, and operations procedural guidance for mobilization, contingencies, and wartime. Delineate unit/individual responsibilities.

*ah.* Produce the U.S. Army Soldier Show.

*ai.* Develop specifications and standards for procurement and distribution of library materials and administer a supplemental acquisition program.

*aj.* Integrate Army Pest Management Program requirements into Army MWR programs and NAFIs in accordance with AR 200–5.

*ak.* With regard to NAFs, act as Army proponent for all aspects of NAF financial management, to include—

(1) Publishing annual NAF budget guidance.

(2) Reviewing IMA consolidated IMA Region budgets.

(3) Providing primary oversight for NAF accounting procedures in coordination with Defense Finance and Accounting Service (DFAS).

(4) Publishing and submit appropriate reports and trend analyses as required or necessary.

(5) Maintaining NAF database for management information.

(6) Establishing liaison with DFAS on accounting policy and systems.

*al.* With regard to APFs and in accordance with Army Planning, Programming, Budget Execution System guidance—

(1) Orchestrate the development of Armywide MWR POM requirements.

(2) Coordinate with IMA to ensure baseline standards and Army priorities are addressed.

(3) Serve as functional POC for all MWR in MDEP, POM, and military construction processes.

(4) Present and defend POM requirements to Installation Program Evaluation Group (and others as appropriate).

(5) Work directly with IMA, ACSIM Resource Integration Office, and ARSTAF to ensure MWR issues are appropriately addressed and recorded in applicable databases.

(6) Assist the IMA with maintaining the Army MWR programs' priority list of unfinanced requirements.

(7) Recommend to the Army Budget Office (ASA(FMC)) and IMA the allocation of resources by MDEP and IMA Region/garrison.

(8) Monitor the execution of MWR MDEP resources. Take appropriate action to ensure programming, budgeting, and execution objectives are met.

(9) Publish and submit appropriate reports and trend analyses as required or necessary.

## Chapter 3
## Nonappropriated Fund Instrumentality Structure

NAFIs and their programs are classified into one of six program groups. Within each group, programs are further classified into one of three funding categories. The funding categories are the basis for APF and NAF authorizations in appendix D.

## Section I
## Nonappropriated Fund Instrumentality Groups

### 3–1. Program Group I: Military morale, recreation and welfare programs
All military MWR programs, to include Child Development Services and School Age Care, are included within this group. Policies pertaining to these programs are contained throughout this regulation and AR 608–10. Military MWR programs are classified into three funding categories outlined in section II of this chapter.

### 3–2. Program Group II: Armed Forces exchanges
Policies pertaining to this group of NAFIs are contained in AR 60–20. Exchanges are classified as a category C program.

### 3–3. Program Group III: Civilian morale, recreation and welfare programs
Policies pertaining to this group of NAFIs are contained in AR 215–7. Civilian MWR programs are classified as a category C program.

### 3–4. Program Group IV: Lodging Program supplemental mission funds
Army Lodging is an APF mission. The Army Lodging Program Supplemental Mission Fund is a NAFI and receives APF and NAF support comparable to a category C program.

### 3–5. Program Group V: Supplemental mission funds
Policies pertaining to this group of NAFIs are contained in this regulation and various other regulations identified in chapter 5. These programs are APF mission programs. Supplemental mission funds are accounted for as NAFs and receive funding support comparable to category C programs. NAFIs in this group include, but are not limited to—

*a.* School Lunch Program.
*b.* Museums.
*c.* Vehicle Registration Fund.
*d.* Cadet Restaurant.
*e.* Athletic Association Fund.
*f.* U.S. Disciplinary Barracks.
*g.* Stars and Stripes.
*h.* Military Treatment Lodging Facilities.

### 3–6. Program Group VI: Special purpose central funds
These funds are sole providers of a consolidated NAF function, such as construction, accounting, procurement, personnel administration, employee health and life insurance, and risk management. These are HQ-level programs. Expenses of these funds are generally recovered through premiums or assessments charged or offset against earnings prior to distribution. These funds are authorized the same APF and NAF support authorized for category C programs. Centrally administered NAFIs are shown in table 3–1.

**Table 3–1**
**Listing of centrally administered DA NAFIs**

| |
|---|
| **NAFI:** Army Morale Welfare and Recreation Fund<br>**SNN:** BA1<br>**Scope:** Ultimate successor-in-interest to all Army operating NAFIs. Major financing agent to Army NAFMC program. |
| **NAFI:** Army Medical/Life Fund<br>**SNN:** BAA<br>**Scope:** Repository of the assets of the U.S. Army NAF Group Insurance Plan. Collects group health, life, and dental insurance premiums from NAF employees and employers; contracts with various providers of coverage on behalf of NAF employees; pays premiums and service fees to direct providers of health, dental, and life insurance coverage on behalf of NAF employees; pays claims expenses and direct and indirect general administrative expenses of health and dental insurance incurred by the plans; and provides general administrative services to the plans. |
| **NAFI:** Army Banking and Investment Fund<br>**SNN:** BA9<br>**Scope:** Provides a centralized banking and investment vehicle for NAFIs. |

management personnel, and others who represent authorized patron groups. When discussing actions impacting or concerning other quality of life/well being programs, responsible individuals may be invited and may contribute.

## Chapter 4
## Nonappropriated Fund Instrumentality Legal Status

### Section I
### Authority

#### 4–1. Nonappropriated fund instrumentalities

*a.* Every NAFI is legally constituted as an "instrumentality of the United States." The term "NAFI" includes entities at the garrison level, hereafter referred to as garrison MWR operating entities or simply entities (previously the installation MWR fund). Funds in NAFI/entity accounts are Government funds, and NAF property, including buildings, is Government property. However, NAFs are separate from APFs of the U.S. Treasury. They are not commingled with APFs and are managed separately, even when supporting a common program.

(1) Each NAFI/entity will operate under the authority of the U.S. Government in accordance with applicable Federal laws and departmental regulations.

(2) Because NAFIs/entities operate under the authority of the Federal Government, they are entitled to the same sovereign privileges and immunities as the Federal Government accorded by Federal law.

(3) Applicable DOD directives and implementing Army regulations are binding on NAFIs.

*b.* NAFI/entity programs and facilities will be operated, maintained, and funded as an integral part of the personnel and readiness program.

#### 4–2. Administration

NAFIs/entities will—

*a.* Be administered by military or civilian personnel acting in an official capacity.

*b.* Account for and report financial operations through command and department channels.

*c.* Be subject to review by Congress.

*d.* Expend resources to support MWR programs, primarily the programs from which NAF revenues were derived.

*e.* Employ, discharge, and otherwise administer NAF personnel in accordance with AR 215–3 and this regulation.

*f.* Engage in contractual relationships in accordance with DODI 4105.71, DODD 4105.67, and AR 215–4.

*g.* Derive revenue from fees and charges paid by authorized patrons of MWR programs, other NAFIs/entities, and nongovernmental sources.

*h.* Be considered integral and essential to the conduct of the military mission.

#### 4–3. Nonappropriated fund employees

NAF employees are Federal employees within the Department of Defense, but are not subject to many personnel laws administered by the Office of Personnel Management (OPM) for APF employees. Unless otherwise specifically stated, 5 USC 2105(c) explains this status and identifies the OPM-administered laws that cover NAF employees. Funding NAF employees through the MWR USA/UFM funding practices will not change the Federal employment status of NAF employees.

### Section II
### Fiduciary Responsibility (10 USC 2783)

#### 4–4. Nonappropriated funds

NAFs are Government funds entitled to the same level of protection as funds appropriated by the Congress of the United States. NAFs will be used for the collective benefit of authorized patrons who generate them. These funds are separate and apart from funds recorded in the books of the Treasurer of the United States.

#### 4–5. Individual responsibility

There is an individual fiduciary responsibility to use NAFs properly and prevent waste, loss, mismanagement, or unauthorized use. This responsibility will extend to all DOD personnel, to include members of the Armed Forces and APF and NAF civilian employees.

#### 4–6. Violations

Reporting of suspected violations at the lowest organizational level possible is encouraged. However, reports may be made to senior management, organizational inspectors general, or to the Defense Hotline. Garrison commanders will be

responsible for prompt detection, proper investigation, and appropriate corrective action. NAF employees and applicants for employment in NAF positions will be protected from reprisal for making certain disclosures, as described in 10 USC Section 1587.

*a.* Garrison commanders will take appropriate administrative action against present and former personnel responsible for violations. Where evidence indicates criminal conduct, garrison commanders will refer the matter to the appropriate criminal investigative organization.

*b.* Penalties for violations of waste, loss, mismanagement, or unauthorized use of NAFs apply to military and APF and NAF civilian personnel and include the full range of statutory and regulatory sanctions, both criminal and administrative.

(1) Under 10 USC 2783, penalties for substantial violations of statutes and regulations governing the management and use of NAFs by civilian NAF employees will be similar to those provided by law for misuse of appropriations by APF personnel. Investigative procedures for loss of NAF assets and property are outlined in this regulation.

(2) Penalties for substantial violations of statutes and regulations governing the management and use of APFs by military personnel and APF civilian employees of the U.S. Government are addressed in 31 USC 1350.

(3) Military personnel will be subject to the Uniform Code of Military Justice.

## Section III
## Tax Requirements

### 4–7. Federal taxes

*a.* Taxes on articles or services must be paid by the entity upon which the taxes are levied, whether or not the articles or service may be furnished for the use of, or the sale in, NAF programs. However, in general, there will be provision for exemption from these taxes when the articles or services are sold to a NAFI/entity for resale outside the United States and its territories on alcoholic liquors tax, beer tax, and tobacco tax.

*b.* NAFIs/entities are exempt from payment of Federal income taxes and are not required to file returns.

### 4–8. Federal income and employment taxes

NAFIs/entities will withhold Federal Insurance Contribution Act (FICA) and other taxes in accordance with controlling law.

### 4–9. Alcoholic beverage taxes (Internal Revenue Code of 1986)

Federal wholesale or retail dealer taxes will be paid annually, by 1 July: $500 is levied for wholesale operation and $250 for retail. A NAFI/entity will be liable for only one tax, regardless of how many sales outlets operated. Only the wholesale tax will be paid when conducting both wholesale and retail operations. Details and forms needed to pay taxes are available from Department of the Treasury, Bureau of Alcohol, Tobacco, and Firearms, ATTN: Revenue Division, Room 5000, 650 Massachusetts Avenue, NW, Washington, DC 20226.

### 4–10. NAFI/entity employment relationship (for tax purposes)

*a.* Many individuals are considered to be employed by a NAFI/entity for the purposes of Federal income and employment taxes, although they are not considered NAF employees for other purposes (AR 215–3). Both Federal and employment taxes will be withheld when the NAFI/entity has the legal right to control the method and result of the services performed.

(1) Generally, individuals who offer their services to the public are independent contractors and not employees (such as physicians, lawyers, dentists, construction contractors, public stenographers, and auctioneers, engaged in the pursuit of an independent trade, business, or profession). Sporting officials and instructors under contract with a NAFI/entity may be employees of the NAFI/entity for Federal income and employment tax purposes (FICA and all other taxes paid by the NAFI/entity are added to the contract cost). Under these circumstances, individuals will be notified that, for Federal income and employment tax purposes, they will be treated as NAF employees regardless of the provisions of AR 215–4.

(2) DOD 7000.14–R, volume 13, chapter 8, lists common law rules that are used by local offices of the staff judge advocate (SJA) to characterize employment relationship to identify appropriate taxes to be withheld and paid.

(3) An individual who disputes the employment relationship may appeal directly to the IRS. Pending the final IRS decision, the individual will be treated as an employee or independent contractor, as determined by an SJA using the common law factors.

*b.* Reporting independent contractor payments to the IRS will be in accordance with DOD 7000.14–R, volume 13.

### 4–11. Taxes on employee tips

*a.* Withheld compensation includes allowances for tips received by employees of food and beverage programs, as specified in appendix C. Addresses for requesting IRS publications and forms are found in DOD 7000.14–R, volume 13.

Army Regulation 215–4

Morale, Welfare, and Recreation

# Nonappropriated Fund Contracting

Headquarters
Department of the Army
Washington, DC
11 March 2005

UNCLASSIFIED

# Chapter 1
# Nonappropriated Fund Procurement System

## Section I
## Purpose, Principals, and Objectives

### 1–1. Purpose
*a.* This regulation establishes and implements policy governing acquisitions made with nonappropriated funds (NAF) within the Department of the Army (DA). Department of Defense (DOD) policy regarding the execution of NAF procurement is set forth in DOD Directive (DODD) 4105.67 and DOD Instruction (DODI) 4105.71.

*b.* The goal of the NAF procurement system is to obtain quality supplies, services, and construction in an efficient, cost-effective, and timely manner. The NAF procurement system enables contracting officials to exercise innovative and creative processes while providing policy and guidance for executing contracts and ensuring that the right contractor for the requirement is selected. When obligating NAF, contracting officials (both NAF and appropriated fund (APF)) shall follow the NAF policy and guidance contained herein and, based on prudent discretion and sound business judgment, may employ other appropriate acquisition procedures that do not violate applicable laws, statutes, or regulations. The NAF procurement system promotes and encourages—

(1) The selection of the contractor with the best overall value to satisfy the nonappropriated fund instrumentality (NAFI) mission.

(2) The use of discretion, sound business judgment, and flexibility while maintaining fairness and integrity.

(3) Simplified acquisition methods and innovative processes, as appropriate, to conduct timely and cost-effective procurements.

(4) Open communication and access to information throughout the procurement process using electronic methods for information exchange.

(5) Maximum practicable competition in accordance with paragraph 2–12. However, sole-source contracting is permitted when it is in the best interest of the NAFI, in accordance with paragraph 2–13.

(6) The use of a range of contract types and transactions best suited to a particular procurement.

(7) High standards of conduct and professional ethics.

(8) The use of contractors with a record of successful past performance or that demonstrate the ability to perform.

(9) The use of responsible prospective contractors as defined in the glossary of this regulation. If a policy or particular strategy or practice is in the best interest of the NAFI and is neither specifically addressed in this regulation nor prohibited by law, statute, or other regulation, NAF contracting officers should not assume that it is prohibited. Rather, absence of direction should be interpreted as permitting contracting officers and other acquisition team members to be innovative and use sound business judgment to accomplish the procurement in the most cost-effective manner. The strategy or practice must be documented in the contract file.

### 1–2. References
Required and related publications and prescribed and referenced forms are listed in appendix A.

### 1–3. Explanation of abbreviations and terms
Abbreviations and terms used in this publication are explained in the glossary. Those abbreviations and terms that are unique to or have special meaning within the context of a chapter are defined within that chapter. For the purposes of this regulation, *shall* and *will* are used interchangeably, as are *exception* and *waiver*.

### 1–4. Responsibilities
Responsibilities are listed in section II of chapter 1.

### 1–5. Authority
Army NAF contracting policies are established and maintained under the sole authority of this regulation.

### 1–6. Exclusions
The following funds and related activities are excluded from the provisions of this regulation unless otherwise stated in other applicable regulations or herein.

*a.* The U.S. Army Nonappropriated Fund Employee Retirement Plan Trust.

*b.* The U.S. Army Nonappropriated Fund Employee 401(k) Savings Plan Trust.

*c.* The Army Banking and Investment Fund (investment contracts only).

*d.* Chaplain's Nonappropriated Funds.

*e.* The Army and Air Force Exchange Service.

*f.* The U.S. Army Reserve.

*g.* The National Guard Bureau.

### 1–7. Exceptions and clarifications

*a.* The United States Army Community and Family Support Center (USACFSC) contracting elements will submit written requests for exceptions and clarifications to policies set forth in this regulation directly to the USACFSC, NAF Contracting Directorate for administrative and staffing actions.

*b.* The Installation Management Agency (IMA) NAF contracting elements will submit written requests for exceptions and clarifications to policies set forth in this regulation through the requester's IMA regional office and the IMA Headquarters Office to the USACFSC, NAF Contracting Directorate for administrative and staffing actions. Requests for clarification will be answered by the USACFSC, NAF Contracting Directorate through the IMA Headquarters Office and the IMA regional office to the requestor. All requests for exceptions will be forwarded to the Assistant Chief of Staff for Installation Management (ACSIM) by USACFSC for approval or disapproval. The USACFSC, NAF Contracting Directorate will respond in writing through the IMA Headquarters Office and the IMA regional office to the requestor.

*c.* To be considered, requests for exceptions must contain the following information:

(1) The paragraph of the regulation for which the exception is being requested.

(2) Reason for the request.

(3) The NAFI that requires the exception.

(4) What outcome is expected, if granted.

(5) The length of time for which the exception is requested.

## Section II
## Responsibilities

### 1–8. Commanding General, USACFSC

*a.* The Commanding General (CG), USACFSC, is responsible for implementing policies and procedures for Army NAF acquisitions. The CG, USACFSC is responsible for the issuance of all NAF contracting officers' warrants and the management and oversight of all USACFSC contracting elements, which includes the Armed Forces Recreation Centers (AFRCs) and the Army Recreation Machine Program (ARMP), without power of delegation. The CG, USACFSC will approve and issue warrants to IMA contracting elements in accordance with paragraph 1–15*b*.

*b.* The CG, USACFSC is responsible for management and oversight of NAF contracting activities under his or her command. This responsibility includes, as a minimum—

(1) Conducting Procurement Management Assistance Program (PMAP) review visits. Note: The USACFSC, NAF Contracting Directorate will assist, as requested or agreed to, in providing procurement assistance and reviews to IMA regional directors for Army NAF installation and regional contracting activities.

(2) Ensuring the separation of functions to the maximum extent possible as set forth in paragraph 1–20.

(3) Ensuring appropriate training is available to contracting officers commensurate with the complexity, type, and dollar value of the acquisitions to be assigned to them.

### 1–9. Commander, United States Military Entrance Processing Command

*a.* The Commander, United States Military Entrance Processing Command (USMEPCOM) is the approving authority for Army NAF acquisitions and issuance of Army NAF contracting officers warrants within USMEPCOM in accordance with this regulation.

*b.* The Commander, USMEPCOM is responsible for the management and oversight for NAF contracting activities within USMEPCOM. This responsibility will include—

(1) Management review visits.

(2) Clarification of NAF contracting authority, policies and responsibilities.

(3) Ensuring separation of functions, with proper internal management controls, to the maximum extent possible.

(4) Ensuring adequate training commensurate with the complexity and dollar value of the acquisitions to be assigned.

*Note.* The USACFSC, NAF Contracting Directorate will assist, as requested, in providing management assistance.

*c.* A copy of all management review findings will be forwarded to the Commander, USACFSC, ATTN: USACFSC–ZA, 4700 King Street, Alexandria, VA 22302–4401, upon completion of each visit.

### 1–10. IMA Director

The IMA Director is responsible for designation of the single authorized supporting contracting office for Army Lodging.

(1) Applicable portions of Army regulations and other DOD directives and procedural requirements are satisfied with regard to project execution, funding, and acquisition approvals.

(2) The proposed action represents sound business judgment.

(3) The proposed contract is technically and legally sufficient.

(4) Adequate competition was obtained.

(5) An impartial and comprehensive evaluation of offerors' proposals was made.

(6) Proposed award is made of the offeror whose proposal contains the highest degree of realism and whose performance is expected to best meet the NAFI requirements set forth in the solicitation.

*c. Board members.* The board will consist of senior leadership of the NAFI, contracting, financial, technical, and legal personnel. The board chairperson will be the senior voting member, in terms of grade and rank, and will conduct board proceedings. The board chairperson will only vote in the event of a tie among the voting members. All board members, except contracting and legal personnel, will be voting members.

### 4–20. Debriefing offerors

*a.* All unsuccessful offerors, upon request, shall be debriefed and furnished the basis for the selection decision. Request for debriefing shall be made by the offeror by written request within 7 calendar days after receipt of the notice from the contracting officer that the offeror did not receive award.

*b.* Debriefings may be done verbally (including by telephone) or in writing by the contracting officer who may request support from the evaluation team. The contracting officer shall document the debriefing in the contract file.

*c.* A pre-award debriefing shall include—

(1) The NAFI's evaluation of significant elements of the offeror's proposal.

(2) A summary of the rationale for eliminating the offeror from the competitive range.

(3) Reasonable responses to relevant questions about the source selection process contained in the solicitation and applicable regulations that were used.

*d.* A pre-award debriefing shall not disclose—

(1) The number of offerors.

(2) The identity of other offerors.

(3) The contents of other offerors' proposals.

(4) The ranking of other offerors.

(5) The evaluation of other offerors.

(6) Any comparison of offerors.

*e.* A debriefing after award shall include the following:

(1) Significant deficiencies or weaknesses in the proposal.

(2) Overall rating of the successful offeror and the debriefed offeror.

(3) Past performance information on the debriefed offeror.

(4) Overall ranking of all offerors.

(5) Rationale for award.

(6) Reasonable responses to questions on the source selection process contained in the solicitation and applicable regulations that were used.

*f.* A debriefing after award is not—

(1) A page-by-page analysis of the proposal.

(2) A point-by-point comparison of proposals.

(3) A debate over the award decision.

(4) A release of any offeror's proprietary information to other offerors.

### 4–21. Protests

*a. Protest.* A protest is a written objection by an interested party. An interested party is an actual or prospective offeror whose direct economic interest would be affected by the award of, or failure to award, a particular contract. Protests for contracts awarded using NAF may be protested to the contracting officer. The Government Accountability Office (GAO) generally does not have jurisdiction over contracts obligating NAF, although obligation of NAF by APF contracting officers may result in GAO jurisdiction. All protests to the GAO received by the NAF contracting officer will be promptly forwarded to legal counsel for review and comment. The contracting officer is responsible for answering or resolving all protests received. Protests may be received either before or after contract award. Any protest lodged with other than the contracting officer will be referred to or sent immediately to the contracting officer.

*b. Oral protests.* When a protest is received orally, the contracting officer will advise the protestor that, in order to be considered, the protest must be submitted in writing and forwarded to the contracting officer's attention.

*c. Protests prior to award.*

(1) When a protest is received prior to the award of a contract, the award will be delayed until the protest (including

appeals) is resolved, unless one of the following applies (such determination will be made at one level above the contracting officer):

*(a)* The supplies or services to be contracted for are urgently required.

*(b)* Delivery or performance will be unduly delayed by failure to make a prompt award.

*(c)* Expiration of current contract is imminent and continued service is required.

*(d)* A timely award will otherwise be advantageous to the NAFI.

(2) Before awarding a contract under the above-cited circumstances, the advice of legal counsel shall be obtained. The contracting officer will document oral advice by placing a memorandum for record in the resulting contract file.

(3) The contracting officer will determine the merits of the protest. When the contracting officer finds a protest has merit (for example, ambiguous specifications, flawed evaluation process), he or she will promptly take action to correct the situation. Such possible actions include, among others, the rejection of all proposals and issuance of a new or amended solicitation or using revised specifications or evaluation criteria. In the event of amended solicitations, the scheduled date for receipt of proposals will be extended accordingly. If the resolution of the protest makes previously ineligible offers eligible for award, appropriate notification will be given to the offerors concerned.

*d. Protests after award.* To be considered, a protest shall be lodged within 10 calendar days of notification of contract award. When a protest is received by the contracting officer after the contract has been awarded, the contract normally will not be terminated. If the protester presents compelling reasons why the award should be invalidated, the contracting officer will attempt to negotiate a mutual agreement with the contractor for performance to be suspended on a no-cost basis until the protest is resolved. If a no-cost suspension cannot be negotiated, the advice of legal counsel will be sought.

*e. Requirement for a written decision.* Protests require a written decision and reply by the contracting officer to the protester explaining the rationale for the decision, and will include the following statement: "You are advised that you may appeal this decision within 7 calendar days from receipt of this letter by mailing or otherwise furnishing a written appeal addressed to (insert the full mailing address of the office agency issuing the contract (in other words, CG, USACFSC, IMA regional director, or garrison commander) as appropriate). The notice should indicate that an appeal is intended and should reference this decision."

*f. Appeals.* An offeror may appeal a contracting officer's decision on a protest to the appropriate authority set forth in *e*, above. The appellant authority shall obtain the written advice of legal counsel before deciding the appeal. The response to the appeal will be in writing and advise the protester that his/her decision is final and that no further appeals are allowed.

## 4–22. Mistakes after award

When a mistake in the successful offeror's proposal is discovered after award, it may be corrected by modification to the contract only if the correction is favorable to the NAFI and if it does not change the essential requirements of the contract. In all other cases, the following procedures will be used:

*a.* The contracting officer will obtain evidence from the contractor to prove that a mistake was actually made and to show what the contractor intended to offer in the proposal.

*b.* The contracting officer will then review the contractor's documents to verify the mistake and to determine whether the contract should be modified, terminated, or allowed to stand as written.

*c.* The contracting officer will obtain the advice of legal counsel.

*d.* After reaching a decision, the contracting officer will prepare a memorandum for the contract file that contains the following:

(1) All evidence furnished by the contractor in support of the mistake.

(2) A summary of the evidence provided by the contractor and any additional pertinent evidence.

(3) A determination as to whether a mistake was made. If a mistake has been made, the contracting officer will also analyze whether—

*(a)* The effect of correcting the mistake would increase costs to the NAFI, determine whether a revised contract would still represent the lowest offer, and examine any other considerations that the contracting officer deems appropriate.

*(b)* Not correcting the mistake would affect the contractor's ability to perform under the existing contract and the quality of the supply or service to be delivered.

(4) A discussion on the status of the contract in terms of performance, deliveries, and payments.

(5) A statement of the contracting officer's recommendation. The contracting officer will issue the written decision.

## 4–23. Content of files for formal acquisitions

The examples below are of records normally kept in contract files. The list is not all-inclusive and not all items listed will be applicable to every file.

*a.* The purchase request, acquisition planning information, market research, and other presolicitation documents.

*b.* Evidence of availability of funds, to include any increases or decreases.