715-X

Comptroller General
of the United States

Washington, D.C. 20548

# Decision

**Matter of:** Thayer Gate Development Corporation

**File:** B-242847.2

**Date:** December 9, 1994

DECISION

Thayer Gate Development Corporation protests its elimination from further consideration for award of a contract pursuant to request for proposals (RFP) No. NAFBA-1-89-R-0001, issued by the Non-appropriated Fund Contracting Directorate at the Army's Community and Family Support Center (CFSC). The RFP sought offers for both a developmental agreement for the renovation of the Hotel Thayer, located on the grounds of the United States Military Academy at West Point, New York, and a 50-year lease of the building and grounds.

We dismiss the protest.

The procurement at issue here involves awarding a lease for the operation of the Hotel Thayer to a developer who will finance the renovation of the hotel, and operate it for a profit. As stated above, the procurement is being conducted by a non-appropriated fund instrumentality (NAFI). In addition, the solicitation anticipates no use of funds from the government with the exception of a loan guarantee on the developer's loan for the first 10 years of the contract. This loan guarantee is provided by the Army's Morale, Welfare and Recreation Fund, also a NAFI.

By letter dated November 17, the Army requested dismissal of Thayer Gate's protest on the ground that our Office lacks jurisdiction to review a procurement conducted by a NAFI.[1] In response, Thayer Gate argues that while the CFSC officials may in fact be employed by a NAFI, they are in this procurement acting merely as agents for the Army.

The statutory authority of the General Accounting Office to decide protests of procurement actions is set forth in the Competition in Contracting Act of 1984 (CICA), 31 U.S.C. §§ 3551 *et seq.* (1988 and Supp. V 1993). CICA defines a protest as a written objection by an interested party to a

[1] The Army also points out that our Office dismissed a 1991 protest against this procurement filed by Thayer Gate after learning that the procurement was conducted by a NAFI. *Thayer Gate Dev. Corp.*, B-242847, Feb. 6, 1991.

solicitation by a federal agency for bids or proposals for a proposed contract for the procurement of property or services, or a written objection by an interested party to the award or proposed award of such a contract. 31 U.S.C. § 3551.

Since the passage of CICA, our jurisdiction has not been based on the expenditure of appropriated funds, see T.V. Travel, Inc. et al., 65 Comp. Gen. 109 (1986), 85-2 CPD ¶ 640, aff'd, 65 Comp. Gen. 323 (1986), 86-1 CPD ¶ 171, or on the existence of some direct benefit to the government. See Spectrum Analysis & Frequency Eng'g, B-222635, Oct. 8, 1986, 86-2 CPD ¶ 406. Thus, our jurisdictional concerns here are unrelated to the fact that no appropriated funds are involved in the procurement. Rather, we look to whether the procurement at issue is being conducted by a federal agency. See Monarch Water Sys., Inc., 64 Comp. Gen. 756 (1985), 85-2 CPD ¶ 146.

In limiting our jurisdiction to procurements by federal agencies, CICA adopted the definition of that term as set forth in the Federal Property and Administrative Services Act of 1949, now codified at 40 U.S.C. § 472 (1988). As defined therein, an executive branch federal agency includes any executive department or independent establishment, including wholly-owned government corporations. NAFIs, however, are not encompassed by the statutory definition of federal agencies, and are therefore beyond the jurisdiction of our bid protest forum. Liquipharm, Inc.--Recon., B-245069.2, Aug. 28, 1991, 91-2 CPD ¶ 212; ATD-American Co., B-240048, July 18, 1990, 90-2 CPD ¶ 49; Kold-Draft Hawaii, Inc., B-222669, Apr. 4, 1986, 86-1 CPD ¶ 331.

With respect to Thayer Gate's contention that our Office should take jurisdiction over this procurement because the NAFI here is merely acting as a conduit for the agency, we conclude based on the record before us that we do not have jurisdiction.

Thayer Gate points out the involvement of numerous agency personnel in this project, including the Office of the Secretary of the Army and the Superintendent of West Point. In our view, the involvement of high ranking Army officials in this project does not convert it to a procurement that is conducted by the Army. The Secretary of the Army is specifically charged with providing for the morale and welfare needs of Army personnel, see 10 U.S.C. § 3013(b)(9) (1988), and often does so through the use of non-appropriated funds. See Scheduled Airlines Traffic Offices, Inc., B-257310 et al., Sept. 21, 1994, 94-2 CPD ¶ 107; Automation Management Consultants, Inc., 68 Comp. Gen. 62 (1988), 88-2 CPD ¶ 456. In this case, given the high visibility of the Hotel Thayer renovation project, the

involvement of the Office of the Secretary of the Army in defining the project is not--based on this record--sufficient to bring the matter within our jurisdiction.

Similarly, the protester notes that the cover letter transmitting the initial solicitation was signed by the then superintendent of West Point, and that Army personnel are included on the evaluation panel. While we recognize that the involvement of Army personnel raises valid questions about the nature of the procurement, evidence of pervasive involvement is required before our Office will conclude that an entity that is not a federal agency has become a conduit for the agency. Americable Int'l, Inc., B-251614; B-251615, Apr. 20, 1993, 93-1 CPD ¶ 336. Here, the letter in question is but a cover letter to the RFP, and is appropriately signed by the superintendent as the official with the responsibility for oversight of the entire academy compound. Nothing in the letter suggests that the superintendent will be involved in the evaluation of proposals or the selection decision. Likewise, the inclusion of certain Army personnel--specifically, individuals from the Army Corps of Engineers--to aid in the evaluation of the relative merits of the development proposals does not convert this to a procurement conducted by the Army.[2] Given that the record does not show the kind of pervasive involvement required to give rise to jurisdiction by our Office, we will not consider the protest.[3]

The protest is dismissed.

Ronald Berger

Ronald Berger
Associate General Counsel

---

[2]In fact, we think the NAFI reasonably drew upon Corps of Engineers's personnel to assist in assessing proposals given the complex nature of this project.

[3]We note that the protester argues that under 10 U.S.C. § 2667, only the Secretary of a military department is authorized to lease non-excess military property to third parties. Because we conclude that we have no jurisdiction over this procurement, we need not reach the merits of this contention.

Dash

Comptroller General
of the United States

Washington, D.C. 20548

# Decision

Matter of: Thayer Gate Development Corporation

File: B-242847

Date: February 6, 1991

DECISION

Thayer Gate Development Corporation protests the procedures by which the Army is conducting the competition to award a contract under request for proposals No. NAFBA-1-89-R-0001.

We are informed that the procurement is being conducted by the U.S. Army Community and Family Support Center, a nonappropriated fund instrumentality.

Our bid protest jurisdiction is limited to procurements of federal agencies. 31 U.S.C. § 3551 (1988); 4 C.F.R. § 21.1(a (1990). A federal agency is:

> "any executive department or independent establishment in the executive branch, including any wholly owned government corporation, and any establishment in the legislative or judicial branch, except the Senate, the House of Representatives and the Architect of the Capitol and any activities under his direction." 4 C.F.R. § 21.0(c).

Nonappropriated fund instrumentalities are not regarded as federal agencies. ATD-American Co., July 18, 1990, 90-2 CPD ¶ 49. Since the entity here is not a federal agency, we are without jurisdiction to consider the protest. Centex Construction Co., Inc., B-238812, Mar. 7, 1990, 90-1 CPD ¶ 256.

Accordingly, the protest is dismissed.

John F. Mitchell
Assistant General Counsel