# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**Bid Protest**
**Number 07-210C**
**Judge Eric G. Bruggink**

**SOUTHERN FOODS, INCORPORATED,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant,**

**and**

**U.S. FOODSERVICE, INCORPORATED,**

**Intervenor.**

## PLAINTIFF'S BRIEF IN RESPONSE TO MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

**Cyrus E. Phillips, IV**
**1828 L Street, N.W., Suite 660**
**Washington, D.C. 20036-5112**
**Attorney of record for Plaintiff,**
**Southern Foods, Incorporated.**

AGREED-UPON REDACTED COPY—
MAY BE MADE PUBLIC

**April 11th, 2007**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii-iii

QUESTIONS INVOLVED ........ 1

I. IS SOUTHERN FOODS' CLAIM OF A BREACH OF THE IMPLIED-IN-FACT CONTRACT OF GOOD FAITH AND FAIR DEALING BARRED BY LACK OF TUCKER ACT, 28 U.S.C. § 1491(A)(1) JURISDICTION? ........ 1

II. ARE SOUTHERN FOODS' CLAIMS FOR A DECLARATORY JUDGMENT, PERMANENT INJUNCTIVE RELIEF, AND MONEY DAMAGES PROPERLY BEFORE THIS COURT UNDER THE ADMINISTRATIVE DISPUTE RESOLUTION ACT, 28 U.S.C. §§ 1491(B)(1), 1491(B)(2)? ........ 1

STATEMENT OF THE CASE ........ 1-13

ARGUMENT ........ 13-20

I. SOUTHERN FOODS CLAIM OF A BREACH OF THE IMPLIED-IN-FACT CONTRACT OF GOOD FAITH AND FAIR DEALING IS NOT BARRED BY LACK OF TUCKER ACT, 28 U.S.C. § 1491(A)(1) JURISDICTION. ........ 13-16

II. SOUTHERN FOODS' CLAIMS FOR A DECLARATORY JUDGMENT, PERMANENT INJUNCTIVE RELIEF, AND MONEY DAMAGES ARE PROPERLY BEFORE THIS COURT UNDER THE ADMINISTRATIVE DISPUTE RESOLUTION ACT, 28 U.S.C. §§ 1491(B)(1), 1491(B)(2). ........ 17-20

CONCLUSION ........ 20-21

CERTIFICATE OF SERVICE ........ 22

# TABLE OF AUTHORITIES

***STATUTES***

5 U.S.C. § 706(2) .......... 18

10 U.S.C. § 2491 .......... 13, 14, 15

28 U.S.C. § 1491(a)(1) .......... 1, 13, 15, 16, 17, 20

28 U.S.C. § 1491(b)(1) .......... 1, 17, 18, 19

28 U.S.C. § 1491(b)(2) .......... 1, 17, 18, 19, 20

28 U.S.C. § 1491(b)(4) .......... 18

28 U.S.C. § 2517 .......... 19, 20

41 U.S.C. §§ 601-613 .......... 8

41 U.S.C. § 602(a) .......... 16

***REGULATIONS***

Army Regulation 215-1 .......... 3, 4, 5, 6, 9, 11, 14, 15

Army Regulation 215-4 .......... 6, 7, 15, 17, 18

DoD Instruction 1015.10 .......... 9, 10, 11, 14, 15

DoD Instruction 1015.14 .......... 11, 12, 14, 15

DoD Instruction 1015.15 .......... 11, 12, 13, 15

***CASES***

*AINS, Inc. v. United States,*,
365 F.3d 1333 (Fed. Cir. 2004) .......... 14, 15

*Allen Aaron v. United States*,
27 Fed. Cl. 295 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15, 16, 20

*Emery Worldwide Airlines, Inc. v. United States*,
264 F.3d 1071 (Fed. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17, 20

*Gary Aaron v. United States*,
51 Fed. Cl. 690 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Impresa Construzioni Geom. Domenico Garufi v. United States*,
238 F.3d 1324 (Fed. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17, 20

*Lion Raisins, Inc. v. United States*,
416 F.3d 1356 (Fed. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17, 18

*Sodexho Marriott Management, Inc. v. United States*,
61 Fed. Cl. 229 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Scanwell Laboratories, Inc. v. Shaffer*,
424 F.2d 859 (D.C. Cir. 1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18, 19

# PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

## QUESTIONS INVOLVED

I. Is Southern Foods' Claim of a Breach of the Implied-In-Fact Contract of Good Faith and Fair Dealing Barred by Lack of Tucker Act, 28 U.S.C. § 1491(a)(1) Jurisdiction?

II. Are Southern Foods' Claims for a Declaratory Judgment, Permanent Injunctive Relief, and Money Damages Properly Before This Court Under the Administrative Dispute Resolution Act, 28 U. S.C. §§ 1491(b)(1), 1491(b)(2)?

## STATEMENT OF THE CASE

### PARTIES

Southern Foods, Incorporated, Bowling Green, Kentucky (Southern Foods) is a Kentucky corporation and an independently-owned full-line food service distributor that until April 1st, 2007 satisfied the requirements of the Joint Services Prime Vendor Program at Fort Campbell, Clarksville, Tennessee and at Fort Knox, Louisville, Kentucky. Administrative Record, at 667, 670-71. Under the Joint Services Prime Vendor Program Southern Foods has supported U.S. Army Morale, Welfare and Recreation (MWR) Programs at Fort Campbell (http://www.fortcampbellmwr.com/) and at Fort Knox (http://www.knoxmwr.com/).

These MWR Programs at Fort Campbell and at Fort Knox include the Blanchfield Army Community Hospital at Fort Campbell (http://www.campbell.amedd.army.mil/); Camp Carlson Army Recreational Area located near Fort Knox (http://www.knoxmwr.com/Rec/campCarlson.asp); Destiny Parks and Pavilions at Fort Campbell (http://www.fortcampbellmwr.com/BusinessActivities/-DestinyParksAndPavillions/); the Fort Knox Child Development Center (http://www.knoxmwr.-com/Youth/childDevelopment.asp); the Fort Knox Geographical Bachelors Quarters (http://www.-knoxmwr.com/Lodging/temporary.asp); the Fort Knox Transient Lodging (http://www.knoxmwr.-com/Lodging/transient.asp); Physical Fitness Centers at Fort Knox (http://www.knoxmwr.com/-Rec/fitnessCenters.asp); the Rocker II Nightclub at Fort Knox (http://www.knoxmwr.com/Rec/-rocker.asp); and the Turner Army Lodging at Fort Campbell (http://www.fortcampbellmwr.com/-Lodging/). Administrative Record, at 670.

Southern Foods' gross sales to these MWR activities at Fort Campbell in Fiscal Year 2005 were $1,997,000. Administrative Record, at 671. Southern Foods' gross sales to these MWR activities at Fort Knox in Fiscal Year 2005 were $1,102,000. Administrative Record, at 671. Southern Foods has supported the Joint Services Prime Vendor Program at Fort Campbell and at Fort Knox for over ten years. Administrative Record, at 793 through 798. Indeed, Southern Foods' gross sales to these MWR activities are all the gross sales reported for United States Service Area 10 in Attachment 1, "Joint Services Prime Vendor Program Participants for U.S. Service Areas/Activities/Volume of Business in Dollars," Solicitation Number NAFBA1-06-R-0016. Administrative Record, at 600, 620.

**Protected Information Has Been Redacted**

Southern Foods conducts business under the Joint Services Prime Vendor Program at Fort Campbell with the Southeast Regional Centralized Contracting Office. Administrative Record, at 670, 793 through 796. The Southeast Regional Centralized Contracting Office at Fort Campbell is operated with appropriated funds.

Defendant is the U.S. Army Community and Family Support Center (USACFC). USACFC was established in 1984 to "provide guidance and oversight for the Army Morale Welfare and Recreation programs." There are some 50 U.S. Army MWR programs worldwide and these programs employ approximately 48,000 people. Administrative Record, at 542.

The Joint Services Prime Vendor Program is one such U.S. Army MWR program, and this current, second-generation, U.S. Army MWR program provides for the supply of food and food-related products to DoD MWR activities. Currently over 900 installations participate in the Joint Services Prime Vendor Program. The Joint Services Prime Vendor Program is a series of Contracts between private-sector food service distributors and the U.S. Army. These private-sector food service distributors agree to sell food and food-related products at a set margin/mark-up above cost. Administrative Record, at 542.

The Joint Services Prime Vendor Program is created under the authority of Section 1-5., Army Regulation 215-1 (http://www.apd.army.mil/series_range_pubs.asp?range=215). The Joint Services Prime Vendor Program is a U.S. Army military MWR program that, per Section 3-1., Army Regulation 215-1 falls into Program Group 1, "Military morale, welfare and recreation funds." There are

three funding categories for U.S. Army military MWR programs: Category A: Mission Sustaining Programs; Category B: Community Support Programs, and Category C: Revenue-Generating Programs. Figure 3-1, Army Regulation 215-1; Defendant's Motion to Dismiss, at 2.

Category A U.S. Army military MWR programs have little or no capacity for generating nonappropriated fund income and thus are supported almost entirely with appropriated funds. Section 3-7., Army Regulation 215-1. Category B U.S. Army military MWR programs provide "the community support systems that make military garrisons temporary hometowns for a mobile military population." These Category B U.S. Army military MWR programs have limited ability to generate revenues and thus they "receive substantial amounts of APF [appropriated funds] support." Section 3-8., Army Regulation 215-1. Category C U.S. Army military MWR programs "offer desirable social and recreational opportunities" and they generate "enough income to cover most of their operating expenses." But Category C U.S. Army military MWR programs "lack the ability to sustain themselves purely on their business activity" and thus they receive limited support from appropriated funds. Section 3-9., Army Regulation 215-1.

USACFC provides executive control and essential command supervision (ECECS) for common MWR support for the U.S. Army and in this role USACFC executes U.S. Army nonappropriated fund procurement. Section 2-5.*t*., Army Regulation 215-1. USACFC operates with appropriated funds:

> The basic financial standard for all categories of MWR programs is to use APFs to fund 100 percent of costs for which authorized. Chapter 16 outlines DOD minimum stan-

dards and addresses additional Army supplemental standards issued annually in budget instructions disseminated by USACFSC (CFSC–FM). Additionally, specific authorizations for APF support to MWR are contained in appendixes D and E and elsewhere in this chapter. The following also pertains to APF support provided to MWR programs:

. . . .

*c. Common MWR support.* Common MWR support is part of the management overhead, whereby APF support is authorized to fund the management, administration, and operation of more than one MWR program or activity, and where such support is not easily or readily identifiable to a specific MWR program or to solely category C MWR programs. Such support includes functions of executive control and essential command supervision (ECECS), central accounting, civilian personnel office, common warehousing, central procurement, central marketing, and other such consolidated functions. APF is identified and reportable to USACFSC (see chapter 16). USACFSC will prorate the management support among the three MWR program categories.

. . . .

Section 5-1., Army Regulation 215-1.

USACFC is a nonappropriated fund instrumentality of the United States:

*a.* Every NAFI is legally constituted as an "instrumentality of the United States." The term "NAFI" includes entities at the garrison level, hereafter referred to as garrison MWR operating entities or simply entities (previously the installation MWR fund). Funds in NAFI/entity accounts are Government funds, and NAF property, including buildings, is Government property. However, NAFs are separate from APFs of the U.S. Treasury. They are not commingled with APFs and are managed separately, even when supporting a common program.

(1) Each NAFI/entity will operate under the authority of the U.S. Government in accordance with applicable Federal laws and departmental regulations.

(2) Because NAFIs/entities operate under the authority of the Federal Government, they are entitled to the same sovereign privileges and immunities as the Federal Government accorded by Federal law.

(3) Applicable DOD directives and implementing Army regulations are binding on NAFIs.

*b.* NAFI/entity programs and facilities will be operated, maintained, and funded as an integral part of the personnel and readiness program.

**Protected Information Has Been Redacted**

Section 4-1., Army Regulation 215-1.

USACFC executes U.S. Army nonappropriated fund procurement in accordance with Army Regulation 215-4. Section 4-2.*f*., Army Regulation 215-1. Army Regulation 215-4 establishes the Nonappropriated Fund Procurement System. Section 1-1.*a*., Army Regulation 215-4.

Section 2-7.*b*. of Army Regulation 215-4 sets out the considerations required for determinations of Contractor responsibility. Chapter 4 of Army Regulation 215-4 set outs detailed requirements and procedures for the Formal Acquisition Process. Contract Number NAFBA1-07-D-0022 and Request for Proposal Number NAFBA1-06-R-0016, the Solicitation which proposed this Contract, were competed and awarded by this Formal Acquisition Process.

U.S. Foodservice, Incorporated (USFS) is a wholly-owned subsidiary of Koninklijke Ahold, N.V., "Royal Ahold." A significant number of class action lawsuits have been filed against Royal Ahold and USFS. USFS, Royal Ahold, and some of their current/former officers or employees are the subject of current investigations by the United States Department of Justice, by the United States Department of Labor, and by various foreign jurisdictions. Administrative Record, at 1463. USFS's Paducah Division operates from a warehouse in Paducah, Kentucky. Administrative Record, at 1241. Sales to U.S. Army MWR programs are not among USFS's Paducah Division's top ten accounts. Administrative Record, at 1242 through 1251.

On January 24th, 2007 USFS was awarded Contract Number NAFBA1-07-D-0022 to provide broad line food distribution services for the Joint Services Prime Vendor Program in United States

Service Area 10. Administrative Record, at 1696. Contract performance commenced on April 1st, 2007. Administrative Record, at 1698. Available options allow the period of performance of Contract Number NAFBA1-07-D-0022 to extend through April 1st, 2017. Administrative Record, at 1774.

This Award to USFS was made with no consideration as to responsibility other than vetting USFS against the Excluded Parties List System (http://www.epls.gov), Administrative Record, at 1688, 1695, and thus this Award was made in violation of Section 2-7.*b*. of Army Regulation 215-4. This Award to USFS was made without any independent assessments of the past performances of Southern Foods and of USFS and was made on nothing other than a review of the Competitive Proposals submitted by Southern Foods and by USFS. Administrative Record, at 1475, 1488, 1499.

THE ACQUISITION

Request for Proposal Number NAFBA1-06-R-0016 was issued on February 24th, 2006 and this Acquisition seeks Competitive Proposals for the Joint Services Prime Vendor Program in 18 designated United States Service Areas. Administrative Record, at 28, 34, 46. Only one Award is to be made for each United States Service Area. An Offeror awarded a Contract for a particular United States Service Area is required to service all military MWR programs in that United States Service Area. Administrative Record, at 34. USACFC is responsible for Contract administration. Administrative Record, at 71.

Only nonappropriated funds are to be used to pay for food and food-related products that are accepted. Administrative Record, at 72. The proposed Contract is not subject to the Contract Disputes

Act of 1978, 41 U.S.C. §§ 601-613. Administrative Record, at 79. The proposed Contract includes a Disputes Clause which requires the submission of Contract Claims to the USACFC Contracting Officer, which provides for decisions by the USACFC Contracting Officer on these Contract Claims, and which provides for appeals of decisions by the USACFC Contracting Officer to the Armed Services Board of Contract Appeals. Decisions of the Armed Services Board of Contract Appeals on these Contract Claims are final and not subject to further appeal. Administrative Record, at 95-96.

Competitive Proposals submitted in response to Request for Proposal Number NAFBA1-06-R-0016 are to provided to USACFC in three separate volumes—Price, Technical, and Management Proposals. Administrative Record, at 117. Request for Proposal Number NAFBA1-06-R-0016 promises that USACFC "will conduct independent assessments of the Contractor's past performance." Administrative Record, at 120.

Amendment 0004 to Request for Proposal Number NAFBA1-06-R-0016 sets out the evaluation factors for Award. Competitive Proposals are to be evaluated on three factors: Price, Technical, and Management. Price is "the primary area of consideration." Price is "significantly more important" than Technical and Technical and Management are "of equal importance." Price is to be evaluated on individual margins, on private label rebates, and on a market basket. All these Price subfactors are of equal weight. Technical is to be evaluated on two equally-weighted subfactors: customer service and reporting. Management is likewise to be evaluated on two equally-weighted subfactors: organizational experience and past performance. Administrative Record, at 1723 through 1724.

## DoD Instructions on Military MWR Programs

DoD Instruction 1015.10 implements policy, assigns responsibilities, and prescribes procedures for operating and managing military MWR programs. DoD Instruction 1015.10, subparagraph 1.1 (http://www.dtic.mil/whs/directives/). DoD Instruction 1015.10 implements the same funding categories for military MWR programs as does Army Regulation 215-1. DoD Instruction 1015.10, subparagraph 4.3. Particular military MWR programs are assigned to funding categories in Enclosure 4 to DoD Instruction 1015.10.

As an example, the Physical Fitness Centers at Fort Knox which have been supported by Southern Foods are assigned to Category A, Mission Sustaining Programs, and as such are supported almost entirely by appropriated funds. DoD Instruction 1015.10, subparagraph 4.3.1 and Enclosure 4, paragraph E4.1.3. The Fort Knox Child Development Center is assigned to Category B, Basic Community Support Programs, and as such is sustained (in addition to nonappropriated fund revenues) by appropriated funds. DoD Instruction 1015.10, subparagraph 4.3.2 and Enclosure 4, paragraph E4.2.1.1. Camp Carlson Recreational Area located near Fort Knox, Destiny Parks and Pavilions at Fort Campbell, the Fort Knox Geographical Bachelors Quarters; the Fort Knox Transient Lodging, the Rocker II Nightclub at Fort Knox, and the Turner Army Lodging at Fort Campbell are all Category C, Revenue Generating Programs, and as such they generate nonappropriated funds to cover most of their operating expenses but nonetheless they receive limited appropriated funds support. DoD Instruction 1015.10, subparagraph 4.3.3 and Enclosure 4, paragraphs E4.3.1.2.2. and E.4.3.1.3.

The Acquisition here that is being conducted by USACFC is "common support" to a military MWR program:

> E2.1.6. Common Support. That direct support used to fund the management, administration, and operation of more than one MWR program or category and that is not easily or readily identifiable to a specific MWR program. Examples of common support are central accounting office functions, civilian personnel office functions, ECECS, common warehousing functions, and central procurement functions.

DoD Instruction 1015.10, Enclosure 2.

Because the Joint Services Prime Vendor Program is here receiving common support from USACFC, appropriated funds are authorized to support this military MWR program:

> 4.5. Funding. MWR programs should receive funding at the same level as other support-programs. *MWR programs shall be resourced from either APF or NAF or a combination of both. NAF expenditures for valid MWR purposes are not an augmentation of appropriations.*
>
> 4.5.1. Funding Sources. The Department of Defense is responsible for oversight of the total APF and NAF resourcing of MWR programs, including major force structure changes, selected individual program growth, and new market-oriented MWR programs. Specific APF authorizations for elements of resource are shown in enclosure 6. The standards for APF support are shown in enclosure 7. The DoD Components shall report annually on the status of meeting the standards.
>
> 4.5.2. Common Support. A support function that serves more than one MWR program does not constitute authorization for APF support. The authorization for APF support depends on the nature of the program being supported. (See definitions, enclosure 2.) Reporting of common support is outlined in reference (e).
>
> . . . .

DoD Instruction 1015.10 (Emphasis added).

## DoD Instructions on Nonappropriated Fund Instrumentalities and Financial Management of Supporting Resources

DoD Instruction 1015.14 places military MWR programs such as this Joint Services Prime Vendor Program into four Program Groups and military MWR programs are in Program Group I. DoD Instruction 1015.14, subparagraph 4.3.1. Within this Program Group I activities are further classified into Categories, and these again are the same as the Categories in Army Regulation 215-1 and in DoD Instruction 1015.10. DoD Instruction 1015.14 explicitly authorizes the use of appropriated funds together with nonappropriated funds, and this authorization is again by Category:

> 4.4. NAFI resources shall be administered in an economical, efficient, and business-like manner. *The DoD Components shall ensure that programs and resources are planned, programmed, and budgeted using the proper funding source and the suitable combination of APFs, NAFs [nonappropriated funds], and other approved funding resources.* Within each Program Group, activities are further classified into one of three funding categories. The funding categories are the basis of the APF and NAF authorizations identified in reference (g) [DoD Instruction 1015.15]. Private resources in support of NAFI programs shall be administered according to DoD Instruction 1015.13 (reference (p)). Donations shall be administered under the provisions of reference (f).
>
> 4.4.1. Category A: Mission Sustaining Activities. *Category A activities have virtually no capacity for generating NAF revenues and are supported almost entirely with APFs.* The use of NAFs is limited to specific instances where APFs are prohibited by law or when NAF support is essential for the operation.
>
> 4.4.2. Category B: Basic Community Support Activities. *Category B activities are financed with a combination of NAF and APF resources. Because their NAF revenue-generating capability is limited, these activities will be substantially supported with APFs.*
>
> 4.4.3. Category C: Revenue-Generating Activities. *Category C activities have the highest capability to generate NAF revenues and generally receive only indirect APF support.* Overseas activities are authorized limited direct APF support. Military MWR and Arm-

> ed Service Exchange activities at designated remote and isolated locations are authorized funding under Category B rules according to the provisions of references (j) and (n).
>
> 4.5. *Use of APFs shall be consistent with the provisions of Section 1301 of title 31, United States Code (reference (q)) which requires that funds shall be used only for the purposes for which they were appropriated.* Alternate procedures to expend appropriations to support operations of Program Groups I, II, and V (Stars and Stripes only) under a memorandum of agreement are specified in reference (g).

DoD Instruction 1015.14 (Emphasis added).

DoD Instruction 1015.15 sets out in Enclosure 3 a Table which explains general funding authorizations (through use of appropriated and/or nonappropriated funds) for activities of nonappropriated fund instrumentalities. Particularly Section N. "Other Operating Expenses" of this Table explains that costs not otherwise provided for are authorized to be paid from appropriated funds for Category A, B, or C military MWR programs if these are "costs incurred incident to the performance of functions related to ECECS."

DoD Instruction 1015.15 sets out in Enclosure 6 a procedure for making appropriated funds available to military MWR programs. DoD Instruction 1015.15 subparagraph 5.2.2. implements the authority provided by 10 U.S.C. § 2491 making appropriated funds available to military MWR programs. This is that statutory authority:

> **(a) Authority for Uniform Funding and Management.—** Under regulations prescribed by the Secretary of Defense, *funds appropriated to the Department of Defense and available for morale, welfare, and recreation programs may be treated as nonappropriated funds and expended in accordance with laws applicable to the expenditures of nonappropriated funds.* When made available for morale, welfare, and recreation programs under such regulations, appropriated funds shall be considered to be nonappropriated funds for all purposes and shall remain available until expended.

> **(b) Conditions on Availability.—** *Funds appropriated to the Department of Defense may be made available to support a morale, welfare, or recreation program only if the program is authorized to receive appropriated fund support and only in the amounts the program is authorized to receive.*
>
> . . . .

10 U.S.C. § 2491 (Emphasis added).

## ARGUMENT

### I. Southern Foods' Claim of a Breach of the Implied-In-Fact Contract of Good Faith and Fair Dealing is Not Barred by Lack of Tucker Act, 28 U.S.C. § 1491(a)(1) Jurisdiction.

Defendant woefully overstates its jurisdictional challenge when it argues that the Joint Services Prime Vendor Program and the USACFC which is here acting to implement the Joint Services Prime Vendor Program at Fort Campbell and at Fort Knox are nonappropriated fund instrumentalities beyond this Court's jurisdiction. The problem is Defendant's reliance on *AINS, Inc. v. United States*, 365 F.3d 1333 (Fed. Cir. 2004).

*AINS* announces a four-factor test which a Federal instrumentality must meet in order to be considered a nonappropriated fund instrumentality: (1) such a Federal instrumentality must not receive appropriated monies; (2) such a Federal instrumentality must derive its income from nonappropriated funds; (3) absent a statutory amendment there is no situation in which appropriated monies could be used to fund this Federal instrumentality; and (4) there is a clear expression by Congress

that this Federal instrumentality is to be separated from general Federal revenues. *AINS*, 365 F.3d, at 1342-43.

In this Civil Action USACFC operates with appropriated funds, Section 5-1, Army Regulation 215-1; this Acquisition is common support to a military MWR program and thus appropriated funds are authorized to support this military MWR program, DoD Instruction 1015.10, subparagraph 4.5; and the military MWR programs which are supported by the Joint Services Prime Vendor Program at Fort Campbell and at Fort Knox are Program Group I activities classified into one of three Categories (A, B, or C) and varying levels of appropriated funds support are authorized for each of these Categories. DoD Instruction 1015.14, subparagraph 4.4.

And this is not a Civil Action where there is a clear expression by Congress that USACFC and these military MWR programs are to be separated from general Federal revenues. Instead there is 10 U.S.C. § 2491, and this statute and implementing DoD Instructions clearly and unequivocally authorize appropriated funds support even to military MWR programs which receive substantial revenues from nonappropriated funds.

But even though USACFC, the Joint Services Prime Vendor Program, and the military MWR programs at Fort Campbell and at Fort Knox do not meet the four-factor *AINS* test to be considered nonappropriated fund instrumentalities, Southern Foods will here concede that these Federal instrumentalities are nonetheless nonappropriated fund instrumentalities, at least in the sense of Army

Regulation 215-1, Army Regulation 215-4, DoD Instruction 1015.10, DoD Instruction 1015.14, DoD Instruction 1015.15, and 10 U.S.C. § 2491.

So how does this concession work? Simply, we must look at the particulars of the Civil Action that is before the Court.

It is clear from *Allen Aaron v. United States*, 27 Fed. Cl. 295 (1992) that this Court can properly exercise jurisdiction over money claims against U.S. Army MWR programs. There it was civilian and military employees and their dependents who had filed claims to recover licensing or vehicle registration fees paid in the Federal Republic of Germany and Berlin, licensing fees that were deposited into the MWR program for the United States Army Europe and Seventh Army. *Id*., at 296.

Relying on Army Regulation 215-1 and the same sorts of Program Groups and Categories as those in issue here, the *Allen Aaron* Court held that since this U.S. Army MWR program received both appropriated and nonappropriated funds support, that nonappropriated fund instrumentality was not beyond this Court's Tucker Act, 28 U.S.C. § 1491(a)(1) jurisdiction. *Id*., at 298-99.

Would it have made a difference if the money claims in *Allen Aaron* were based on a Contract with that U.S. Army MWR program? Unfortunately for Southern Foods' averment that its Claim of a breach of the implied-in-fact Contract of good faith and fair dealing may be grounded on 28 U.S.C. § 1491(a)(1), Post-Award Procurement Protest Complaint, at 2, the answer is that it does make a difference.

In *Sodexho Marriott Management, Inc. v. United States*, 61 Fed. Cl. 229 (2004) this Court reads binding Federal Circuit precedent as barring any Contract claims against a nonappropriated fund instrumentality, either under the Tucker Act, 28 U.S.C. § 1491(a)(1), or under the Contract Disputes Act, 41 U.S.C. § 602(a). *Id*., at 235. This is the end of Southern Foods' averment that its Claim of a breach of the implied-in-fact Contract of good faith and fair dealing may be grounded on this Court's Tucker Act, 28 U.S.C. § 1491(a)(1) jurisdiction, and thus this averment must be stricken from Southern Foods' Post-Award Procurement Complaint.

This is, however, not the end of Southern Foods' Fourth Claim for Relief, this the same Claim for money damages resulting from Defendant's breach of the implied-in-fact Contract of good faith and fair dealing that is the subject of the defective averment at page 2 of Southern Foods' Post-Award Procurement Protest Complaint.

**II. Southern Foods' Claims for a Declaratory Judgment, Permanent Injunctive Relief, and Money Damages Are Properly Before This Court Under the Administrative Dispute Resolution Act, 28 U.S.C. §§ 1491(b)(1), 1491(b)(2).**

As is made clear in Southern Foods' Post-Award Procurement Protest Complaint:

(1) Southern Foods is an appropriate "interested party" under 28 U.S.C. § 1491(b)(1) because Southern Foods is an actual Offeror whose revised Competitive Proposal is in the competitive range and is in a position to receive Award of the Contract proposed by Request for Proposal Number NAFBA1-06-R-0016, *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1334 (Fed. Cir. 2001); and

(2) this Civil Action is timely filed on March 30th, 2007 three days after Southern Foods received the decision of USACFC on Southern Foods' Agency Protest filed with USACFC in accordance with paragraph 4-21.*d*. of Army Regulation 215-4; and

(3) USACFC is an appropriate "Federal agency" under 28 U.S.C. § 1491(b)(1) because USACFC, a nonappropriated fund instrumentality, is nonetheless an agent of the United States, an "arm of the government," and a Federal agency. *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1363, 1363 n.3 (Fed. Cir. 2005).

With regard to this Civil Action, just how is this Court's Administrative Dispute Resolution Act, 28 U.S.C. §§ 1491(b)(1), 1491(b)(2) jurisdiction different from this Court's Tucker Act, 28 U.S.C. § 1491(a)(1) jurisdiction?

Fortunately for Southern Foods because USACFC is a nonappropriated fund instrumentality, this Court's Administrative Dispute Resolution Act, 28 U.S.C. §§ 1491(b)(1), 1491(b)(2) jurisdiction extends to all "government procurement protest cases." *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1083 (Fed. Cir. 2001).

And we know now from *Lion Raisins* that USACFC is the "government." But is Request for Proposal Number NAFBA1-06-R-0016 a "procurement" within this Court's Administrative Dispute Resolution Act, 28 U.S.C. §§ 1491(b)(1), 1491(b)(2) jurisdiction?

This Court's Administrative Dispute Resolution Act, 28 U.S.C. §§ 1491(b)(1), 1491(b)(2) jurisdiction comes from the line of cases following *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C. Cir. 1970), and *Scanwell* adopts Administrative Procedure Act, 5 U.S.C. § 706(2) review, just as the Administrative Dispute Resolution Act, 28 U.S.C. § 1491(b)(4) provides. Under this Administrative Procedure Act standard a procurement decision can be set aside if it lacks a rational basis or if the procurement procedure involved a violation of regulation or procedure. *Impreza*, 238 F.3d, at 1332. *Scanwell* propelled United States District Courts into the government procurement process and gave these judicial bodies jurisdiction to review procurement protests.

Here, Request for Proposal Number NAFBA1-06-R-0016 is proceeding under the Nonappropriated Fund Procurement System, Army Regulation 215-4, and Army Regulation 215-4 is a regulation that provides procedures for nonappropriated fund procurements.

The United States District Courts had jurisdiction under *Scanwell* to decide whether a procurement decision had a rational basis or if a particular procurement procedure was a violation of regulation, and this being so, then it must also follow that Request for Proposal Number NAFBA1-06-R-0016 is a "procurement" over which this Court has Administrative Dispute Resolution Act, 28 U.S.C. §§ 1491(b)(1), 1491(b)(2) jurisdiction.

Just this is the "normal understanding" of the bare language of the Administrative Dispute Resolution Act, 28 U.S.C. §§ 1491(b)(1), 1491(b)(2) and this normal understanding is entitled to prevail here because Defendant offers nothing persuasive that could modify this clear language. *Emery*, 264 F.3d, at 1083.

Because this is a Post-Award Procurement Protest under the Administrative Dispute Resolution Act, 28 U.S.C. § 1491(b)(2), Southern Foods' Claim for money damages resulting from Defendant's breach of the implied-in-fact Contract of good faith and fair dealing is not a Contract claim against a nonappropriated fund instrumentality which is barred by binding Federal Circuit precedent. Instead, this is Post-Award Procurement Protest.

If this Court were to award Southern Foods money damages on this Claim under a Post-Award Procurement Protest, could such a final judgment be paid out of "any general appropriation" as is required by 28 U.S.C. § 2517? Does the nonappropriated fund doctrine nonetheless apply to this Post-Award Procurement Protest? *Gary Aaron v. United States*, 51 Fed. Cl. 690, 691 (2002).

*Allen Aaron* provides the answer to this question because *Allen Aaron* holds that since U.S. Army MWR programs may receive appropriated funds, this Court's jurisdiction over these non-appropriated fund instrumentalities is not barred by the requirements of 28 U.S.C. § 2517. *Id.*, 27 Fed. Cl., at 299.

The Federal Circuit has twice now posed the question whether the implied-in-fact Contract theory which supports awards of money damages (limited to bid preparation and proposal costs) in Pre- and Post-Award Procurement Protests lives on. *Impresa*, 238 F.3d, at 1332 n.6; *Emery*, 264 F.3d, at 1081 n.9. As to nonappropriated fund instrumentalities, this answer is "yes," but this is only under the Administrative Dispute Resolution Act, 28 U.S.C. § 1491(b)(2), and not under the Tucker Act, 28 U.S.C. § 1491(a)(1).

## Conclusion

For all of the reasons set forth in the foregoing Brief in Support of Plaintiff's Brief in Response to Motion to Dismiss for Lack of Subject Matter Jurisdiction, Southern Foods respectfully requests that the Court deny Defendant's Motion.

Respectfully submitted,

/s/ Cyrus E. Phillips, IV

Cyrus E. Phillips, IV

District of Columbia Bar Number 456500,
Virginia State Bar Number 03135

April 11th, 2007

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112
Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: lawyer@procurement-lawyer.com

Attorney of record for Plaintiff,
Southern Foods, Incorporated.

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on Wednesday, April 11th, 2007 a true and complete copy of this Plaintiff's Brief in Response to Motion to Dismiss was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Joan Margaret Stentiford-Ulmer, Esq.

Electronic Mail: Joan.Stentiford-Ulmer@usdoj.gov

Attorney of record for Defendant,
U.S. Army Community and Family Support Center.

I also certify, under penalty of perjury, that on Wednesday, April 11th, 2007 a true and complete copy of this Plaintiff's Brief in Response to Motion to Dismiss was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

John J. Pavlick, Jr., Esq.

Electronic Mail: jpavlick@venable.com

Attorney of record for Intervenor,
U.S. Foodservice, Incorporated.

/s/ Cyrus E. Phillips, IV

______________________________
Cyrus E. Phillips, IV