# In the United States Court of Federal Claims

| | |
|---|---|
| **SOUTHERN FOODS, INCORPORATED,** | |
| **Plaintiff,** | |
| **v.** | **BID PROTEST** |
| | **No. 07-210C** |
| | **Judge Eric G. Bruggink** |
| **THE UNITED STATES,** | |
| **Defendant,** | |
| **and** | |
| **U.S. FOODSERVICE, INCORPORATED,** | |
| **Intervenor.** | |

STATEMENT OF FACTS

Plaintiff, Southern Foods, Incorporated, 117 Mitch McConnell Way, Bowling Green, Kentucky 42102-1657 (Southern Foods), in compliance with RCFC 52.1(b), sets out the following Statement of Facts necessary to resolve the issues presented in this Post-Award Procurement Protest.

**Agreed-Upon Redacted Copy**
**May Be Made Public**

## PARTIES

1. Southern Foods, Incorporated, Bowling Green, Kentucky (Southern Foods) is a Kentucky corporation and an independently-owned full-line food service distributor that until April 1st, 2007 satisfied the requirements of the Joint Services Prime Vendor Program at Fort Campbell, Clarksville, Tennessee and at Fort Knox, Louisville, Kentucky. Administrative Record, at 667, 670-71. Under the Joint Services Prime Vendor Program Southern Foods has supported U.S. Army Morale, Welfare and Recreation (MWR) Programs at Fort Campbell (http://www.fortcampbellmwr.com/) and at Fort Knox (http://www.knoxmwr.com/).

2. Southern Foods' gross sales to MWR Programs at Fort Campbell in Fiscal Year 2005 were $1,997,000. Administrative Record, at 671. Southern Foods' gross sales to MWR Programs at Fort Knox in Fiscal Year 2005 were $1,102,000. Administrative Record, at 671. Southern Foods has supported the Joint Services Prime Vendor Program at Fort Campbell and at Fort Knox for over ten years. Administrative Record, at 793 through 798. Indeed, Southern Foods' gross sales to these MWR Programs are all the gross sales reported for United States Service Area Ten in Attachment 1, "Joint

Services Prime Vendor Program Participants for U.S. Service Areas/Activities/Volume of Business in Dollars," Solicitation Number NAFBA1-06-R-0016. Administrative Record, at 600, 620.

3. Defendant is the U.S. Army Community and Family Support Center (USACFC). USACFC was established in 1984 to "provide guidance and oversight for the Army Morale Welfare and Recreation programs." There are some fifty U.S. Army MWR Programs worldwide and these U.S. Army MWR Programs employ approximately 48,000 people. Administrative Record, at 542. The purpose of these U.S. Army MWR Programs is to support installation Commanders in meeting soldiers' and family needs. U.S. Army MWR Programs provide "comfort, pleasure, recreational activities, and physical and mental improvement opportunities to members of the Armed Forces and their families . . . ." Administrative Record, at 3.

4. The Joint Services Prime Vendor Program is one such U.S. Army MWR Program and this second-generation U.S. Army MWR Program provides for the supply of food and food-related products to Department of Defense (DoD) MWR activities such as theme restaurants, clubs, bowling centers, child and youth services, and snack

bars. The objective of the Joint Services Prime Vendor Program is to improve food quality and reduce overhead. Administrative Record, at 3. Currently over 900 DoD installations participate in the Joint Services Prime Vendor Program. The Joint Services Prime Vendor Program is a series of Contracts between private-sector food service distributors and the U.S. Army. These private-sector food service distributors agree to sell food and food-related products at a set Margin/Mark-Up over cost. Administrative Record, at 542. The current, second generation Joint Services Prime Vendor Program has been operating with eighteen Contractors since August 1996. Administrative Record, at 3.

5. Solicitation Number NAFBA1-06-R-0016 was issued by USACFC on behalf of the Joint Services Prime Vendor Program on February 24th, 2006. Administrative Record, at 28. Solicitation Number NAFBA1-06-R-0016 seeks a third generation of Contractors for the Joint Services Prime Vendor Program. Administrative Record, at 3. The purpose of Solicitation Number NAFBA1-06-R-0016 "is to continue to provide, under the Army's administration, non-appropriated contracts assembled to supply all food and food-related products to MWR activities, such as theme restaurants, clubs,

bowling center [sic], child and youth services, and snack bars [and] to lower food costs, improve food quality and reduce overhead." Administrative Record, at 4.

6. U.S. Foodservice, Incorporated (USFS) is a wholly-owned subsidiary of Koninklijke Ahold, N.V., "Royal Ahold." A significant number of class action lawsuits have been filed against Royal Ahold and USFS. USFS, Royal Ahold, and some of their current/former officers or employees are the subject of current investigations by the United States Department of Justice, by the United States Department of Labor, and by various foreign jurisdictions. Administrative Record, at 1463. USFS's Paducah Division operates from a warehouse in Paducah, Kentucky. Administrative Record, at 1241. Sales to U.S. Army MWR programs are not among USFS's Paducah Division's top ten accounts. Administrative Record, at 1242 through 1251.

7. The U.S. Army's Legal Services Agency reported in October 2006 that John Grassmick, formerly the Program Manager of the Joint Services Prime Vendor Program at USACFC was debarred, and this after John Grassmick had pled guilty to soliciting a gratuity. At the same time the U.S. Army's Legal Services Agency reported that a Director of USFS was debarred after he had met with Mr. Grassmick and that

Mr. Grassmick had provided that USFS Director with pricing margins for a food services Contract. Administrative Record, at 1824.

8. Royal Ahold is selling USFS. In December 2006 USFS was sued by a Connecticut hospital and by a family-owned Italian restaurant in Rockford, Illinois. USFS is there charged with "racketeering" through use of a "fraudulent" supply system to overcharge customers. Administrative Record, at 1825.

9. On January 24th, 2007 USFS' Paducah Division was awarded Contract Number NAFBA1-07-D-0022 to provide broad line food distribution services for the third generation of the Joint Services Prime Vendor Program in United States Service Area Ten. Administrative Record, at 1696. Contract performance commenced on April 1st, 2007. Administrative Record, at 1698. Available options allow the period of performance of Contract Number NAFBA1-07-D-0022 to extend through April 1st, 2017. Administrative Record, at 1774.

THE ACQUISITION

10. Request for Proposal Number NAFBA1-06-R-0016 was issued on February 24th, 2006 and this Acquisition seeks Competitive Proposals for the Joint Services

Prime Vendor Program in eighteen (now seventeen) designated United States Service Areas. Administrative Record, at 28, 34, 46. Only one Award is to be made for each United States Service Area. An Offeror awarded a Contract for a particular United States Service Area is required to service all military MWR Programs in that United States Service Area. Administrative Record, at 34. USACFC is responsible for Contract administration. Administrative Record, at 71. Only nonappropriated funds are to be used to pay for food and food-related products that are accepted. Administrative Record, at 72.

DETAILED REQUIREMENTS

11. Request for Proposal Number NAFBA1-06-R-0016 includes in Section B., "Supplies or Services and Price/Cost," tables with fourteen different categories of food and food-related products. There are separate tables for the base year and for each of nine option years. Administrative Record, at 35 through 44. Offerors are to set out an offered Margin, or an offered Mark-Up, but not both, for each category and for each of the option years. All fourteen categories of food and food-related products are to be available to all of the installations within a designated United States Service Area. Ad-

ministrative Record, at 33. Offerors may propose on one or more United States Service Areas, but only one Award will be made for each United States Service Area. Administrative Record, at 34.

12. Competitive Proposals submitted in response to Request for Proposal Number NAFBA1-06-R-0016 are to be provided to USACFC in three separate volumes—Price, Technical, and Management Proposals. Administrative Record, at 117. Request for Proposal Number NAFBA1-06-R-0016 says that "[p]ricing will be evaluated using the fixed fee reflected in Section B for each of the 14 product categories." Administrative Record, at 118.

13. Request for Proposal Number NAFBA1-06-R-0016 requires each Offeror to "provide customer satisfaction surveys or similar documents which attest to its performance capabilities," and then Request for Proposal Number NAFBA1-06-R-0016 pledges that USACFC "will conduct independent assessments of the Contractor's past performance." Administrative Record, at 120.

THE PROMISED EVALUATION

14. Amendment 0004 to Request for Proposal Number NAFBA1-06-R-0016 sets out the evaluation factors for Award. Competitive Proposals are to be evaluated on three Factors: Price, Technical, and Management. Price is "the primary area of consideration." Price is "significantly more important" than Technical and Technical and Management are "of equal importance." Price is to be evaluated on individual Margins, on Private Label Rebates, and on a Market Basket. All these Price Subfactors are of equal weight. Technical is to be evaluated on two equally-weighted Subfactors: Customer Service and Reporting. Management is likewise to be evaluated on two equally-weighted Subfactors: Organizational Experience and Past Performance. Administrative Record, at 1723 through 1724.

THE ACQUISITION PLAN

15. The Acquisition Plan explains that submission of "customer satisfaction surveys or similar documents" is mandatory and that USACFC will conduct "independent assessments" of Past Performances:

**(2) Past Performance**

**Protected Information Has Been Redacted**

> (a) The Offeror *shall* provide customer satisfaction surveys or similar documents which attest to its performance capabilities.
> (b) The Fund will conduct independent assessments of the Contractor's past performance.

Administrative Record, at 9 (Emphasis added).

16. This is what the Acquisition Plan says about the evaluation of the Technical and the Management Proposals:

> (d) Evaluation Team. A technical evaluation team will be established to evaluate the technical merits of the proposals. For each phase of the acquisition, Mr. John Grassmick, Program Manager will be the Chairperson of the team. The technical team for each Phase will be made up five individuals from various installations who participate in the program. When an AFRC area is competed, one member from the AFRC will be included in the evaluation team and two members from installations participating in the program. Nomination and selection of the evaluation team members is ongoing.

Administrative Record, at 9.

THE EVALUATION PLAN

17. The Evaluation Plan for Request for Proposal Number NAFBA1-06-R-0016 explains that the Contracting Officer is to evaluate Price and that a Technical Evaluation Team is to evaluate Technical and Management. Administrative Record, at 21.

**Protected Information Has Been Redacted**

Technical and Management Proposals are to be color-rated by the Technical Evaluation Team as follows:

- Blue: Exceptional
- Green: Acceptable
- Yellow: Marginal
- Red: Unacceptable

Administrative Record, at 18.

18. To ensure "an impartial and comprehensive evaluation of each Offeror's proposal," this is what the Evaluation Plan says about the evaluation process:

> (1) EACH EVALUATOR WILL ASSESS EACH PROPOSAL.
>
> (a) Each evaluator will objectively and individually assess each Offeror's proposal based upon the information in the proposal and upon the established criteria for each evaluation factor. *Strict adherence to the evaluation criteria in the RFP is critical for a legally sufficient evaluation*.
>
> (b) Each evaluator will individually assess each factor and provide a narrative with specific comments and references to the proposal, which identifies strengths, weaknesses, deficiencies, and clarifications needed and support his/her rating. *This narrative justifying the color score is very important to document the record and to provide a basis for discussions and award decisions*. It also provides a trail needed for debriefings and/or protests. *Evaluators must specify exact reasons for the evaluation of each factor and subfactor*. Elements not understood, ambiguities, and deficiencies will be documented so additional information can be requested from the Offerors. It is the chairperson's responsibility to review each evaluation and ensure that the scores are supported by adequate written justification.

**Protected Information Has Been Redacted**

Administrative Record, at 18 through 19 (Emphasis added).

19. The Evaluation Plan provides a pre-printed Scoring sheet. This is what the pre-printed Scoring sheet says about assessments of Past Performances:

> **(b) Independent assessments of the Contractor's past performance will be conducted by the Fund.**

Administrative Record, at 26.

SOUTHERN FOOD'S COMPETITIVE PROPOSAL

20. Southern Foods has submitted a Competitive Proposal only on United States Service Area Ten. Administrative Record, at 528. In response to the requirement of Request for Proposal Number NAFBA1-06-R-0016 for "customer satisfaction surveys or similar documents," Southern Foods submitted completed Past Performance Questionnaires from three U.S. Army MWR Programs, Administrative Record, at 793 through 798, and from four private parties to whom Southern Foods provides food and food-related products, Administrative Record, at 799 through 806.

21. In addition to the completed Past Performance Questionnaires, Southern Foods provided copies of many certificates and awards from U.S. Army activities at

Fort Campbell and at Fort Knox, these including personal commendations from the Commandant at Fort Campbell; from the Commandant of the 101st Airborne Division at Fort Campbell; from the Commandant of the 2nd Battalion, 320th Field Artillery Regiment at Fort Campbell; and from the Garrison Commander at Fort Knox. Administrative Record, at 1063 through 1117.

22. Southern Foods submitted its initial Competitive Proposal to USACFC on April 10th, 2006. Administrative Record, at 529. By letter dated July 6th, 2006 USA-CFC opened discussions on Southern Foods' initial Competitive Proposal. Administrative Record at 1560 through 1561. There were no deficiencies, no weaknesses, and no clarifications required for Southern Foods' Technical Proposal. Administrative Record, at 1560. USACFC wrote Southern Foods that weaknesses had been found in Southern Foods' Management Proposal and that Southern Foods needed to provide the number and type of truck drivers it was offering and that Southern Foods needed to provide the addresses of Southern Foods' top ten "Prime Vendor" accounts. Administrative Record, at 1561.

23. Southern Foods provided these necessary clarifications. Administrative Record, at 1656.

24. On November 6th, 2006 USACFC wrote Southern Foods that further discussions were deemed necessary. USACFC then told Southern Foods that Southern Foods' offered Margins for United States Service Area Ten should be "re-evaluated" and USACFC asked Southern Foods to submit revised, and lower, Margins. There were no deficiencies or weaknesses noted in Southern Foods' Technical or Management Proposals and there were no clarifications required from Southern Foods. Administrative Record, at 1611.

25. In reply Southern Foods submitted no revisions to its Price, Technical, or Management Proposals. Southern Foods wrote USACFC that Southern Foods did not wish to lower Southern Foods' offered Margins, that Southern Foods believed that its Margins were competitive, and that Southern Foods would have no changes to its response. Administrative Record, at 1693.

USFS' COMPETITIVE PROPOSAL

26. USFS submitted an initial Competitive Proposal on eleven of the seventeen United States Service Areas. Administrative Record, at 1683. USFS' Competitive Proposal for United States Service Area Ten was submitted on behalf of USFS' Paducah Division by USFS' Vice President National Accounts, Military/Government Segment. Administrative Record, at 1147.

27. USFS submitted no completed customer satisfaction surveys or similar documents. Administrative Record, at 1146, 1555.

28. USACFC opened discussions on USFS' initial Competitive Proposal on June 30th, 2006. Deficiencies were noted in USFS' Price Proposal. Administrative Record, at 1567 through 1568. Deficiencies were noted in USFS' Technical Proposal. Administrative Record, at 1568. Deficiencies were noted in USFS' Management Proposal. Administrative Record, at 1569 through 1570. Among the deficiencies noted by the Technical Evaluation Team in USFS' Management Proposal was that USFS did not provide the required customer satisfaction surveys. Administrative Record, at 1570.

29. USFS responded with a Protest. USFS did not submit revisions to its initial Competitive Proposal. Administrative Record, at 1692.

30. USFS withdrew its Protest on October 16th, 2006. Administrative Record, at 1693.

31. USACFC re-opened discussions with USFS on November 6th, 2006. Deficiencies were again noted in USFS' Price Proposal. Administrative Record, at 1616 through 1617. Deficiencies were again noted in USFS' Technical Proposal. Administrative Record, at 1628 through 1629. Deficiencies were again noted in USFS' Management Proposal. Administrative Record, at 1629. Again USACFC wrote USFS that USFS' Management Proposal was deficient because USFS did not provide the required customer satisfaction surveys. *Id*.

32. USFS responded on November 20th, 2006 with revisions to its initial Competitive Proposal. Administrative Record, at 1596. USFS' revised Competitive Proposal does not provide the customer satisfaction surveys which are required by Request for Proposal Number NAFBA1-06-R-0016. Administrative Record, at 1601.

## THE AWARD TO USFS

THE TECHNICAL EVALUATION TEAM'S RATINGS

33. On June 1st, 2006 the Technical Evaluation Team submitted to the Contracting Officer the Technical Evaluation Team's ratings of the Technical and Management Proposals. Administrative Record, at 1552. Contrary to the Acquisition Plan, this Technical Evaluation Team was made up of three members, not five members. Not one of these three Technical Evaluators was from an installation in United States Service Area Ten. Neither were any of these Technical Evaluators members of the U.S. Army. Administrative Record, at 1552, 1685.

34. One of these three Technical Evaluators rated Southern Foods' initial Competitive Proposal as "Blue" on the Technical Proposal, Administrative Record, at 1473; and as "Green" on the Management Proposal, Administrative Record, at 1476. This Technical Evaluator's overall rating of Southern Foods' initial Competitive Proposal was "High Green." Administrative Record, at 1476.

35. The second of these three Technical Evaluators rated Southern Foods' initial Competitive Proposal as "Blue" on the Technical Proposal, Administrative Record, at

1485; and as "Green" on the Management Proposal, Administrative Record, at 1489. This second Technical Evaluator neglected to review the completed customer satisfaction surveys that Southern Foods had submitted with its initial Competitive Proposal; instead this second Technical Evaluator looked only at the certificates and awards from U.S. Army activities at Fort Campbell and at Fort Knox that Southern Foods had provided with Southern Foods' initial Competitive Proposal. Administrative Record, at 1488. This second Technical Evaluator's overall rating of Southern Foods' initial Competitive Proposal was "Bluish Green." Administrative Record, at 1489.

36. The third of these three Technical Evaluators rated Southern Foods' initial Competitive Proposal as "Blue" on the Technical Proposal, Administrative Record, at 1497; and as "Green" on the Management Proposal, Administrative Record, at 1500. The third Technical Evaluator noted that one of Southern Foods' largest accounts was the Joint Services Prime Vendor Program. Administrative Record, at 1497. This third Technical Evaluator's overall rating of Southern Foods' initial Competitive Proposal was "Green." Administrative Record, at 1500.

37. There were not, as promised by Request for Proposals Number NAFBA1-06-R-0016, as promised by the Acquisition Plan, and as promised by the Evaluation Plan, "independent assessments" of Southern Foods' past performances. Instead two of the three Technical Evaluators looked only at the customer satisfaction surveys that were provided by Southern Foods in Southern Foods' initial Competitive Proposal. Administrative Record, at 1475, 1488, 1499.

38. There is not a complete set of Scoring sheets from any one of the three Technical Evaluators for USFS' initial Competitive Proposal. Administrative Record, at 1501 through 1505. The Administrative Record establishes only that the consensus rating for USFS' initial Competitive Proposal was "Yellow to Green" on the Technical Proposal, Administrative Record, at 1553; that the consensus rating for USFS' initial Competitive Proposal was "Red/Yellow to Green" on the Management Proposal, Administrative Record, at 1555; and that the overall consensus rating of USFS' initial Competitive Proposal was "Red/Yellow to Green," Administrative Record, at 1556.

39. The Technical Evaluation Team reported to the Contracting Officer on June 1st, 2006 the Technical Evaluation Team's "firm recommendation" that Southern Foods

be awarded the successor Contract in United States Service Area Ten for the Joint Services Prime Vendor Program. Administrative Record, at 1552.

40. After Southern Foods had provided the necessary clarifications for its initial Competitive Proposal, a member of the Technical Evaluation Team on July 21st, 2006 re-rated Southern Foods' revised Competitive Proposal. Again there were not, as promised by USACFC, any "independent" assessments of Southern Foods' past performance. Administrative Record, at 1647 through 1657.

41. This Technical Evaluator rated Southern Foods' revised Competitive Proposal as "Blue" on the Technical Proposal and as "Blue" on the Management Proposal. This Technical Evaluator's overall rating of Southern Foods' revised Competitive Proposal was "Blue," or "Exceptional." Administrative Record, at 1657. Southern Foods' revised Competitive Proposal was not thereafter rated by a member of the Technical Evaluation Team.

42. USFS' revised Competitive Proposal was re-rated by a member of the Technical Evaluation Team on December 1st, 2006. Administrative Record, at 1598 through 1607. This Technical Evaluator's Scoring sheets disclose that USFS had still not pro-

vided the required customer satisfaction surveys. Administrative Record, at 1601, 1606. Likewise, this Technical Evaluator's Scoring sheets reveal that unlike Southern Foods, USFS had still to provide the number and type of truck drivers it was offering for United States Service Area Ten. *Id*. And just as was the case with Southern Foods' revised Competitive Proposal, there were not, as pledged by USACFC, any "independent" assessments of USFS' past performance. *Id*.

43. This Technical Evaluator rated USFS' revised Competitive Proposal as "Green" on the Technical Proposal and as "Low Green" on the Management Proposal. This Technical Evaluator's overall rating of USFS' revised Competitive Proposal was "Low Green," or less than "Acceptable." Administrative Record, at 1601, 1606. USFS' revised Competitive Proposal was not thereafter rated by a member of the Technical Evaluation Team.

THE CONTRACTING OFFICER'S RE-RATING OF SOUTHERN FOODS' REVISED COMPETITIVE PROPOSAL

44. By December 18th, 2006 the Contracting Officer herself had re-rated Southern Foods' revised Competitive Proposal. The Contracting Officer reduced Southern Foods'

rating on the Management Proposal from “Blue” to “Green,” and the Contracting Officer reduced the overall rating of Southern Foods’ revised Competitive Proposal from “Blue,” or “Exceptional,” to “Green,” or “Acceptable.” Administrative Record, at 1694. There are no Scoring sheets and there is no explanation for the Contracting Officer’s reductions which result from the Contracting Officer’s re-ratings of Southern Foods’ revised Competitive Proposal.

45. There were no changes, no revisions, in Southern Foods’ revised Competitive Proposal from July 21st, 2006, when a member of the Technical Evaluation Team gave Southern Foods’ revised Competitive Proposal an overall rating of “Blue,” or “Exceptional,” Administrative Record, at 1657, through December 18th, 2006 when the Contracting Officer reduced the overall rating of Southern Foods’ revised Competitive Proposal to “Green,” or “Acceptable.” Administrative Record, at 1694.

PRICE EVALUATION

46. Price was evaluated on a theoretical Market Basket. This theoretical Market Basket was constructed by using the tables with fourteen different categories of food and food-related products from Section B. of Request for Proposal Number NAFBA1-

**Protected Information Has Been Redacted**

06-R-0016 for the base year and for each of the nine option years. This theoretical Market Basket augments these tables by allocating each of these fourteen different categories of food and food-related products into a "Historical Purchasing Mix," and then distributing this "Historical Purchasing Mix" over total sales of $2,927,034 in the base year. Total sales are increased by five percent over each of the nine option years. Administrative Record, at 1659 through 1662.

47. The theoretical Market Basket used for the Price evaluation does not reflect United States Service Area Ten. The "Historical Purchasing Mix" in the base year of the theoretical Market Basket shows that meat was 19.09 percent of product sales, that poultry was 8.76 percent of product sales, that frozen foods was 20.33 percent of product sales, and that grocery was 25.36 percent of product sales. Administrative Record, at 1659. In fact in calendar year 2005 for United States Service Area Ten, meat was 13.8 percent of product sales; poultry was 9.9 percent of product sales; frozen foods were 24.3 percent of product sales; and grocery was 27.1 percent of product sales. Administrative Record, at 1831, 1841.

48. Because the theoretical Market Basket escalates total sales over each of the nine option years, the Price evaluation that is based on this theoretical Market Basket emphasizes "savings" from lower offered Margins. Neither the Contract that is proposed by Request for Proposal Number NAFBA1-06-R-0016 nor the theoretical Market Basket accounts for differences in product quality, or for quantity differences in individual items, e.g. a pre-portioned New York strip steak.

THE AWARD DECISION

49. The Contracting Officer makes her Award decision based on the Contracting Officer's re-rating of Southern Foods' revised Competitive Proposal. Administrative Record, at 1691 through 1695. This is all of the Contracting Officer's Award decision:

> Based on the above findings, the Contracting Officer has determined that the price is fair and reasonable and it is in the NAFI's best interest to award Service Area 10 to U.S. Foodservice as its overall Gross Profit Percentage is **8.71%** and the savings are **$19.3K** for the ten-year contract period.
>
> A search for Excluded Parties List and a Dun and Bradstreet Report for U.S. Foodservice was conducted on December 7, 2006 with no findings. Contract **Number NAFBA1-07-D-0022 for Service Area 10** is awarded to U.S. Foodservice; 1350 No. 10th Street, Paducah, KY 42501.
>
> To the best of my knowledge, the above are true and correct.

**Protected Information Has Been Redacted**

/s/ Contracting Officer

Administrative Record, at 1695.

50. It is not true or correct that the Technical Evaluation Team rated Southern Foods' Management Proposal as "Green" or that the Technical Evaluation Team gave Southern Foods' revised Competitive Proposal an overall rating of "Green."

51. The weighted average gross profit margin for USFS results in part from USFS' pricing in Contract Number NAFBA1-07-D-0022 for proportioned and boxed meat. For the base year and for each of the option years, USFS' margin for proportioned meat is seven percent and USFS' margin for boxed meat is six percent. Administrative Record, at 1702 through 1711.

52. Contract Number NAFBA1-07-D-0022 awarded to USFS' Paducah Division is effective, at the option of USACFC, for a period of ten years. In this Contract USFS offers the same Margins, by product category, for the base year and for all of the nine option years. Administrative Record, at 1702 through 1711. Royal Ahold is selling USFS. Administrative Record, at 1825.

THE DEBRIEFING

53. The Contracting Officer conducted a Debriefing for Southern Foods on March 1st, 2007. The Debriefing slides say that the revised Competitive Proposals of all three Offerors for United States Service Area Ten were "rated as technically acceptable with no significant weaknesses or deficiencies." The Debriefing slides say that "[w]ith equally acceptable technical proposals the award was made to the firm with the lowest evaluated price—USFS." Administrative Record, at 1812.

54. The Technical Evaluation Team rated Southern Foods' revised Competitive Proposal as "Blue" on the Technical Proposal and as "Blue" on the Management Proposal. The Technical Evaluator Team's overall rating of Southern Foods' revised Competitive Proposal was "Blue," or "Exceptional." Administrative Record, at 1657. The Technical Evaluation Team rated USFS' revised Competitive Proposal as "Green" on the Technical Proposal and as "Low Green" on the Management Proposal. The Technical Evaluation Team's overall rating of USFS' revised Competitive Proposal was "Low Green," or less than "Acceptable." Administrative Record, at 1601, 1606.

Respectfully submitted,

/s/ Cyrus E. Phillips, IV

______________________________
Cyrus E. Phillips, IV

District of Columbia Bar Number 456500,
Virginia State Bar Number 03135
April 20th, 2007

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112
Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: lawyer@procurement-lawyer.com

Attorney of record for Plaintiff,
Southern Foods, Incorporated.

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on Friday, April 20th, 2007 a true and complete copy of this Statement of Facts was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Joan Margaret Stentiford-Ulmer, Esq.

Electronic Mail: Joan.Stentiford-Ulmer@usdoj.gov

Attorney of record for Defendant,
U.S. Army Community and Family Support Center.

I also certify, under penalty of perjury, that on Friday, April 20th, 2007 a true and complete copy of this Statement of Facts was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

John J. Pavlick, Jr., Esq.

Electronic Mail: jpavlick@venable.com

Attorney of record for Intervenor,
U.S. Foodservice, Incorporated.