# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**Bid Protest**
**Number 07-210C**
**Judge Eric G. Bruggink**

**SOUTHERN FOODS, INCORPORATED,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant,**

**and**

**U.S. FOODSERVICE, INCORPORATED,**

**Intervenor.**

## PLAINTIFF'S BRIEF IN SUPPORT OF CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Cyrus E. Phillips, IV
1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112
Attorney of record for Plaintiff,
Southern Foods, Incorporated.

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

April 20th, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

QUESTIONS INVOLVED ........ 1

I. IS THIS AWARD THE RESULT OF A PROHIBITED AUCTION? ........ 1

II. DOES THIS AWARD PROVIDE THE GREATEST OVERALL BENEFIT? ........ 1

STATEMENT OF THE CASE ........ 1-18

ARGUMENT ........ 18-24

I. THIS AWARD TO USFS IS THE RESULT OF AN PROHIBITED AUCTION. ........ 18-23

II. THIS AWARD CANNOT BE SUSTAINED AS PROVIDING THE GREATEST OVERALL BENEFIT. ........ 23- 24

CONCLUSION ........ 25-26

CERTIFICATE OF SERVICE ........ 27

# TABLE OF AUTHORITIES

***STATUTES***

10 U.S.C. § 2241(a)(1) ........ 21

***REGULATIONS***

Army Regulation 215-4 ........ 18, 19, 22, 24

DoD Instruction 4105.71 ........ 23

***CASES***

*Logicon, Inc. v. United States*,
22 Cl. Ct. 776 (1991) ........ 23

*Marsh v. Oregon Natural Resources Council*,
490 U.S. 360 (1989) ........ 24

*Prineville Sawmill Company, Inc. v. United States*,
859 F.2d 905 (Fed. Cir. 1988) ........ 22-23

# PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

## QUESTIONS INVOLVED

I. Is this Award the result of a prohibited auction?

II. Does this Award provide the greatest overall benefit?

## STATEMENT OF THE CASE

### PARTIES

Southern Foods, Incorporated, Bowling Green, Kentucky (Southern Foods) is a Kentucky corporation and an independently-owned full-line food service distributor that until April 1st, 2007 satisfied the requirements of the Joint Services Prime Vendor Program at Fort Campbell, Clarksville, Tennessee and at Fort Knox, Louisville, Kentucky. Under the Joint Services Prime Vendor Program Southern Foods has supported U.S. Army Morale, Welfare and Recreation (MWR) Programs at Fort Campbell (http://www.fortcampbellmwr.com/) and at Fort Knox (http://www.knoxmwr.com/). Statement of Facts, Number 1.

Southern Foods' gross sales to U.S. Army MWR Programs at Fort Campbell in Fiscal Year 2005 were $1,997,000. Southern Foods' gross sales to U.S. Army MWR Programs at Fort Knox in Fiscal Year 2005 were $1,102,000. Southern Foods has supported the Joint Services Prime Vendor Program

**Protected Information Has Been Redacted**

at Fort Campbell and at Fort Knox for over ten years. Indeed, Southern Foods' gross sales to these U.S. Army MWR Programs are all the gross sales reported for United States Service Area Ten in Attachment 1, "Joint Services Prime Vendor Program Participants for U.S. Service Areas/Activities/Volume of Business in Dollars," Solicitation Number NAFBA1-06-R-0016. Statement of Facts, Number 2.

Defendant is the U.S. Army Community and Family Support Center (USACFC). USACFC was established in 1984 to "provide guidance and oversight for the Army Morale Welfare and Recreation programs." There are some fifty U.S. Army MWR Programs worldwide and these U.S. Army MWR Programs employ approximately 48,000 people. The purpose of these U.S. Army MWR Programs is to support installation Commanders in meeting soldiers' and family needs. U.S. Army MWR Programs provide "comfort, pleasure, recreational activities, and physical and mental improvement opportunities to members of the Armed Forces and their families . . . ." Statement of Facts, Number 3.

The Joint Services Prime Vendor Program is one such U.S. Army MWR Program and this second-generation U.S. Army MWR Program has provided for the supply of food and food-related products to Department of Defense (DoD) MWR activities such as theme restaurants, clubs, bowling centers, child and youth services, and snack bars. The objective of the Joint Services Prime Vendor Program is to improve food quality and reduce overhead. Currently over 900 DoD installations participate in the Joint Services Prime Vendor Program. The Joint Services Prime Vendor Program is a series of Contracts between private-sector food service distributors and the U.S. Army. These pri-

vate-sector food service distributors agree to sell food and food-related products at a set Margin/Mark-Up over cost. The current, second generation Joint Services Prime Vendor Program has been operating with eighteen Contractors since August 1996. Statement of Facts, Number 4.

Solicitation Number NAFBA1-06-R-0016 was issued by USACFC on behalf of the Joint Services Prime Vendor Program on February 24th, 2006. Solicitation Number NAFBA1-06-R-0016 seeks a third generation of Contractors for the Joint Services Prime Vendor Program. The purpose of Solicitation Number NAFBA1-06-R-0016 "is to continue to provide, under the Army's administration, non-appropriated contracts assembled to supply all food and food-related products to MWR activities, such as theme restaurants, clubs, bowling center [sic], child and youth services, and snack bars [and] to lower food costs, improve food quality and reduce overhead." Statement of Facts, Number 5.

U.S. Foodservice, Incorporated (USFS) is a wholly-owned subsidiary of Koninklijke Ahold, N.V., "Royal Ahold." A significant number of class action lawsuits have been filed against Royal Ahold and USFS. USFS, Royal Ahold, and some of their current/former officers or employees are the subject of current investigations by the United States Department of Justice, by the United States Department of Labor, and by various foreign jurisdictions. USFS' Paducah Division operates from a warehouse in Paducah, Kentucky. Sales to U.S. Army MWR programs are not among USFS' Paducah Division's top ten accounts. Statement of Facts, Number 6.

The U.S. Army's Legal Services Agency reported in October 2006 that John Grassmick, formerly the Program Manager of the Joint Services Prime Vendor Program at USACFC was debarred, and this after John Grassmick had pled guilty to soliciting a gratuity. At the same time the U.S. Army's Legal Services Agency reported that a Director of USFS was debarred after he had met with Mr. Grassmick and that Mr. Grassmick had provided that USFS Director with pricing Margins for a food services Contract. Statement of Facts, Number 7.

Royal Ahold is selling USFS. In December 2006 USFS was sued by a Connecticut hospital and by a family-owned Italian restaurant in Rockford, Illinois. USFS is there charged with "racketeering" through use of a "fraudulent" supply system to overcharge customers. Statement of Facts, Number 8.

On January 24th, 2007 USFS' Paducah Division was awarded Contract Number NAFBA1-07-D-0022 to provide broad line food distribution services for the third generation of the Joint Services Prime Vendor Program in United States Service Area Ten. Contract performance commenced on April 1st, 2007. Available options allow the period of performance of Contract Number NAFBA1-07-D-0022 to extend through April 1st, 2017. Statement of Facts, Number 9.

THE ACQUISITION

Request for Proposal Number NAFBA1-06-R-0016 was issued on February 24th, 2006 and this Acquisition seeks Competitive Proposals for the Joint Services Prime Vendor Program in eighteen (now seventeen) designated United States Service Areas. Only one Award is to be made for each United States Service Area. An Offeror awarded a Contract for a particular United States Service

Area is required to service all military MWR Programs in that United States Service Area. USACFC is responsible for Contract administration. Only nonappropriated funds are to be used to pay for food and food-related products that are accepted. Statement of Facts, Number 10.

DETAILED REQUIREMENTS

Request for Proposal Number NAFBA1-06-R-0016 includes in Section B., "Supplies or Services and Price/Cost," tables with fourteen different categories of food and food-related products. There are separate tables for the base year and for each of nine option years. Offerors are to set out an offered Margin, or an offered Mark-Up, but not both, for each category and for each of the option years. All fourteen categories of food and food-related products are to be available to all of the installations within a designated United States Service Area. Offerors may propose on one or more United States Service Areas, but only one Award will be made for each United States Service Area. Statement of Facts, Number 11.

Competitive Proposals submitted in response to Request for Proposal Number NAFBA1-06-R-0016 are to be provided to USACFC in three separate volumes—Price, Technical, and Management Proposals. Request for Proposal Number NAFBA1-06-R-0016 says that "[p]ricing will be evaluated using the fixed fee reflected in Section B for each of the 14 product categories." Statement of Facts, Number 12.

Request for Proposal Number NAFBA1-06-R-0016 requires each Offeror to "provide customer satisfaction surveys or similar documents which attest to its performance capabilities," and then Re-

quest for Proposal Number NAFBA1-06-R-0016 pledges that USACFC "will conduct independent assessments of the Contractor's past performance." Statement of Facts, Number 13.

THE PROMISED EVALUATION

Amendment 0004 to Request for Proposal Number NAFBA1-06-R-0016 sets out the evaluation factors for Award. Competitive Proposals are to be evaluated on three Factors: Price, Technical, and Management. Price is "the primary area of consideration." Price is "significantly more important" than Technical and Technical and Management are "of equal importance." Price is to be evaluated on individual Margins, on Private Label Rebates, and on a Market Basket. All these Price Subfactors are of equal weight. Technical is to be evaluated on two equally-weighted Subfactors: Customer Service and Reporting. Management is likewise to be evaluated on two equally-weighted Subfactors: Organizational Experience and Past Performance. Statement of Facts, Number 14.

THE ACQUISITION PLAN

The Acquisition Plan explains that submission of "customer satisfaction surveys or similar documents" is mandatory and that USACFC will conduct "independent assessments" of Past Performances:

> **(2) Past Performance**
>
> (a) The Offeror *shall* provide customer satisfaction surveys or similar documents which attest to its performance capabilities.
> (b) The Fund will conduct independent assessments of the Contractor's past performance.

Statement of Facts, Number 15.

This is what the Acquisition Plan says about the evaluation of the Technical and the Management Proposals:

> (d) Evaluation Team. A technical evaluation team will be established to evaluate the technical merits of the proposals. For each phase of the acquisition, Mr. John Grassmick, Program Manager will be the Chairperson of the team. The technical team for each Phase will be made up five individuals from various installations who participate in the program. When an AFRC area is competed, one member from the AFRC will be included in the evaluation team and two members from installations participating in the program. Nomination and selection of the evaluation team members is ongoing.

Statement of Fact, Number 16.

THE EVALUATION PLAN

The Evaluation Plan for Request for Proposal Number NAFBA1-06-R-0016 explains that the Contracting Officer is to evaluate Price and that a Technical Evaluation Team is to evaluate Technical and Management. Technical and Management Proposals are to be color-rated by the Technical Evaluation Team as follows:

- Blue: Exceptional
- Green: Acceptable
- Yellow: Marginal
- Red: Unacceptable

Statement of Facts, Number 17.

To ensure "an impartial and comprehensive evaluation of each Offeror's proposal," this is what the Evaluation Plan says about the evaluation process:

> (1)EACH EVALUATOR WILL ASSESS EACH PROPOSAL.

> (a) Each evaluator will objectively and individually assess each Offeror's proposal based upon the information in the proposal and upon the established criteria for each evaluation factor. *Strict adherence to the evaluation criteria in the RFP is critical for a legally sufficient evaluation*.
> (b) Each evaluator will individually assess each factor and provide a narrative with specific comments and references to the proposal, which identifies strengths, weaknesses, deficiencies, and clarifications needed and support his/her rating. *This narrative justifying the color score is very important to document the record and to provide a basis for discussions and award decisions.* It also provides a trail needed for debriefings and/or protests. *Evaluators must specify exact reasons for the evaluation of each factor and subfactor.* Elements not understood, ambiguities, and deficiencies will be documented so additional information can be requested from the Offerors. It is the chairperson's responsibility to review each evaluation and ensure that the scores are supported by adequate written justification.

Statement of Facts, Number 18.

The Evaluation Plan provides a pre-printed Scoring sheet. This is what the pre-printed Scoring sheet says about assessments of Past Performances:

> **(b) Independent assessments of the Contractor's past performance <u>will be conducted by the Fund</u>.**

Statement of Facts, Number 19.

SOUTHERN FOODS' COMPETITIVE PROPOSAL

Southern Foods has submitted a Competitive Proposal only on United States Service Area Ten. In response to the requirement of Request for Proposal Number NAFBA1-06-R-0016 for "customer satisfaction surveys or similar documents," Southern Foods submitted completed Past Performance Questionnaires from three U.S. Army MWR Programs, and from four private parties to whom Southern Foods provides food and food-related products. Statement of Facts, Number 20.

In addition to the completed Past Performance Questionnaires, Southern Foods provided copies of many certificates and awards from U.S. Army activities at Fort Campbell and at Fort Knox, these including personal commendations from the Commandant at Fort Campbell; from the Commandant of the 101st Airborne Division at Fort Campbell; from the Commandant of the 2nd Battalion, 320th Field Artillery Regiment at Fort Campbell; and from the Garrison Commander at Fort Knox. Statement of Facts, Number 21.

Southern Foods submitted its initial Competitive Proposal to USACFC on April 10th, 2006. By letter dated July 6th, 2006 USACFC opened discussions on Southern Foods' initial Competitive Proposal. There were no deficiencies, no weaknesses, and no clarifications required for Southern Foods' Technical Proposal. USACFC wrote Southern Foods that weaknesses had been found in Southern Foods' Management Proposal and that Southern Foods needed to provide the number and type of truck drivers it was offering and that Southern Foods needed to provide the addresses of Southern Foods' top ten "Prime Vendor" accounts. Statement of Facts, Number 22.

Southern Foods provided these necessary clarifications. Statement of Facts, Number 23.

On November 6th, 2006 USACFC wrote Southern Foods that further discussions were deemed necessary. USACFC then told Southern Foods that Southern Foods' offered Margins for United States Service Area Ten should be "re-evaluated" and USACFC asked Southern Foods to submit revised, and lower, Margins. There were no deficiencies or weaknesses noted in Southern

Foods' Technical or Management Proposals and there were no clarifications required from Southern Foods. Statement of Facts, Number 24.

In reply Southern Foods submitted no revisions to Southern Foods' Price, Technical, or Management Proposals. Southern Foods wrote USACFC that Southern Foods did not wish to lower Southern Foods' offered Margins, that Southern Foods believed that its Margins were competitive, and that Southern Foods would have no changes to its response. Statement of Facts, Number 25.

USFS' COMPETITIVE PROPOSAL

USFS submitted an initial Competitive Proposal on eleven of the seventeen United States Service Areas. USFS' Competitive Proposal for United States Service Area Ten was submitted on behalf of USFS' Paducah Division by USFS' Vice President National Accounts, Military/Government Segment. Statement of Facts, Number 26.

USFS submitted no completed customer satisfaction surveys or similar documents. Statement of Facts, Number 27.

USACFC opened discussions on USFS' initial Competitive Proposal on June 30th, 2006. Deficiencies were noted in USFS' Price Proposal. Deficiencies were noted in USFS' Technical Proposal. Deficiencies were noted in USFS' Management Proposal. Among the deficiencies noted by the Technical Evaluation Team in USFS' Management Proposal was that USFS did not provide the required customer satisfaction surveys. Statement of Facts, Number 28.

USFS responded with a Protest. USFS did not submit revisions to its initial Competitive Proposal. Statement of Facts, Number 29.

USFS withdrew its Protest on October 16th, 2006. Statement of Facts, Number 30.

USACFC re-opened discussions with USFS on November 6th, 2006. Deficiencies were again noted in USFS' Price Proposal. Deficiencies were again noted in USFS' Technical Proposal. Deficiencies were again noted in USFS' Management Proposal. Again USACFC wrote USFS that USFS' Management Proposal was deficient because USFS did not provide the required customer satisfaction surveys. Statement of Facts, Number 31.

USFS responded on November 20th, 2006 with revisions to its initial Competitive Proposal. USFS' revised Competitive Proposal does not provide the customer satisfaction surveys which are required by Request for Proposal Number NAFBA1-06-R-0016. Statement of Facts, Number 32.

## THE AWARD TO USFS

### THE TECHNICAL EVALUATION TEAM'S RATINGS

On June 1st, 2006 the Technical Evaluation Team submitted to the Contracting Officer the Technical Evaluation Team's ratings of the Technical and Management Proposals. Contrary to the Acquisition Plan, this Technical Evaluation Team was made up of three members, not five members. Not one of these three Technical Evaluators was from an installation in United States Service Area Ten. Neither were any of these Technical Evaluators members of the U.S. Army. Statement of Facts, Number 33.

**Protected Information Has Been Redacted**

One of these three Technical Evaluators rated Southern Foods' initial Competitive Proposal as "Blue" on the Technical Proposal, and as "Green" on the Management Proposal. This Technical Evaluator's overall rating of Southern Foods' initial Competitive Proposal was "High Green." Statement of Facts, Number 34.

The second of these three Technical Evaluators rated Southern Foods' initial Competitive Proposal as "Blue" on the Technical Proposal, and as "Green" on the Management Proposal. This second Technical Evaluator neglected to review the completed customer satisfaction surveys that Southern Foods had submitted with its initial Competitive Proposal; instead this second Technical Evaluator looked only at the certificates, awards and letters of commendation from U.S. Army activities at Fort Campbell and at Fort Knox that Southern Foods had provided with Southern Foods' initial Competitive Proposal. This second Technical Evaluator's overall rating of Southern Foods' initial Competitive Proposal was "Bluish Green." Statement of Facts, Number 35.

The third of these three Technical Evaluators rated Southern Foods' initial Competitive Proposal as "Blue" on the Technical Proposal, and as "Green" on the Management Proposal. The third Technical Evaluator noted that one of Southern Foods' largest accounts was the Joint Services Prime Vendor Program. This third Technical Evaluator's overall rating of Southern Foods' initial Competitive Proposal was "Green." Statement of Facts, Number 36.

There were not, as promised by Request for Proposals Number NAFBA1-06-R-0016, as promised by the Acquisition Plan, and as promised by the Evaluation Plan, "independent assessments" of

Southern Foods' past performances. Instead two of the three Technical Evaluators looked only at the customer satisfaction surveys that were provided by Southern Foods in Southern Foods' initial Competitive Proposal. Statement of Facts, Number 37.

There is not a complete set of Scoring sheets from any one of the three Technical Evaluators for USFS' initial Competitive Proposal. The Administrative Record establishes only that the consensus rating for USFS' initial Competitive Proposal was "Yellow to Green" on the Technical Proposal, that the consensus rating for USFS' initial Competitive Proposal was "Red/Yellow to Green" on the Management Proposal, and that the overall consensus rating of USFS' initial Competitive Proposal was "Red/Yellow to Green." Statement of Facts, Number 38.

The Technical Evaluation Team reported to the Contracting Officer on June 1st, 2006 the Technical Evaluation Team's "firm recommendation" that Southern Foods be awarded the successor Contract in United States Service Area Ten for the Joint Services Prime Vendor Program. Statement of Facts, Number 39.

After Southern Foods had provided the necessary clarifications for its initial Competitive Proposal, a member of the Technical Evaluation Team on July 21st, 2006 re-rated Southern Foods' revised Competitive Proposal. Again there were not, as promised by USACFC, any "independent" assessments of Southern Foods' past performance. Statement of Facts, Number 40.

This Technical Evaluator rated Southern Foods' revised Competitive Proposal as "Blue" on the Technical Proposal and as "Blue" on the Management Proposal. This Technical Evaluator's overall

rating of Southern Foods' revised Competitive Proposal was "Blue," or "Exceptional." Southern Foods' revised Competitive Proposal was not thereafter rated by a member of the Technical Evaluation Team. Statement of Facts, Number 41.

USFS' revised Competitive Proposal was rated by a member of the Technical Evaluation Team on December 1st, 2006. This Technical Evaluator's Scoring sheets disclose that USFS had still not provided the required customer satisfaction surveys. Likewise, this Technical Evaluator's Scoring sheets reveal that unlike Southern Foods, USFS had still to provide the number and type of truck drivers it was offering for United States Service Area Ten. And just as was the case with Southern Foods' revised Competitive Proposal, there were not, as pledged by USACFC, any "independent" assessments of USFS' past performance. Statement of Facts, Number 42.

This Technical Evaluator rated USFS' revised Competitive Proposal as "Green" on the Technical Proposal and as "Low Green" on the Management Proposal. This Technical Evaluator's overall rating of USFS' revised Competitive Proposal was "Low Green," or less than "Acceptable." USFS' revised Competitive Proposal was not thereafter rated by a member of the Technical Evaluation Team. Statement of Facts, Number 43.

THE CONTRACTING OFFICER'S RE-RATING OF SOUTHERN FOODS' REVISED COMPETITIVE PROPOSAL

By December 18th, 2006 the Contracting Officer herself had re-rated Southern Foods' revised Competitive Proposal. The Contracting Officer reduced Southern Foods' rating on the Management Proposal from "Blue" to "Green," and the Contracting Officer reduced the overall rating of Southern

Foods' revised Competitive Proposal from "Blue," or "Exceptional," to "Green," or "Acceptable." There are no Scoring sheets and there is no explanation for the Contracting Officer's reductions which result from the Contracting Officer's re-ratings of Southern Foods' revised Competitive Proposal. Statement of Facts, Number 44.

There were no changes, no revisions, in Southern Foods' revised Competitive Proposal from July 21st, 2006 when a member of the Technical Evaluation Team gave Southern Foods' revised Competitive Proposal an overall rating of "Blue," or "Exceptional," through December 18th, 2006 when the Contracting Officer reduced the overall rating of Southern Foods' revised Competitive Proposal to "Green," or "Acceptable." Statement of Facts, Number 45.

PRICE EVALUATION

Price was evaluated on a theoretical Market Basket. This theoretical Market Basket was constructed by using the tables with fourteen different categories of food and food-related products from Section B. of Request for Proposal Number NAFBA1-06-R-0016 for the base year and for each of the nine option years. This theoretical Market Basket augments these tables by allocating each of these fourteen different categories of food and food-related products into a "Historical Purchasing Mix," and then distributing this "Historical Purchasing Mix" over total sales of $2,927,034 in the base year. Total sales are increased by five percent over each of the nine option years. Statement of Facts, Number 46.

The theoretical Market Basket used for the Price evaluation does not reflect United States Service Area Ten. The "Historical Purchasing Mix" in the base year of the theoretical Market Basket shows that meat was 19.09 percent of product sales, that poultry was 8.76 percent of product sales, that frozen foods was 20.33 percent of product sales, and that grocery was 25.36 percent of product sales. In fact in calendar year 2005 for United States Service Area Ten, meat was 13.8 percent of product sales; poultry was 9.9 percent of product sales; frozen foods were 24.3 percent of product sales; and grocery was 27.1 percent of product sales. Statement of Facts, Number 47.

Because the theoretical Market Basket escalates total sales over each of the nine option years, the Price evaluation that is based on this theoretical Market Basket emphasizes "savings" from lower offered Margins. Neither the Contract that is proposed by Request for Proposal Number NAFBA1-06-R-0016 nor the theoretical Market Basket accounts for differences in product quality, or for quantity differences in individual items, e.g. a pre-portioned New York strip steak. Statement of Facts, Number 48.

THE AWARD DECISION

The Contracting Officer makes her Award decision based on the Contracting Officer's re-rating of Southern Foods' revised Competitive Proposal. This is the entirety of the Contracting Officer's Award decision:

> Based on the above findings, the Contracting Officer has determined that the price is fair and reasonable and it is in the NAFI's best interest to award Service Area 10 to U.S. Foodservice as its overall Gross Profit Percentage is **8.71%** and the savings are **$19.3K** for the ten-year contract period.

A search for Excluded Parties List and a Dun and Bradstreet Report for U.S. Foodservice was conducted on December 7, 2006 with no findings. Contract **Number NAFBA1-07-D-0022 for Service Area 10** is awarded to U.S. Foodservice; 1350 No. 10th Street, Paducah, KY 42501.

To the best of my knowledge, the above are true and correct.

/s/ Contracting Officer

Statement of Facts, Number 49.

It is not true or correct that the Technical Evaluation Team rated Southern Foods' Management Proposal as "Green" or that the Technical Evaluation Team gave Southern Foods' revised Competitive Proposal an overall rating of "Green." Statement of Facts, Number 50.

The lower weighted average gross profit Margin for USFS (8.71 percent) results in part from USFS' pricing on Contract Number NAFBA1-07-D-0022 for proportioned and boxed meat. For the base year and for each of the option years, USFS' Margin for proportioned meat is seven percent and USFS' Margin for boxed meat is six percent. Statement of Facts, Number 51.

Contract Number NAFBA1-07-D-0022 awarded to USFS' Paducah Division is effective, at the option of USACFC, for a period of ten years. In this Contract USFS offers the same Margins, by product category, for the base year and for all of the nine option years. Royal Ahold is selling USFS. Statement of Facts, Number 52.

## THE DEBRIEFING

The Contracting Officer conducted a Debriefing for Southern Foods on March 1st, 2007. The Debriefing slides say that the revised Competitive Proposals of all three Offerors for United States Service Area Ten were "rated as technically acceptable with no significant weaknesses or deficiencies." The Debriefing slides say that "[w]ith equally acceptable technical proposals the award was made to the firm with the lowest evaluated price—USFS." Statement of Facts, Number 53.

The Technical Evaluation Team rated Southern Foods' revised Competitive Proposal as "Blue" on the Technical Proposal and as "Blue" on the Management Proposal. The Technical Evaluation Team's overall rating of Southern Foods' revised Competitive Proposal was "Blue," or "Exceptional." The Technical Evaluation Team rated USFS' revised Competitive Proposal as "Green" on the Technical Proposal and as "Low Green" on the Management Proposal. The Technical Evaluation Team's overall rating of USFS' revised Competitive Proposal was "Low Green," or less than "Acceptable." Statement of Facts, Number 54.

---

## ARGUMENT

---

### I. This Award to USFS is the Result of a Prohibited Auction.

Request for Proposal Number NAFBA1-06-R-0016 is proceeding as a Formal Acquisition under Chapter 4 of Army Regulation 215-4. The Evaluation that is promised—an Evaluation on three Fac-

tors: Price, Technical, and Management—is the best value tradeoff process that is explained in paragraph 4-2.*a*.(1) of Army Regulation 215-4.

But that is not what happened here. This was a prohibited auction.

How so?

First, the Contracting Officer allowed the submission and evaluation of initial and revised Competitive Proposals from USFS that do not, as required by Request for Proposal Number NAFBA1-06-R-0016, "provide customer satisfaction surveys or similar documents which attest to [USFS'] performance capabilities." This failure of USFS to submit the required customer satisfaction surveys in USFS' initial competitive proposal was noted by the Contracting Officer as a deficiency and this deficiency has never been corrected. USFS failed to submit the required customer satisfaction surveys in USFS' revised Competitive proposal and again this failure was noted by the Contracting Officer as a deficiency, and this deficiency continues today.

The Technical Evaluator's Scoring sheets for the rating of USFS' revised Competitive Proposal reveal that USFS had still not provided the required customer satisfaction surveys, and yet the Contracting Officer did nothing about this failure to comply with the clear requirements of Request for Proposal Number NAFBA1-06-R-0016.

Second, there have never been, as pledged by Request for Proposal Number NAFBA1-06-R-0016, as pledged by the Acquisition Plan, and as pledged by the pre-printed Scoring sheet provided

by the Evaluation Plan, any "independent assessments" of the past performances of any of the three Offerors for United States Service Area Ten.

Third, it is simply not true, as the Contracting Officer would have it, that the revised Competitive Proposals of all three Offerors for United States Service Area Ten were deemed to be "equally technically acceptable."

Recall that the Technical Evaluation Team rated Southern Foods' revised Competitive Proposal as "Blue" on the Technical Proposal and as "Blue" on the Management Proposal. The Technical Evaluation Team's overall rating of Southern Foods' revised Competitive Proposal was "Blue," or "Exceptional." The Technical Evaluation Team rated USFS' revised Competitive Proposal as "Green" on the Technical Proposal and as "Low Green" on the Management Proposal. The Technical Evaluation Team's overall rating of USFS' revised Competitive Proposal was "Low Green," or less than "Acceptable."

Fourth, John Grassmick would be proud of the theoretical Market Basket used for the Price evaluation because this theoretical Market Basket gives preferential treatment to USFS just as John Grassmick thought to give preferential treatment to USFS:

(a) the theoretical Market Basket does not reflect United States Service Area Ten and instead this theoretical Market Basket favors the meat food categories, food categories for which USFS' Margin is less than USFS' overall Margin;

(b) the theoretical Market Basket is based on the unlikely premise that product sales in United States Service Area Ten will escalate over each of the nine option years—this fanciful premise is unlikely to occur save that future support of U.S. Army morale requirements shifts from appropriated funds, 10 U.S.C. § 2241(a)(1), to nonappropriated funds—and thus the Price evaluation that is based on this theoretical Market Basket over-emphasizes "savings" from lower offered Margins; and

(c) the theoretical Market Basket, just as the Contract that is proposed by Request for Proposals NAFBA1-06-R-0016, does not account for differences in product quality, or for quantity differences in individual food items. For instance, one can offer a lower Margin on pre-portioned New York strip steak when one can deliver this pre-portioned New York strip steak as a six-ounce portion, rather than an eight-ounce portion.

Fifth, and perhaps most telling, is that the Contracting Officer saw fit—and on her own—to re-rate Southern Foods' revised Competitive Proposal and to reduce Southern Foods' rating on the Management Proposal from "Blue" to "Green," and to reduce the overall rating of Southern Foods' revised Competitive Proposal from "Blue," or "Exceptional," to "Green," or "Acceptable."

The Contracting Officer can only have done this to support her decision to run this Acquisition as a lowest price, technically acceptable process. As was explained at the Debriefing, it is perfectly permissible to make an award on the lowest evaluated price (here, the lowest Margin) when a Competition results in equally acceptable technical proposals.

But that did not happen here and the Debriefing slides are a lie—the overall rating of Southern Foods revised Competitive Proposal was "Blue," or "Exceptional," while the overall rating of USFS' revised Competitive Proposal was "Low Green," or less than "Acceptable."

USACFC has apparently forgotten the command of paragraph 4-20.*e*.(2) of Army Regulation 215-4, the command that a Post-Award Debriefing shall include the "[o]verall rating of the successful offeror and the debriefed offeror."

Where was the auction?

The auction here occurred after November 6th, 2006 when the Contracting Officer re-opened discussions. It is beyond cavil that these re-opened discussions were an auction—the existence of this auction is confirmed by the Contracting Officer's direction to Southern Foods that Southern Foods "re-evaluate" Southern Foods' offered Margins and that Southern Foods submit revised, and lower, Margins.

The Contracting Officer re-opened discussions even though USACFC already had a perfectly acceptable revised Competitive Proposal from Southern Foods and USACFC's Technical Evaluation Team had recommended that the Contract proposed by Request for Proposals Number NAFBA1-06-R-0016 be awarded to Southern Foods.

Where a bid is cancelled and a public competition is re-opened or, as here, where discussions are re-opened, and yet there is an acceptable bid or proposal, the result is a prohibited auction. The United States Court of Appeals for the Federal Circuit has so held in *Prineville Sawmill Company,*

*Inc. v. United States*, 859 F.2d 905, 912-13 (Fed. Cir. 1988), and this Court's predecessor has likewise concluded that re-opened discussions are improper in the absence of a compelling reason, *Logicon, Inc. v. United States*, 22 Cl. Ct. 776, 788 (1991).

Here there was no compelling reason to re-open discussions on November 6th, 2006. The result of the Contracting Officer's doing so is that this Award is made on a prohibited auction.

**II. This Award Cannot Be Sustained as Providing the Greatest Overall Benefit.**

Paragraph 6.4.1 of DoD Instruction 4105.71, "Nonappropriated Fund (NAF) Procurement Procedure," requires that nonappropriated fund Contracts "be awarded to responsible offerors and to offerors who offer the best value to the NAFI [nonappropriated fund instrumentality." Paragraph E1.1.1. of Enclosure 1 of DoD Instruction 4105.71 defines this "best value" as the "expected outcome of a procurement that . . . provides the greatest overall benefit in response to the requirement."

Does this Award to USFS, an Award which is made *only* on lowest overall offered Margin, provide the greatest overall benefit? No, it does not.

The problem is that an Award only on the lowest overall offered Margin, without any consideration, as here, of the Technical and the Management Evaluation Factors, does not offer any assurance of performance sufficient to satisfy the requirements of United States Service Area Ten for food and food-related products. Indeed, this is the reason that at the outset of this Acquisition USACFC selected a tradeoff process, rather than a lowest price, technically acceptable process.

The Contract that is proposed by Request for Proposals Number NAFBA1-06-R-0016 does not contain detailed requirements for the food and food-related products that are to be delivered. Neither does this proposed Contract specify other than the minimum requirements for customer service, reporting, and management. This is the reason for the tradeoff process by which this Acquisition was to have been, but was not, conducted.

Already USACFC has received complaints from United States Service Area Ten about food quality and food portion size. These are the sorts of issues that should have been investigated, but were not, through customer satisfaction surveys and through independent assessments of Offerors' past performances.

It is not a usual occurrence that a General Officer writes a personal commendation for a U.S. Army business partner. But just these were presented by Southern Foods. And they were ignored.

As Source Selection Authority this Contracting Officer was required to follow the Acquisition Plan and to ensure that the Competitive Proposals for United States Service Area Ten were evaluated as is announced in Paragraph 4.4.*b*.(3), (4) of Army Regulation 215-4, i.e., in accordance with the Acquisition Plan, the Solicitation, and the announced Evaluation Factors and Subfactors. She did not do so.

This Contracting Officer's Award decision is a "clear error of judgment." *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989).

## CONCLUSION

For all of the reasons set forth in the foregoing Brief in Support of Plaintiff's Cross-Motion for Judgment on the Administrative Record, Southern Foods respectfully requests that the Court enter Judgment for Southern Foods on this Administrative Record, RCFC 52.1(b), together with: (1) a Declaration that this Award of a Contract to USFS for the third generation of the Joint Services Prime Vendor Program in United States Service Area Ten lacks a rational basis, (2) a Declaration that the Contracting Officer's Award Decision is arbitrary and capricious, unlawful, and in violation of applicable procurement Regulations, (3) a Permanent Injunction allowing Defendant's Technical Evaluation Team to conduct a proper re-scoring of the revised Competitive Proposals for United States Service Area Ten, this followed by a proper Contracting Officer's Best Value, Trade-off Award Decision, and (4) such further and other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Cyrus E. Phillips, IV

Cyrus E. Phillips, IV

District of Columbia Bar Number 456500,
Virginia State Bar Number 03135
April 20th, 2007

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112

Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: lawyer@procurement-lawyer.com

Attorney of record for Plaintiff,
Southern Foods, Incorporated.

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on Friday, April 20th, 2007 a true and complete copy of this Plaintiff's Brief in Support of Plaintiff's Cross-Motion for Judgment on the Administrative Record was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Joan Margaret Stentiford-Ulmer, Esq.

Electronic Mail: Joan.Stentiford-Ulmer@usdoj.gov

Attorney of record for Defendant,
U.S. Army Community and Family Support Center.

I also certify, under penalty of perjury, that on Friday, April 20th, 2007 a true and complete copy of this Plaintiff's Brief in Support of Plaintiff's Cross-Motion for Judgment on the Administrative Record was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

John J. Pavlick, Jr., Esq.

Electronic Mail: jpavlick@venable.com

Attorney of record for Intervenor,
U.S. Food Service, Incorporated.

/s/ Cyrus E. Phillips, IV

Cyrus E. Phillips, IV