# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**Bid Protest**
**Number 07-210C**
**Judge Eric G. Bruggink**

**SOUTHERN FOODS, INCORPORATED,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant,**

**and**

**U.S. FOODSERVICE, INCORPORATED,**

**Intervenor.**

## PLAINTIFF'S BRIEF IN RESPONSE TO CROSS-MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Cyrus E. Phillips, IV
1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112
Attorney of record for Plaintiff,
Southern Foods, Incorporated.

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

April 27th, 2007

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii-iii

ARGUMENT ........ 1-7

I. STANDING, FOR THE PURPOSE OF A POST-AWARD PROCUREMENT PROTEST, REQUIRES ONLY THAT A DISAPPOINTED OFFEROR HAVE HAD A SUBSTANTIAL CHANCE TO HAVE RECEIVED THE AWARD, NOT THAT THE DISAPPOINTED OFFEROR BE NEXT IN LINE FOR AWARD. ........ 1-4

II. THE REQUIREMENT FOR USE OF IMPAC IS AN UNDEFINED REQUIREMENT. ........ 4-7

CERTIFICATE OF SERVICE ........ 8

# TABLE OF AUTHORITIES


**_STATUTES_**

5 U.S.C. § 702 . . . . . 5

5 U.S.C. § 706 . . . . . 4

5 U.S.C. § 706(2)(A) . . . . . 4-5

28 U.S.C. § 1491(b)(4) . . . . . 4

**_REGULATIONS_**

Army Regulation 215-4 . . . . . 6

**_CASES_**

*Ad Hoc Metals Coalition v. Whitman*,
227 F. Supp. 2d 134 (D. D.C. 2002) . . . . . 5-6

*Citizens to Preserve Overton Park v. Volpe*,
401 U.S. 402 (1971) . . . . . 4-5

*Dismas Charities, Inc. v. United States*,
75 Fed. Cl. 59 (2007) . . . . . 2

*Environmental Defense Fund v. Blum*,
458 F. Supp. 650 (D. D.C. 1978) . . . . . 6

*Esch v. Yeutter*,
876 F.2d 976 (D.C. Cir. 1989) . . . . . 5

*Galen Medical Associates, Inc. v. United States*,
56 Fed. Cl. 104 (2003) . . . . . 1, 3

*Impresa Construzioni Geom. Domenico Garufi v. United States*,
238 F.3d 1324 (Fed. Cir. 2001) . . . . . 1, 3

*Information Technology & Applications Corp. v. United States*,
316 F.3d 1312 (Fed. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

*Public Citizen v. Heckler*,
653 F. Supp. 1229 (D. D.C. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*The Fund for Animals v. Williams*,
391 F. Supp. 2d 191 (D. D.C. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

PLAINTIFF'S BRIEF IN RESPONSE TO
CROSS-MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

## ARGUMENT

### I. Standing, for the Purpose of a Post-Award Procurement Protest, Requires Only That A Disappointed Offeror Have Had A Substantial Chance To Have Received The Award, Not That The Disappointed Offeror Be Next In Line For Award.

Defendant and Intervenor cite to *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1334 (Fed. Cir. 2001) and from this binding precedent Defendant and Intervenor cite to *Galen Medical Associates, Inc. v. United States*, 56 Fed. Cl. 104, 108 (2003) to argue that an Offeror second in line for Award lacks the requisite "direct economic interest" necessary for standing to file and pursue a Post-Award Procurement Protest.

In this Case there is a third Offeror, Sysco Corporation, and Defendant and Intervenor here cite to the Contracting Officer's Selection Decision, Administrative Record, at 1691 to argue that Sysco Corporation, not Southern Foods, was next in line for Award.

But the Administrative Record does not establish that Sysco Corporation, not Southern Foods, is next in line for Award:

(1) It is not true, as both Defendant and Intervenor would have it, that for Sysco Corporation's revised Competitive Proposal the Contracting Officer had calculated Sysco Corporation's gross markup/margin percentage to be 9.85 percent, a gross markup/margin percentage higher than the

**Protected Information Has Been Redacted**

USFS gross markup/margin percentage, but nonetheless lower than the gross markup/margin percentage calculated by the Contracting Officer for the Southern Foods revised Competitive Proposal. (And this gross markup/margin percentage calculated for the Southern Foods revised Competitive Proposal is disputed.) Instead, this is the gross markup/margin percentage calculated by the Contracting Officer for Sysco Corporation's *initial* Competitive Proposal. There is no evidence in the Administrative Record of the gross markup/margin percentage calculated by the Contracting Officer for Sysco Corporation's *revised* Competitive Proposal. Indeed, there is no evidence in the Administrative Record that Sysco Corporation ever submitted a *revised* Competitive Proposal. And yet it was only the *revised* Competitive Proposals, not the *initial* Competitive Proposals, which were the subject of the Contracting Officer's Selection Decision.

(2) Sysco Corporation's initial Competitive Proposal was rated by the Technical Evaluation Team as "Red," or "Unacceptable" on the Technical Factor. Sysco Corporation's initial Competitive Proposal was rated by the Technical Evaluation Team as "Red/Green" on the Management Factor. The Technical Evaluation Team's overall rating of Sysco Corporation's initial Competitive Proposal was "Red," or "Unacceptable." An unacceptable Competitive Proposal cannot be considered, much less form the basis for an argument that this unacceptable Competitive Proposal is next in line for award. *Dismas Charities, Inc. v. United States*, 75 Fed. Cl. 59, 62 (2007).

Nor does the question just who is next in line for Award control standing to challenge an Award based on Competitive Proposals. Rather, the requisite standing to challenge an Award based on

Competitive Proposals is possessed by all of the Offerors in such Competitions who, but for procurement process errors, had a "substantial chance" to receive an Award, i.e., those Offerors whose chance of securing the Award would "not have been insubstantial." *Information Technology & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

And the citations by Defendant and by Intervenor to *Galen Medical* are inapposite because *Galen Medical* in fact rejects the view of the Government Accountability Office that an Offeror whose Competitive Proposal is determined unacceptable, i.e., is not in line for award, lacks standing. Instead *Galen Medical* adopts the "substantial chance" standard announced in *Impresa*, a standard which is extended in *Information Technology* to Offerors who had a not insubstantial chance:

> Plaintiff submitted a bid and its proposals were evaluated on the merits by the VA, not rejected as non-responsive. Though the evaluators reduced plaintiff's scores for lack of a viable site, there is no evidence that they found plaintiff's proposal technically unacceptable. . . .

*Galen Medical*, 56 Fed. Cl. at 108.

Indeed, the Technical Evaluation Team rated Southern Foods' revised Competitive Proposal as "Blue" on the Technical Factor and as "Blue" on the Management Factor. The Technical Evaluation Team's overall rating of Southern Foods' revised Competitive Proposal was "Blue," or "Exceptional." The Technical Evaluation Team rated USFS' revised Competitive Proposal as "Green," or only "Acceptable" on the Technical Factor and as "Low Green," or less than "Acceptable" on the Management Factor. The Technical Evaluation Team's overall rating of USFS' revised Competitive Proposal was "Low Green," or less than "Acceptable."

Surely these ratings by the Technical Evaluation Team must be the "not insubstantial" chance at Contract Award that is demanded for standing to file and pursue this Post-Award Procurement Protest.

**II. The Requirement for Use of IMPAC is an Undefined Requirement.**

Intervenor is correct when it points out that Defendant has explicitly not required use of IMPAC. Intervenor's Brief in Support, at pages 8-9. Nonetheless, there is still an undefined requirement at Fort Campbell for exclusive use of IMPAC and this undefined requirement is shortly going to become critical because on May 1st, 2007 Defendant has decreed that Installations are to make mandatory use of the Joint Service Prime Vendor Program, ergo Installations are to make mandatory use of Contract Number NAFBA1-07-D-0022, the Contract issued by Defendant to USFS to support the Joint Service Prime Vendor Program. Attachment 1.

And it is not just Fort Campbell. Defendant has actively promoted use of IMPAC. Attachment 2. But now that Defendant has made use of the Joint Service Prime Vendor Program mandatory as of May 1st, 2007, Defendant has issued a Contract in support of the Joint Service Prime Vendor Program that does not require USFS to accept IMPAC.

Southern Foods moves that this Administrative Record be supplemented with the document set out in Attachment 1 and the documents set out in Attachment 2

This Post-Award Procurement Protest is proceeding, 28 U.S.C. § 1491(b)(4), under Administrative Procedure Act 5 U.S.C. § 706 standards. Assuming that the Defendant has acted within

the scope of its authority (and this is not questioned here), then this Court must decide, pursuant to 5 U.S.C. § 706(2)(A), whether "the actual choice made was not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416 (1971) (quoting 5 U.S.C. § 706(2)(A)).

So doing "the court must consider whether the [Agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.*, 401 U.S. at 416.

Finally, the Court must determine procedural validity, i.e., whether Defendant "followed the necessary procedural requirements." *Id.*, 401 U.S. at 417.

The distinction that is made in *Overton Park* between *substantive* review and *procedural* review is important. And this distinction informs the question whether or not this Administrative Record must be supplemented.

*Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989) recognizes that supplementation of an existing Administrative Record is often appropriate in procedural challenges where the issue is whether all relevant factors were considered, whether there was "at least an effort to get both sides of the story," whether a party got its "procedural just due." *Esch*, 876 F.2d at 993.

Defendant and Intervenor may not limit this Administrative Record so as to prevent a thorough analysis by pretending that this is only a question of substantive, not procedural, review. *Ad Hoc Metals Coalition v. Whitman*, 227 F. Supp. 2d. 134, 138-39 (D. D.C. 2002) (extra-record ma-

terials directly related to the issue decided are properly admitted for Administrative Procedure Act judicial review, 5 U.S.C. §§ 702, 706(2)(A)); *Public Citizen v. Heckler*, 653 F. Supp. 1229, 1237 (D. D.C. 1986) (documents directly related to the decision made, and documents adverse to the Agency's position (here Defendant's failure to require use of IMPAC), are properly admitted for judicial review).

The *procedural* requirement in subparagraph 4-2.*a. Best Value* of Army Regulation 215-4, MORALE, WELFARE, AND RECREATION NONAPPROPRIATED FUND CONTRACTING is an undefined requirement of Defendant's "client" Installations which should have precluded this Contracting Officer's Selection Decision because this was a Selection Decision made only on evaluated price:

> In different types of acquisitions, the relative importance of cost or price may vary. For example, in acquisitions where the requirement is clearly definable and the risk of unsuccessful contract performance is minimal, cost or price may play a dominant role in source selection. *The less definitive the requirement, the more development work required, or the greater the performance risk, the more technical or past performance considerations may play a dominant role in source selection.*

Army Regulation 215-4, subparagraph 4.2.*a*., at page 26 (Emphasis added).

Omission of the documents set out in Attachments 1 and 2 would impermissibly skew this Administrative Record. *The Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 199 (D. D.C. 2005), *citing Environmental Defense Fund v. Blum*, 458 F. Supp. 650, 661 (D. D.C. 1978).

Respectfully submitted,

/s/ Cyrus E. Phillips, IV

____________________________

Cyrus E. Phillips, IV

District of Columbia Bar Number 456500,
Virginia State Bar Number 03135
April 27th, 2007

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112

Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: lawyer@procurement-lawyer.com

Attorney of record for Plaintiff,
Southern Foods, Incorporated.

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on Friday, April 27th, 2007 a true and complete copy of this Plaintiff's Brief in Response to Cross-Motions for Judgment on the Administrative Record was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Joan Margaret Stentiford-Ulmer, Esq.

Electronic Mail: Joan.Stentiford-Ulmer@usdoj.gov

Attorney of record for Defendant,
U.S. Army Family and Morale, Welfare,
and Recreation Command.

I also certify, under penalty of perjury, that on Friday, April 27th, 2007 a true and complete copy of this Plaintiff's Brief in Response to Cross-Motions for Judgment on the Administrative Record was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

John J. Pavlick, Jr., Esq.

Electronic Mail: jpavlick@venable.com

Attorney of record for Intervenor,
U.S. Food Service, Incorporated.

/s/ Cyrus E. Phillips, IV

Cyrus E. Phillips, IV

# ATTACHMENT 1

# Joint Service Prime Vendor Program

## Background

- Over 150 Manufacturers providing rebates on over 60,000 line items
- Since FY92 customers saved over $158M through contract pricing, rebates, and off-invoice discounts
- JSPVP participation will become mandatory 1 May 2007
- Number of participating facilities: Approx 1000
- Number of Distributors: 51
- Number of contracts in place: Currently 29. Once all the 3rd generation contracts are in place it will be 33 (31 March)
- Volume purchased to date: $1,175,570,621
- Rebates to date: $8,065,672

# ATTACHMENT 2

CFSC-NCP 24 October 2000

MEMORANDUM FOR COMMANDERS and DPCAs

SUBJECT: 2000 Garrison Commander & DPCA Conference – San Antonio, TX 27 Aug – 1 Sep 2000

1. Slides are provided on our web site to those who were unable to attend the NAF I.M.P.A.C. Purchase Card training session during the subject conference.

2. You are encouraged to review the information in the slide presentation so that you may gain a better understanding of the important features of the Government Purchase Card program. I also solicit your support and assistance to your installation Agency/Organization Program Coordinators who are responsible for oversight of the program at your installations.

3. The main objectives of the presentation focus on the following:

   a. Obtaining the greatest value to the program

   b. Roles and responsibilities of the key players

   c. Key aspects of the program

   d. Challenges of the program and overcoming those challenges

4. I look forward to your continuous support in making this program a total success.

5. If you have any questions, please contact Ms. Cheryl Greenfield, at CML (703)681-5281 (DSN 761), or Carol McKenzie at (703) 681-5307 (DSN 761), or the undersigned at (703) 681-5244 (DSN 761).

JOHN C. MCLAUGHLIN
Director, NAF Contracting

NAF I. M. P. A. C. PURCHASE CARD PROGRAM

# MWR 2000

## Serving the Millennium Warrior

## Garrison Commander & DPCA MWR Conference

## 27 Aug – 1 Sept 2000





# NAF I. M. P. A. C. PURCHASE CARD PROGRAM

## *Objectives*

- Increase awareness of roles and responsibilities of key players
- Increase awareness of the value of the I.M.P.A.C. program to MWR activities
- Increase awareness of key internal controls of the program



NAF I. M. P. A. C.

# PURCHASE CARD PROGRAM

## *Topics*

- Key Players and Their Responsibilities
- Overall Value of the Program
- Rebates
- Delinquencies and Suspensions
- Program Direction



# NAF I. M. P. A. C. PURCHASE CARD PROGRAM

*Roles and Responsibilities of Agency/ Organization Program Coordinator (A/OPC)*

- Serves as primary contact for cardholders, billing officials, and liaison between cardholders, billing officials and I.M.P.A.C. Government Services
  - Sets up and maintains accounts
  - Assists in card usage and problem solving
  - Authorizes exceptions
- Key to internal control and oversight (Focal point for answering questions, contract administration, overall POC)
  - Provides training
  - Ensures policies/procedures are followed
  - Monitors delinquencies and payments

# NAF I. M. P. A. C. PURCHASE CARD PROGRAM

***Roles and Responsibilities of Billing Official (BO)***

## Designated as "Certifying Officer"

- Monetarily liable for purchases
- Reviews, reconciles, and certifies statements
- Follows up on missing statements
- Forwards statements to payment office
- Works with bank in resolving payment issues

## Key to Internal Control

- Maintains oversight of program
- Ensure cardholders receive training and policy manual
- Set single/monthly purchase limits
- Establish budget based on card usage
- Hold cardholders responsible



# NAF I. M. P. A. C. PURCHASE CARD PROGRAM

*Roles and Responsibilities of Cardholder (CH)*

- **Complies with the Army NAF SOP**
- **Maintains card security**
- **Purchases are within spending limits**
- **Maintains monthly transaction log**
- **Reviews, reconciles, certifies, and forwards statement of account and receipts to Billing Official**
- **Notifies A/OPC and Billing Official of changes to account**



# NAF I. M. P. A. C. PURCHASE CARD PROGRAM

*How is the purchase card program a value to your organization?*

- Streamlines purchasing procedures
- Appoint cardholders at lowest level
- Gives managers greater flexibility
- Lowers overall administrative and overhead cost

  - Eliminates layers of approval
  - Lowers inventory
  - Speeds up delivery
  - Faster payment
  - Builds customer relations with suppliers

# NAF I. M. P. A. C. PURCHASE CARD PROGRAM

***Rebates to NAFI***

**FASTER PAYMENT = BIGGER REBATE**

**$ to NAFIs**

**Rebates provided based on sales volume and speed at which bills are paid**

**(Average number of days = Basis Points)**

**Calculated on Quarterly Basis at Activity Level**

**Paid Quarterly**
**Credited at Billing Official Level**
**Noted on Cardholder Statement**

# NAF I. M. P. A. C. PURCHASE CARD PROGRAM

***Rebate/Cost Avoidance***

## NAF Army-wide
## Rebates Earned 1st QTR 00

| | |
|---|---|
| **Net Sales Volume** | **$26,846,917** |
| **Rebate factor (basis points)** | **.004090** |
| **Total Rebate** | **$ 109,803** |

## Administrative and Overhead Cost Avoidance to NAFI

**Cost of PO transaction = $92.60**

| | |
|---|---|
| **NAF Transactions for 1st QTR 00 (83,112 X $92.60 = $7,696,171)** | **83,112** |
| **Cost Avoidance to NAFI- 1st QTR 00** | **$ 7,696,171** |

# NAF I. M. P. A. C. PURCHASE CARD PROGRAM

*Delinquencies and Suspension Procedures*

## Delinquencies and Suspension Procedures

- 45 days past due –Late payment notice sent to Billing Official
- 60 days – Account suspended (All cardholder accounts under same Billing Officials)
- 180 days – Suspension of entire activity
- Accounts suspended more than twice in a 12-month period will be canceled
- Canceled accounts will require written justification from Installation Commander or designee to the Army Program Management Office before account is reinstated



NAF I. M. P. A. C.

# PURCHASE CARD PROGRAM

***Program Direction***

- **Encourage using card to fullest extent possible**
  - **Small purchases**
  - **Payment vehicle**
  - **Ensure internal controls in place**
  - **Develop metrics to monitor usage (NAF Contracting Steering Committee-Standards of Measures)**

**Future Development**

**Cardholder and billing statements on web***

***Customer Automation & Reporting Environment (C.A.R.E.) functionality will be released to users when system performance improves.**

# NAF I. M. P. A. C. PURCHASE CARD PROGRAM

## *TRANSACTIONS*



# NAF I. M. P. A. C. PURCHASE CARD PROGRAM

## SALES VOLUME



**NAF I. M. P. A. C.**

# PURCHASE CARD PROGRAM

***Communications***

**http://www.armymwr.com**
**(NAF Contracting)**

**http://purchasecard.sarda.army.mil**
**(Information on PC Program)**

# NAF I. M. P. A. C. PURCHASE CARD PROGRAM

THANK YOU

**Cheryl Greenfield**
**U.S. Army Community and Family Support Center**
**NAF Contracting Directorate (CFSC-NCP)**
**4700 King Street**
**Alexandria, VA 22302-4415**
**Tel: 703-681-5281**
**Fax: 703-681-5363**
**E-mail cheryl.greenfield@cfsc.army.mil**

**Alternate:**
**Carol McKenzie**
**Tel: 703-681-5307**
**E-mail carol.mckenzie@cfsc.army.mil**

