# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Bid Protest
Number 07-210C
Judge Eric G. Bruggink

**SOUTHERN FOODS, INCORPORATED,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant,**

**and**

**U.S. FOODSERVICE, INCORPORATED,**

**Intervenor.**

## PLAINTIFF'S BRIEF IN REPLY TO RESPONSES TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Cyrus E. Phillips, IV
1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112
Attorney of record for Plaintiff,
Southern Foods, Incorporated.

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

May 3rd, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii-iii

ARGUMENT .......... 1-11

I. THE CONTRACTING OFFICER'S RE-RATING OF SOUTHERN FOODS' REVISED COMPETITIVE PROPOSAL IS UNEXPLAINED AND THEREFORE IRRATIONAL .......... 1-5

II. DEFENDANT FAILED TO TREAT OFFERORS EQUALLY AND FAILED TO EQUALLY ASSESS AND RATE THE COMPETITIVE PROPOSALS .......... 5-8

III. DEFENDANT FAILED TO CONSIDER FACTORS RELEVANT TO AN AWARD OF A SUCCESSOR CONTRACT .......... 8-11

CERTIFICATE OF SERVICE .......... 12

# TABLE OF AUTHORITIES

**STATUTES**

5 U.S.C. § 706(2)(A). . . . . . . . . . . . . . . . . . . . . 2, 8

41 U.S.C. § 15(a). . . . . . . . . . . . . . . . . . . . . 9

**REGULATIONS**

Army Regulation 215-4. . . . . . . . . . . . . . . . . . . . . 1-2

**CASES**

*Banknote Corporation of America, Inc. v. United States*,
365 F.3d 1345 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . . . . . 2

*Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*,
365 F.3d 1345 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . . . . . 8-9

*Citizens to Preserve Overton Park v. Volpe*,
401 U.S. 402 (1971). . . . . . . . . . . . . . . . . . . . . 9

*EP Productions, Inc. v. United States*,
63 Fed. Cl. 220 (2004). . . . . . . . . . . . . . . . . . . . . 4

*Impresa Construzioni Geom. Domenico Garufi v. United States*,
238 F.3d 1324 (Fed. Cir. 2001). . . . . . . . . . . . . . . . . . . . . 2

*Marine Hydraulics International, Inc. v. United States*,
43 Fed. Cl. 664 (1999). . . . . . . . . . . . . . . . . . . . . 4-5

*New Dynamics Foundation v. United States*,
70 Fed. Cl. 782 (2006). . . . . . . . . . . . . . . . . . . . . 9

*PGBA, LLC v. United States*,
60 Fed. Cl. 196 (2004), *aff'd* 389 F.3d 1219 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . . . . . 6

*Portfolio Disposition Management Group LLC v. United States*,
64 Fed. Cl. 1 (2005). . . . . . . . . . 3

*Seattle Security Services, Inc. v. United States*,
45 Fed. Cl. 560 (1999). . . . . . . . . . 6

# PLAINTIFF'S BRIEF IN REPLY TO RESPONSES TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

## ARGUMENT

### I. The Contracting Officer's Re-Rating of Southern Foods' Revised Competitive Proposal is Unexplained and Therefore Irrational.

Defendant and Intervenor contend that the Contracting Officer was acting well within her rights as the Source Selection Authority when on December 18th, 2006 she re-rated Southern Foods' revised Competitive Proposal, reducing Southern Foods' rating on the Management Factor from "Blue" or "Exceptional," to "Green," or "Acceptable," and reducing Southern Foods' Overall Consensus rating from "Blue" or "Exceptional," to "Green," or "Acceptable." Administrative Record, at 1694c through 1694d.

Southern Foods does not contend that the Contracting Officer's actions were unauthorized. Indeed, this re-rating was within her right as Source Selection Authority:

> The SSA's decision shall be based on a comparative assessment of proposals against all source selection criteria in the solicitation. While the SSA may use reports and analyses prepared by others, the source selection decision shall represent the SSA's independent judgment. The source selection decision shall be documented. The documentation shall include the rationale for any business judgments and tradeoffs made or relied on by the SSA, including benefits associated with additional costs. Although the rationale for the selection decision must be documented, that documentation need not quantify the tradeoffs that led to the decision.

**Protected Information Has Been Redacted**

Army Regulation 215-4, MORALE, WELFARE, AND RECREATION NONAPPROPRIATED FUND CONTRACTING, paragraph 4-17., *Source Selection Decision*.

Rather, the problem with the Contracting Officer's re-rating of Southern Foods' revised Competitive Proposal is that there is no *rationale*, no explanation whatsoever of the Contracting Officer's exercise of her independent judgment. This Administrative Record gives us not one clue just why the Contracting Officer thought it appropriate to reduce Southern Foods' ratings on the Management Factor and on the Overall Consensus.

Why did the Contracting Officer think that the Technical Evaluation Team's ratings for Southern Foods' revised Competitive Proposal were too generous? We don't know. Why did the Contracting Officer adjust only the Technical Evaluation Team's ratings for Southern Foods, and why did the Contracting Officer not disturb the Technical Evaluation Team's ratings for USFS or for Sysco Corporation? We don't know.

Only with such a rationale, such an explanation can the Contracting Officer's re-rating pass muster under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), i.e., the exercise of judgment in question will be deemed to be arbitrary and lacking a rational basis unless the Administrative Record reveals "a coherent and reasonable explanation of [this] exercise of discretion." *Banknote Corporation of America, Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) *citing Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001).

Defendant and Intervenor have come upon three cases in which the ratings of Technical Evaluators or other advisors have been rejected, else revised by the Contracting Officer, or by other Technical Evaluators.

The most recent of these three cases is *Portfolio Disposition Management Group LLC v. United States*, 64 Fed. Cl. 1 (2005). Here a Technical Evaluation Team, in a brief report (30 pages), concluded that the ultimately successful Competitive Proposal was "technically unacceptable, but capable of being made acceptable through discussions." Contrariwise, a follow-on Technical Evaluation Panel concluded, in a detailed 125-page memorandum, that the ultimately successful Competitive Proposal was in fact "technically acceptable." *Id.*, at 5. This Court there decided that "[w]e cannot fault the TEP for doing its own homework and coming up with a different rating than one of its teams," that "[i]t would not be the first time a procurement official has discounted the evaluations of those under her." *Id.*, at 9.

But just what distinguishes *Portfolio Disposition Management Group* from this Case is that there the Technical Evaluation Panel had "expounded upon strengths and weaknesses . . . that were touched upon only briefly in the TET Report," and there the Technical Evaluation Panel "also made explicit reference to a number of positive factors that had apparently not been considered by the TET." *Id.*, at 9. Here we have no rationale; no explanation for the Contracting Officer's reduced ratings for Southern Foods on the Management Factor and on the Overall Consensus. Here there is only silence.

*EP Productions, Inc. v. United States*, 63 Fed. Cl. 220 (2004) is to the same effect. There the Contracting Officer gave a lower rating on an oral presentation than did any of the individual evaluation team members. *Id.*, at 226. But it turned out in *EP Productions* that the individual evaluation team members could not agree on a rating and that two of the evaluators identified the same point as did the Contracting Officer in assigning a lower rating. *Id*. The *EP Productions* Court rejected a challenge to this lower rating by the Contracting Officer as no better than a "naked claim" reflecting only a "mere disagreement with the agency's judgment." *Id*.

Here the only thing that is "naked" is the Contracting Officer's rationale for reducing Southern Foods' ratings. And this is so because there is no rationale, no explanation whatsoever for this Contracting Officer's exercise of discretion.

Finally, there is *Marine Hydraulics International, Inc. v. United States*, 43 Fed. Cl. 664 (1999). At issue there was a best value selection decision for a repair and SHIPALTS (Ship Alteration designs) Contract for one of the Navy's fast frigates. The Solicitation had announced that Past Performance was more important that Price, and while one of the Offerors had a "slight edge" on Past Performance, the other Offeror (just across the Elizabeth River) had a lower price, 2/10s of one percent lower. So an advisory board decided that saving $5,300 on a $2,345,974 Contract was the best value. *Id*., at 668.

The Contracting Officer thought otherwise, and he decided that "the additional costs of 5200 (sic) [was] worth the additional rating [on Past Performance]." *Id*. This, the *Marine Hydraulics* Court held, was sufficient:

> Here, the PCO knew the exact amount of the trade-off and exactly what he was getting for the money. In fact, his focus was directly on the trade-off. Nor do any of MHI's other authorities suggest that where, as here, the Source Selection authority has specifically considered the exact dollar value of the price difference and the precise technical strength to be obtained, the Source Selection Authority has acted arbitrarily or capriciously.

*Id*., at 675. Thus in the context of a trade-off between perceived technical merit and price, a nine-word rationale is sufficient.

Here there are not even nine words in this Administrative Record that explain the Contracting Officer's ratings of Southern Foods' revised Competitive Proposal. Here there are no words. This is the epitome of arbitrary conduct. Southern Foods is entitled to assume, by this absence of any rationale or explanation, that John Grassmick was not the only person at the U.S. Army Family and Morale, Welfare, and Recreation Command (http://www.armymwr.com/portal/about/default.asp#cfsc) passing out favors to USFS.

**II. Defendant Failed to Treat Offerors Equally and Failed to Equally Assess and Rate the Competitive Proposals.**

A fundamental precept of Federal Agency procurement is that Offers must be evaluated equally; that an Agency may not unreasonably reach conclusions on one Competitive Proposal while, at the same time, the Agency fails to thoroughly and critically evaluate a competing Com-

petitive Proposal; and that an Agency may not apply a double standard, reading one Competitive Proposal expansively and resolving doubt in favor of that Offeror, while, at the same time, reading another Competitive Proposal with an exacting standard, requiring an affirmative representation within the four corners of each section of that Competitive Proposal. *PGBA, LLC v. United States*, 60 Fed. Cl. 196, 207 (2004), *aff'd* 389 F.3d 1219 (Fed. Cir. 2004) ("[U]neven treatment goes against the standard of equality and fair-play that is a necessary underpinning of the federal government's procurement process and amounts to an abuse of discretion."); *Seattle Security Services, Inc. v. United States*, 45 Fed. Cl. 560, 569-70 (1999) (Agencies must evaluate proposals consistently, and the Court may not presume that the evaluation was reasonable where there is substantial evidence of an inconsistent evaluation.)

In this acquisition for a successor Contract for the Joint Services Prime Vendor Program for United States Service Area 10 Offerors were not treated equally and Competitive Proposals were not evaluated consistently.

How so?

Only Southern Foods' revised Competitive Proposal was re-rated by the Contracting Officer. The initial Competitive Proposals from USFS and from Sysco Corporation were both just barely acceptable on the Technical/Management and Overall Consensus Evaluation ratings (one was "Red/Green" on an Overall Consensus and the other was "Red" on an Overall Consensus). Administrative Record, at 1694a. Sysco Corporation improved its revised Competitive Proposal on

the first round on discussions, Administrative Record, at 1694c. By the second round of discussions Sysco Corporation further improved and USFS finally managed to achieve an Overall Consensus rating of "Low Green." Administrative Record, at 1694d.

But Southern Foods' initial Competitive Proposal was rated "Blue," or "Exceptional" on Technical and "Green," or "Acceptable" on an Overall Consensus. Administrative Record, at 1694b. After one round of discussions Southern Foods' revised Competitive Proposal was rated "Blue," or "Exceptional" on both Technical and on Management, and "Blue," or "Exceptional" on an Overall Consensus. Administrative Record, at 1694c.

Southern Foods made no changes in its Technical or Management Proposals on the second round of discussions:

> Southern Foods did not have to address any issues on the Technical/Management Proposals; however; Southern Foods submitted a letter indicating that they do not wish to lower their Margins and that the original Price Proposal as submitted stands.

Administrative Record, at 1694c. And yet after the second round of discussions it was only Southern Foods' revised Competitive Proposal that the Contracting Officer thought appropriate (for unexplained reasons) for reduction of the ratings given by the Technical Evaluation Team. Administrative Record, at 1694d. The Contracting Officer did not alter the ratings given by the Technical Evaluation Team to the revised Competitive Proposals from Sysco Corporation and from USFS.

As for inconsistent treatment of Offerors, the Court should consider that it was on the first round of discussions, on July 5th, 2006 that the Contracting Officer wrote USFS to "recommend Offeror re-evaluate its proposed 'Margins,'" Administrative Record, at 401, while it was not until the second round of discussions, not until November 6th, 2006 that the Contracting Officer made the same sort of "recommendation" to Southern Foods, Administrative Record, at 1611.

One Offeror, USFS, is given a "heads-up" on Price early-on in this acquisition. Southern Foods is not given a comparable "heads-up" until the second round of discussions, and this a second round of discussions which allowed USFS, after a second round of discussions, to change its Overall Consensus score from "Red/Green" on the initial Competitive Proposal, Administrative Record, at 1694c, to "Low Green" on the revised Competitive Proposal, Administrative Record, at 1694d. By way of contrast, even Southern Foods' initial Competitive Proposal was fully acceptable. Administrative Record, at 1694b.

And yet this is what Defendant and Intervenor would have this Court confirm as equal treatment of Offerors and as a consistent evaluation of Competitive Proposals. Indeed! This acquisition is a disgrace.

**III. Defendant Failed to Consider Factors Relevant to an Award of a Successor Contract.**

Agency action cannot be upheld on an Administrative Procedure Act review, 5 U.S.C. § 706(2)-(A), unless relevant factors are considered. *Bowman Transportation, Inc. v. Arkansas-Best Freight*

*System, Inc.*, 419 U.S. 281, 285-86 (1974); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413-16 (1971).

Even on the false premise selected by the Contracting Officer for her award decision, that it was only low price (Margin) that mattered, then surely the ability of the U.S. Army Family and Morale, Welfare, and Recreation Command to reap the benefit of this low price (Margin) over a projected Contract term of 10 years was (is) a relevant factor to be considered.

It has been known in the public press since this acquisition began that USFS, a wholly-owned subsidiary of Royal Ahold, is for sale. Administrative Record, at 1825. Indeed, today's *Washington Post* announces that Royal Ahold has agreed to sell USFS. A Government Contract may not be assigned, 41 U.S.C. § 15(a), but just this, else termination, is going to be necessary later this fall when the sale is complete.

Defendant would excuse the U.S. Army Family and Morale, Welfare, and Recreation Command's failure to consider this highly relevant factor by charging that this information from the Administrative Record is hearsay, and thus cannot be considered. Defendant's Counter-Statement of Facts, Response No. 8, at p. 4.

But the FEDERAL RULES OF EVIDENCE do not apply to materials in an Administrative Record such as this one. This Court will not consider collateral attacks on materials in an Administrative Record based on *post hoc* application of the FEDERAL RULES OF EVIDENCE. *New Dynamics Foundation v. United States*, 70 Fed. Cl. 782, 797 (2006).

Defendant should have considered, but did not, the prospect that USFS would not likely survive as a continuing entity.

And then there is the matter of the requirement now in effect for mandatory use of the Joint Service Prime Vendor Program. Defendant has actively promoted use of IMPAC. IMPAC is the only method of payment acceptable to Fort Campbell, one of the two "customers" of the Joint Service Prime Vendor Program in United States Service Area 10. But now that Defendant has made use of the Joint Service Prime Vendor Program mandatory as of May 1st, 2007, Defendant has issued a Contract in support of the Joint Service Prime Vendor Program that does not require USFS to accept IMPAC. And it will cost USFS, or the successor to USFS, a two percent processing fee for each transaction processed through IMPAC. Administrative Record, at 1828.

This is yet another factor relevant to this acquisition for a successor Contract for the Joint Service Prime Vendor Program in United States Service Area 10. And this relevant factor was likewise not considered.

Respectfully submitted,

/s/ Cyrus E. Phillips, IV

Cyrus E. Phillips, IV
District of Columbia Bar Number 456500,
Virginia State Bar Number 03135
May 3rd, 2007

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112

Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: lawyer@procurement-lawyer.com

Attorney of record for Plaintiff,
Southern Foods, Incorporated.

CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on Thursday, May 3rd, 2007 a true and complete copy of this Plaintiff's Brief in Reply to Responses to Plaintiff's Cross-Motion for Judgment on the Administrative Record was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Joan Margaret Stentiford-Ulmer, Esq.

Electronic Mail: Joan.Stentiford-Ulmer@usdoj.gov

Attorney of record for Defendant,
U.S. Army Family and Morale, Welfare,
and Recreation Command.

I also certify, under penalty of perjury, that on Thursday, May 3rd, 2007 a true and complete copy of this Plaintiff's Brief in Reply to Responses to Plaintiff's Cross-Motion for Judgment on the Administrative Record was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

John J. Pavlick, Jr., Esq.

Electronic Mail: jpavlick@venable.com

Attorney of record for Intervenor,
U.S. Food Service, Incorporated.

/s/ Cyrus E. Phillips, IV

____________________________

Cyrus E. Phillips, IV